**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NAUTICAL SOLUTIONS, L.L.C., *et al.*,[1] | ) | Case No. 23-90002 (CML) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**JOINT PREPACKAGED PLAN**
**OF REORGANIZATION OF NAUTICAL SOLUTIONS, L.L.C. AND ITS**
**DEBTOR AFFILIATE PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

---

THIS CHAPTER 11 PLAN IS BEING SOLICITED FOR ACCEPTANCE OR REJECTION IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND WITHIN THE MEANING OF SECTION 1126 OF THE BANKRUPTCY CODE. THIS CHAPTER 11 PLAN WILL BE SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL FOLLOWING SOLICITATION AND THE DEBTORS' FILING FOR CHAPTER 11 BANKRUPTCY.

---

**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
Victoria Argeroplos (TX Bar No. 24105799)
Javier Gonzalez (TX Bar No. 24119697)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone:   (713) 752-4200
Facsimile:   (713) 752-4221
Email:   mcavenaugh@jw.com
         jwertz@jw.com
         vargeroplos@jw.com
         jgonzalez@jw.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Patrick J. Nash, Jr., P.C. (*pro hac vice* pending)
John R. Luze (*pro hac vice* pending)
Jeffrey T. Michalik (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Email:   patrick.nash@kirkland.com
         john.luze@kirkland.com
         jeff.michalik@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

---

[1]   The Debtors in these chapter 11 cases are:  Nautical Solutions, L.L.C. and Nautical Solutions (Texas), LLC.  The location of Debtor Nautical Solution, L.L.C.'s principal place of business and the Debtors' service address in these chapter 11 cases is 16201 East Main Street, Cut Off, Louisiana 70345.

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| A. | Defined Terms. | 1 |
| B. | Rules of Interpretation. | 10 |
| C. | Computation of Time. | 10 |
| D. | Governing Law. | 11 |
| E. | Reference to Monetary Figures. | 11 |
| F. | Reference to the Debtors or the Reorganized Debtors. | 11 |
| G. | Controlling Document. | 11 |
| H. | Consent Rights. | 11 |

ARTICLE II. ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, PRIORITY TAX
    CLAIMS, AND RESTRUCTURING EXPENSES ............ 11

| | | |
|---|---|---|
| A. | Administrative Claims. | 11 |
| B. | Professional Fee Claims. | 12 |
| C. | Priority Tax Claims. | 13 |
| D. | Payment of Restructuring Expenses. | 13 |
| E. | Cash Collateral Claims. | 13 |

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ............ 13

| | | |
|---|---|---|
| A. | Classification of Claims and Interests. | 13 |
| B. | Treatment of Claims and Interests. | 14 |
| C. | Special Provision Governing Unimpaired Claims. | 17 |
| D. | Elimination of Vacant Classes. | 17 |
| E. | Intercompany Interests. | 17 |
| F. | Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. | 17 |
| G. | Controversy Concerning Impairment. | 17 |
| H. | Subordinated Claims. | 17 |

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ............ 18

| | | |
|---|---|---|
| A. | General Settlement of Claims and Interests. | 18 |
| B. | Restructuring Transactions. | 18 |
| C. | The Reorganized Debtors. | 18 |
| D. | Asset Sale. | 18 |
| E. | Sources of Consideration for Restructuring Transactions. | 19 |
| F. | Corporate Existence. | 19 |
| G. | Corporate Action. | 20 |
| H. | Vesting of Assets in the Reorganized Debtors. | 20 |
| I. | Cancellation of Notes, Instruments, Certificates, and Other Documents. | 20 |
| J. | New Organizational Documents. | 21 |
| K. | Member-Managers and Officers of the Reorganized Debtors. | 21 |
| L. | Effectuating Documents; Further Transactions. | 21 |
| M. | Certain Securities Law Matters. | 21 |
| N. | Section 1146 Exemption. | 22 |
| O. | Employee Matters. | 22 |
| P. | Preservation of Causes of Action. | 22 |
| Q. | Master Services Agreements. | 23 |
| R. | Support Agreement. | 23 |

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............ 24

| | | |
|---|---|---|
| A. | Assumption and Rejection of Executory Contracts and Unexpired Leases. | 24 |
| B. | Claims Based on Rejection of Executory Contracts or Unexpired Leases. | 24 |
| C. | Cure of Defaults and Objections to Cure and Assumption. | 25 |
| D. | Indemnification Policies. | 25 |
| E. | Reservation of Rights. | 26 |
| F. | Nonoccurrence of Effective Date. | 26 |
| G. | Contracts and Leases Entered Into After the Petition Date. | 26 |

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ...................................................................26
    A.    Distributions on Account of Claims Allowed as of the Effective Date.................................26
    B.    Disbursing Agent. ...............................................................................................................26
    C.    Rights and Powers of Disbursing Agent. ...........................................................................26
    D.    Delivery of Distributions and Undeliverable or Unclaimed Distributions........................27
    E.    Manner of Payment.............................................................................................................28
    F.    Section 1145 Exemption. ....................................................................................................28
    G.    Compliance with Tax and Other Requirements. .................................................................28
    H.    Allocations. .........................................................................................................................28
    I.    Foreign Currency Exchange Rate. ......................................................................................29
    J.    Setoffs and Recoupment. ....................................................................................................29
    K.    Claims Paid or Payable by Third Parties............................................................................29

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT,  UNLIQUIDATED, AND
           DISPUTED CLAIMS ...........................................................................................................30
    A.    Disputed Claims Process.....................................................................................................30
    B.    Allowance of Claims...........................................................................................................30
    C.    Claims Administration Responsibilities..............................................................................30
    E.    Adjustment to Claims or Interests without Objection. ........................................................31
    F.    Disallowance of Claims or Interests. ..................................................................................31
    G.    No Distributions Pending Allowance. .................................................................................31
    H.    Distributions After Allowance. ...........................................................................................31
    I.    No Interest. ..........................................................................................................................32

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS............................32
    A.    Discharge of Claims and Termination of Interests..............................................................32
    **B.**    **Release of Liens.**..................................................................................................................32
    **C.**    **Releases by the Debtors.**....................................................................................................33
    **D.**    **Releases by Holders of Claims and Interests.**.................................................................33
    **E.**    **Exculpation.**.......................................................................................................................34
    **F.**    **Injunction.**..........................................................................................................................35
    G.    Protections Against Discriminatory Treatment. ..................................................................35
    H.    Document Retention. ...........................................................................................................36
    I.    Reimbursement or Contribution. .........................................................................................36

ARTICLE IX. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN........................................36
    A.    Conditions Precedent to the Effective Date. .......................................................................36
    B.    Waiver of Conditions. .........................................................................................................37
    C.    Substantial Consummation .................................................................................................38
    D.    Effect of Failure of Conditions. .........................................................................................38

ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN .....................................38
    A.    Modification and Amendments............................................................................................38
    B.    Effect of Confirmation on Modifications. ...........................................................................38
    C.    Revocation or Withdrawal of Plan. ....................................................................................38

ARTICLE XI. RETENTION OF JURISDICTION .................................................................................38

ARTICLE XII. MISCELLANEOUS PROVISIONS ................................................................................40
    A.    Immediate Binding Effect. ..................................................................................................40
    B.    Additional Documents. ........................................................................................................40
    C.    Payment of Statutory Fees. .................................................................................................41
    D.    Statutory Committee and Cessation of Fee and Expense Payment. ....................................41
    E.    Reservation of Rights. .........................................................................................................41
    F.    Successors and Assigns. ......................................................................................................41
    G.    Notices. ...............................................................................................................................41
    H.    Term of Injunctions or Stays...............................................................................................42

I.      Entire Agreement. ............................................................................................................43
J.      Exhibits. ..........................................................................................................................43
K.      Nonseverability of Plan Provisions. ...............................................................................43
L.      Votes Solicited in Good Faith. ........................................................................................43
M.      Closing of Chapter 11 Cases. ..........................................................................................43
N.      Waiver or Estoppel..........................................................................................................44

EXHIBIT A: Restructuring Support Agreement

**INTRODUCTION**

Nautical Solutions, L.L.C. and its affiliated debtors and debtors in possession in the Chapter 11 Cases (each a "**Debtor**" and, collectively, the "**Debtors**") propose this *Joint Prepackaged Plan of Reorganization of Nautical Solutions, L.L.C. and its Debtor Affiliate Pursuant to Chapter 11 of the Bankruptcy Code* for the resolution of the outstanding Claims against and Interests in the Debtors pursuant to chapter 11 of the Bankruptcy Code.  Capitalized terms used herein and not otherwise defined have the meanings ascribed to such terms in Article I.A hereof.  Holders of Claims against or Interests in the Debtors may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, and projections of future operations, as well as a summary and description of this Plan, the Restructuring Transactions, and certain related matters.  The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTORS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

A.      *Defined Terms.*

As used in this Plan, capitalized terms have the meanings set forth below.

1.      "*Administrative Claim*" means a Claim for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the Debtors' businesses; (b) Allowed Professional Fee Claims; (c) Restructuring Expenses; and (d) fees payable to the U.S. Trustee pursuant to Section 1930 of the Judicial Code.

2.      "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code as if such Entity were a debtor in a case under the Bankruptcy Code.

3.      "*Agent*" means JPMorgan Chase Bank, N.A. in its capacity as administrative agent and collateral agent for the holders of the Term Loans and in its capacity as collateral agent for the holders of the Notes, or any other administrative agent, collateral agent, or similar Entity under the Credit Agreement, the Loan Documents (as defined in the Credit Agreement) or Notes Purchase Agreements, as applicable, that may exist from time to time, including, in each case, any successors thereto.

4.      "*Agents/Trustees*" means, collectively, each of the Agents and Trustees.

5.      "*Allowed*" means, as to a Claim or Interest, a Claim or Interest allowed under the Plan, under the Bankruptcy Code, or by a Final Order, as applicable.

6.      "*Asset Sale*" means the sale by Nautical of six (6) 280-foot platform supply vessels owned by the Debtors on the terms set forth in the Asset Sale Documents, as contemplated by the Restructuring Support Agreement and the Restructuring Term Sheet.

7.      "*Asset Sale Agreement*" means that certain *Vessel Purchase Agreement*, dated December 22, 2022, between Nautical and the Vessel Purchaser, setting forth the terms of the Asset Sale.

8.      "*Asset Sale Documents*" means the Asset Sale Agreement, and any transition services agreements, license agreements, supply agreements, and any other written ancillary agreements, documents, instruments, and certificates executed under or in connection therewith.

9.      "*Assumed Executory Contract and Unexpired Lease List*" means the list, as determined by the Debtors or the Reorganized Debtors, as applicable, of Executory Contracts and/or Unexpired Leases that will be assumed by the Reorganized Debtors and subject to the reasonable consent of the Required Consenting Creditors, which list is attached to the Disclosure Statement as Exhibit G.

10.      "*Assumed Executory Contracts or Unexpired Leases*" means those Executory Contracts and Unexpired Leases to be assumed by the applicable Reorganized Debtors as set forth on the Assumed Executory Contract and Unexpired Lease List or in the Plan.

11.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time.

12.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division or such other court having jurisdiction over the Chapter 11 Cases.

13.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

14.      "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or a day on which banking institutions in New York, New York are authorized by Law or other governmental action to close.

15.      "*Cash*" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

16.      "*Cash Collateral Orders*" means the Interim Cash Collateral Order and the Final Cash Collateral Order.

17.      "*Causes of Action*" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, controversies, proceedings, agreements, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Effective Date, in contract, tort, Law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by Law or in equity; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any avoidance actions arising under chapter 5 of the Bankruptcy Code or under similar local, state, federal, or foreign statutes and common Law, including fraudulent transfer Laws.

18.      "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, any case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all the Debtors, any procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

19.      "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

20.      "*Claims and Noticing Agent*" means Kurtzman Carson Consultants LLC, in its capacity as noticing, claims, and solicitation agent for the Debtors, pursuant to an order of the Bankruptcy Court.

21.      "*Claims Register*" means the official register of Claims and Interests in the Debtors maintained by the Claims and Noticing Agent.

22.      "*Class*" means a class of Claims or Interests as set forth in Article III hereof pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

23.      "*CM/ECF*" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

24.     "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases.

25.     "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

26.     "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider confirmation of the Plan, pursuant to Bankruptcy Rule 3020(b)(2) and sections 1128 and 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

27.     "*Confirmation Order*" means the order of the Bankruptcy Court approving the Disclosure Statement and confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

28.     "*Consenting Creditors*" has the meaning set forth in the Restructuring Support Agreement.

29.     "*Consenting Lenders*" has the meaning set forth in the Restructuring Support Agreement.

30.     "*Consenting Members*" has the meaning set forth in the Restructuring Support Agreement.

31.     "*Consenting Noteholders*" has the meaning set forth in the Restructuring Support Agreement.

32.     "*Consenting Stakeholders*" has the meaning set forth in the Restructuring Support Agreement.

33.     "*Consummation*" means the occurrence of the Effective Date.

34.     "*Credit Agreement*" means that certain First Amended and Restated Credit Agreement, dated as of December 7, 2018, among Nautical, the lenders party thereto, JPMorgan Chase Bank, N.A., as administrative agent and collateral agent, Bank of America, N.A., Wells Fargo Bank, N.A. and Truist Bank (f/k/a Suntrust Bank), as co-syndication agents, and Capital One, National Association, and Compass Bank, as co-documentation agents, as amended, restated, amended and restated or otherwise modified from time to time, including pursuant to that certain Third Amendment, dated as of May 28, 2020.

35.     "*Cure*" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

36.     "*Debtors*" means, collectively, Nautical Solutions, L.L.C. and Nautical Solutions (Texas), LLC.

37.     "*Definitive Documents*" means the documents listed in Section 4.01 of the Restructuring Support Agreement.

38.     "*Disbursing Agent*" means the Reorganized Debtors or the Entity or Entities selected by the Debtors or the Reorganized Debtors, as applicable, in consultation with the Required Consenting Creditors, to make or facilitate distributions pursuant to the Plan.

39.     "*Disclosure Statement*" means the disclosure statement with respect to the Plan, including all exhibits, schedules, supplements, modifications, and amendments thereto, to be approved by the Confirmation Order.

40.     "*Disputed*" means, as to a Claim or an Interest, a Claim or an Interest: (a) that is not Allowed; (b) that is not disallowed under the Plan, the Bankruptcy Code, or a Final Order, as applicable; and (c) with respect to which a party in interest has filed a Proof of Claim or otherwise made a written request to a Debtor for payment, without any further notice to or action, order, or approval of the Court.

41.     "*Distribution Date*" means, except as otherwise set forth in this Plan, the date or dates as agreed upon among the Debtors and the Required Consenting Creditors, on or after the Effective Date, upon which the Disbursing Agent shall make distributions to holders of Allowed Claims or Interests entitled to receive distributions under the Plan.

42.     "*Distribution Record Date*" means the date that is five (5) Business Days prior to the Effective Date or such other date or dates as agreed upon among the Debtors and the Required Consenting Creditors.

43.     "*DTC*" means the Depository Trust Company.

44.     "*ECO Affiliate*" means any non-Debtor partnership or corporation that is an Affiliate of the Debtors, excluding the Debtors.  For the avoidance of doubt, neither Debtor shall be deemed an "ECO Affiliate."

45.     "*Effective Date*" means the date that is a Business Day, selected by the Debtors in consultation with the Required Consenting Creditors, on which (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent to the occurrence of the Effective Date set forth in Article IX.A of the Plan have been satisfied or waived in accordance with Article IX.B of the Plan; and (c) the Plan is declared effective.  Without limiting the foregoing, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

46.     "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

47.     "*Estate*" means as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code upon the commencement of such Debtor's Chapter 11 Case.

48.     "*Exchange Offer*" has the meaning set forth in the Restructuring Support Agreement.

49.     "*Exculpated Parties*" means, collectively, each of the following in their capacity as such: (i) the Debtors; (ii) the Reorganized Debtors; (iii) the independent manager and member of the Debtors' special committee, and (iv) any official committee of unsecured creditors appointed in the Chapter 11 Cases.

50.     "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

51.     "*Existing Nautical Interest*" means an Interest held in Nautical.

52.     "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date.

53.     "*File*," "*Filed*," or "*Filing*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

54.     "*Final Cash Collateral Order*" means an order of the Bankruptcy Court approving, on a final basis, the consensual use of cash collateral on terms consistent with the Restructuring Term Sheet.

55.     "*Final Order*" means an order or judgment of the Bankruptcy Court or court of competent jurisdiction with respect to the subject matter that has not been reversed, stayed, modified, or amended, as entered on the docket in any Chapter 11 Case or the docket of any court of competent jurisdiction, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing will have been denied, resulted in no stay pending appeal of such order, or has otherwise been dismissed with prejudice; *provided* that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

56.     "*First Lien Claims*" means, collectively, the Notes Claims and the Term Loan Claims.

57.     "*Fleet Mortgage*" means the First Preferred Fleet Mortgage executed by Nautical in favor of the Agent, granting a Lien on the vessels identified therein, as supplemented, amended, or otherwise modified from time to time.

58.     "*General Unsecured Claim*" means any Claim that is not a Secured Claim, other than (a) Administrative Claims, (b) Professional Fee Claims, (c) Priority Tax Claims, (d) Other Priority Claims, or (e) Intercompany Claims.

59.     "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

60.     "*Impaired*" means with respect to a Claim or Interest, or a Class of Claims or Interests, impaired within the meaning of section 1124 of the Bankruptcy Code.

61.     "*Indemnification Provisions*" means each of the Debtors' indemnification provisions currently in place, whether in the Debtors' bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment agreements, engagement letters, or other contracts, for the current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals, and agents of the Debtors and such current and former directors', officers', managers', employees', attorneys', other professionals', and agents' respective Affiliates.

62.     "*Intercompany Claim*" means any Claim held by a Debtor against another Debtor.

63.     "*Intercompany Interest*" means an Interest in a Debtor held by another Debtor.

64.     "*Interim Cash Collateral Order*" means an order of the Bankruptcy Court approving, on an interim basis, the consensual use of cash collateral on terms consistent with the Restructuring Term Sheet.

65.     "*Interest*" means any common stock, limited liability company interest, equity security (as defined in section 101(16) of the Bankruptcy Code), equity, ownership, profit interests, unit, or share in a Debtor, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor (in each case whether or not arising under or in connection with any employment agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security).

66.     "*Jones Act*" means, collectively, the U.S. citizenship and cabotage laws principally contained in 46 U.S.C. § 50501(a), (b) and (d) and 46 U.S.C. Chapters 121 and 551 and any successor statutes thereto, together with the rules and regulations promulgated thereunder by the U.S. Coast Guard and the U.S. Maritime Administration and their practices enforcing, administering, and interpreting such laws, statutes, rules, and regulations, in each case as amended or supplemented from time to time, relating to the ownership and operation of U.S. flag vessels in the U.S. coastwise trade.

67.     "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

68.     "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

69.     "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

70.     "*Local Bankruptcy Rules*" means the Local Bankruptcy Rules for the Southern District of Texas.

71.     "*Master Services Agreements*" means one or more material shared services or other intercompany arrangements agreements (including any agreements with respect to the intellectual property and information technology licenses contemplated by the New Senior Secured Notes Term Sheet), by and among Nautical or Reorganized Nautical, certain ECO Affiliates, and the Consenting Creditors, as applicable, on the terms and conditions set forth in the New Senior Secured Notes Term Sheet.

72.     "*Nautical*" means Nautical Solutions, L.L.C.

73.     "*New Nautical Equity*" means, subject to the Restructuring Steps Memorandum, the new common shares or membership interests in New Nautical HoldCo.

74.     "*New Nautical HoldCo*" means a limited liability company organized under the Laws of Louisiana that, as of the Effective Date, directly or indirectly will hold the equity interests in Reorganized Nautical.

75.     "*New Nautical Securities*" means, the New Nautical Equity and the New Senior Secured Notes.

76.     "*New Noteholders*" means the holders of the New Senior Secured Notes.

77.     "*New Organizational Documents*" means the documents providing for corporate governance of the Reorganized Debtors, including charters, bylaws, operating agreements, or other organizational documents or shareholders' agreements, as applicable, which shall, in all cases, be consistent with the Restructuring Support Agreement, this Plan, and section 1123(a)(6) of the Bankruptcy Code (as applicable), and shall be included in the Plan Supplement.

78.     "*New Senior Secured Notes*" means new senior secured notes to be issued by Nautical on the Effective Date, on the terms set forth in the New Senior Secured Notes Documents.

79.     "*New Senior Secured Notes Agent*" means Alter Domus (US) LLC, as Agent and Collateral Agent under the New Senior Secured Notes Exchange Agreement.

80.     "*New Senior Secured Notes Documents*" means the New Senior Secured Notes Exchange Agreement and all security and other documents related thereto, including, without limitation, the Master Services Agreements and the Support Agreement, which, in each case, shall be consistent with the terms set forth in the Restructuring Support Agreement and each exhibit thereto, including the New Senior Secured Notes Term Sheet.

81.     "*New Senior Secured Notes Exchange Agreement*" means the new senior secured notes exchange agreement, which shall be on the terms and conditions set forth in the Restructuring Support Agreement and each exhibit thereto, including the New Senior Secured Notes Term Sheet, and is attached to the Disclosure Statement as Exhibit C.

82.     "*New Senior Secured Notes Term Sheet*" means the term sheet attached as Exhibit 1 to the Restructuring Term Sheet.

83.     "*Noteholder*" means a holder of, or an investment advisor, sub-advisor, or manager of discretionary accounts that hold, Notes Claims.

84.     "*Noteholder Non-Acceleration Settlement Amount*" means $11,696,000.

85.     "*Notes*" means (i) the Series A Notes and (ii) the Series B Notes.

86.     "*Notes Claim*" means any Claim on account of, related to, or in connection with the Notes, Notes Purchase Agreements, or any other document related thereto.  The Allowed aggregate amount of Notes Claims shall include the Noteholder Non-Acceleration Settlement Amount.

87.    "*Notes Purchase Agreements*" means, collectively, the Series A Notes Purchase Agreement and the Series B Notes Purchase Agreement.

88.    "*Other Priority Claim*" means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

89.    "*Other Secured Claim*" means any Secured Claim against the Debtors other than the First Lien Claims.

90.    "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

91.    "*Petition Date*" means the date on which each of the Debtors commence the Chapter 11 Cases.

92.    "*Plan*" means this joint prepackaged chapter 11 plan, including all appendices, exhibits, schedules, and supplements hereto (including any appendices, schedules, and supplements to the Plan contained in the Plan Supplement), as the same may be amended, supplemented, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

93.    "*Plan Distribution*" means a payment or distribution to holders of Allowed Claims, Allowed Interests, or other eligible Entities under and in accordance with the Plan.

94.    "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (in each case, as may be altered, amended, modified, or supplemented from time to time through the Effective Date in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules), including the following, as applicable:  (a) the New Organizational Documents; (b) to the extent known, the identity and member-managers of New Nautical HoldCo; (c) the Schedule of Retained Causes of Action; (d) the New Senior Secured Notes Documents; and (e) any additional documents Filed with the Bankruptcy Court prior to the Effective Date as exhibits, supplements, or amendments to the Plan Supplement.

95.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

96.    "*Pro Rata*" means, unless otherwise indicated, the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

97.    "*Professional*" means an Entity:  (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

98.    "*Professional Fee Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that Professionals estimate they have incurred or will incur in rendering services to the Debtors, as set forth in Article II.B hereof.

99.    "*Professional Fee Claim*" means a Claim for fees and expenses incurred by a Professional on or after the Petition Date through the Confirmation Date, that is compensable or reimbursable pursuant to sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

100.    "*Professional Fee Escrow Account*" means an interest-bearing account funded by the Debtors with Cash on the Effective Date in an amount equal to the Professional Fee Amount.

101.    "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

102.    "*Reinstate*" means, with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired.  "*Reinstated*" and "*Reinstatement*" shall have correlative meanings.

103.     "*Rejected Executory Contract and Unexpired Lease List*" means the list, as determined by the Debtors or Reorganized Debtors, as applicable, of Executory Contracts and Unexpired Leases that will be rejected by the Reorganized Debtors pursuant to the Plan, which list shall be subject to the reasonable consent of the Required Consenting Creditors and is attached to the Disclosure Statement as Exhibit H.

104.     "*Related Party*" means, with respect to (w) any Entity, (x) such Entity's predecessors, successors and assigns, parents, subsidiaries, affiliates, affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, subadvisors, or managers; (y) with respect to each of the foregoing in clauses (w) and (x), such Entity's respective current and former officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly and any fund managers, fiduciaries, or other agents with any involvement related to the Debtors), members, partners, employees, agents, trustees, advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals; and (z) with respect to each of the foregoing in clauses (w)–(y), such Entity's respective heirs, executors, estates, servants, and nominees.

105.     "*Released Parties*" means collectively, and in each case in its capacity as such:  (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) each Consenting Stakeholder and each other holder of First Lien Claims that votes in favor of the Plan; (d) each of the Agents/Trustees; (e) each current and former Affiliate of each Entity in clause (a) through the following clause (f); and (f) each Related Party of each Entity in clause (a) through this clause (f) (and, in addition to each of the foregoing, where any of the foregoing is an investment manager or advisor for a beneficial holder, such beneficial holder); *provided* that, in each case, an Entity shall not be a Released Party if it objects to the releases contained in the Plan and such objection is not resolved before the Confirmation Hearing.

106.     "*Releasing Parties*" means, collectively, and in each case in its capacity as such:  (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) each Consenting Stakeholder and each other holder of First Lien Claims that votes in favor of the Plan; (d) each of the Agents/Trustees; (e) each Related Party of each Entity in clause (a) through this clause (e) for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan under applicable Law.

107.     "*Reorganized Debtor*" means a Debtor on and after the Effective Date.

108.     "*Reorganized Nautical*" means Nautical Solutions, L.L.C. on and after the Effective Date.

109.     "*Required Consenting Creditors*" has the meaning set forth in the Restructuring Support Agreement.

110.     "*Restructuring Expenses*" means the prepetition and postpetition reasonable and documented fees and expenses of (a)(i) Weil, Gotshal & Manges LLP, as counsel to the Consenting Noteholders; (ii) Baker, Donelson, Bearman, Caldwell & Berkowitz P.C., as maritime counsel to the Consenting Noteholders; (iii) TRP Advisors, LLC, as financial advisor to the Consenting Noteholders; (iv) local counsel to the Consenting Noteholders in material jurisdictions; and (v) Lazard Frères & Co. LLC, as investment banker to the Consenting Noteholders; and (b)(i) Simpson Thacher & Bartlett, LLP, as counsel to the Agent and JPMorgan Chase Bank, N.A. ("*JPM*") in its capacity as a Consenting Lender ; (ii) Jones Walker LLP, as maritime counsel to the Agent and JPM in its capacity as a Consenting Lender; (iii) CR3 Partners LLC, as financial advisor to the Agent and JPM in its capacity as a Consenting Lender; and (iv) local counsel to the Agent in material jurisdictions; and (c) any other advisors to the Consenting Creditors, in each case, payable in accordance with the terms of any applicable engagement or fee letters executed with such parties or pursuant to the terms of the Restructuring Support Agreement or Cash Collateral Orders and without the requirement for the filing of retention applications, fee applications, or any other application in the Chapter 11 Cases, which shall be allowed as Administrative Claims upon incurrence and shall not be subject to any offset, defense, counterclaim, reduction, or credit.  For the avoidance of doubt, Restructuring Expenses shall not be treated as First Lien Claims.

111.     "*Restructuring Steps Memorandum*" means the summary of transaction steps to complete the restructuring contemplated by the Plan, which is attached to the Disclosure Statement as Exhibit I.

112.     "*Restructuring Support Agreement*" means that certain Restructuring Support Agreement, dated as of September 6, 2022, and attached hereto as **Exhibit A**, by and among the Debtors and the Consenting Stakeholders, as may be amended, restated, supplemented or otherwise modified from time to time, in accordance with its terms.

113.     "*Restructuring Term Sheet*" means Exhibit A to the Restructuring Support Agreement.

114.     "*Restructuring Transactions*" means the transactions described in Article IV.B of the Plan and the Restructuring Steps Memorandum.

115.     "*Schedule of Retained Causes of Action*" means the schedule of certain Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time with the consent of the Debtors and the Required Consenting Creditors.

116.     "*SEC*" means the United States Securities and Exchange Commission.

117.     "*Secured Claim*" means a Claim (a) secured by a valid, perfected, and enforceable Lien on any Debtor's interest in property to the extent of the value of such interest as (i) set forth in the Plan; (ii) agreed to by the holder of such Claim and the Debtors; or (iii) determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code; or (b) secured by the amount of any right of setoff of the holder thereof in accordance with section 553 of the Bankruptcy Code.

118.     "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, or any similar federal, state, or local Law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

119.     "*Security*" has the meaning set forth in section 101(49) of the Bankruptcy Code.

120.     "*Series A Notes*" means those certain Series A 7.50% amended and restated senior secured notes, due November 14, 2023, issued by Nautical pursuant to the Series A Notes Purchase Agreement.

121.     "*Series B Notes*" means those certain Series B 7.50% amended and restated senior secured notes, due November 14, 2023, issued by Nautical pursuant to the Series B Notes Purchase Agreement.

122.     "*Series A Notes Purchase Agreement*" means that certain Amended and Restated Note Purchase Agreement, dated December 7, 2018, by and among Nautical, the noteholders party thereto, and JPMorgan Chase Bank, N.A., as collateral agent, as amended and restated from time to time, pursuant to which Nautical issued the Series A Notes.

123.     "*Series B Notes Purchase Agreement*" means that certain Amended and Restated Note Purchase Agreement, dated December 7, 2018, by and among Nautical, the noteholders party thereto, and JPMorgan Chase Bank, N.A., as collateral agent, as amended and restated from time to time, pursuant to which Nautical issued the Series B Notes.

124.     "*Solicitation*" means the solicitation of acceptances of the Exchange Offer and the solicitation of votes on the Plan pursuant to sections 1125 and 1126 of the Bankruptcy Code.

125.     "*Solicitation Materials*" means all documents, forms, and other materials provided in connection with the Solicitation (other than the Disclosure Statement).

126.     "*Support Agreement*" means that certain support agreement by and among by and among Nautical or Reorganized Nautical, certain ECO Affiliates, and the Consenting Creditors, on the terms and conditions set forth in the New Senior Secured Notes Term Sheet and which shall be included in the Plan Supplement.

127.     "*Term Loans*" means loans outstanding under the Credit Agreement.

128.     "*Term Loan Claims*" means any Claim on account of, related to, or in connection with the Term Loans, the Credit Agreement, or any other document related thereto.

129.     "*Trustee*" means any indenture trustee, collateral trustee, or other trustee or similar entity under the Notes Purchase Agreements and related documents.

130.     "*Unexpired Lease*" means a lease to which one or more of the Debtors are a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

131.     "*Unimpaired*" means, with respect to a Claim or Interest, or a Class of Claims or Interests, unimpaired within the meaning of section 1124 of the Bankruptcy Code.

132.     "*Vessel Purchaser*" means the Entity identified as the "Buyer" in the Asset Sale Documents.

*B.     Rules of Interpretation.*

For purposes of this Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented in accordance with the Plan or Confirmation Order, as applicable; (4) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, limited liability company agreement, by-Law, instrument, release, or other agreement or document created or entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal Law, including the Bankruptcy Code and Bankruptcy Rules; (9) unless otherwise specified, the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (10) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (11) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (12) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (13) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (14) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (15) any immaterial effectuating provisions may be interpreted by the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan and the Restructuring Support Agreement all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; and (16) unless otherwise specified, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

*C.     Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the immediately succeeding Business Day.

D.      *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the Laws of the State of New York, without giving effect to the principles of conflict of laws (other than section 5-1401 and section 5-1402 of the New York General Obligations Law), shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; *provided* that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, not incorporated in New York shall be governed by the Laws of the state of incorporation or formation of the relevant Debtor or the Reorganized Debtor, as applicable.

E.      *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.      *Reference to the Debtors or the Reorganized Debtors.*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

G.      *Controlling Document.*

In the event of any conflict between the terms and provisions in the Plan and the terms and provisions in the Disclosure Statement, the Plan shall govern and control.  In the event of any conflict between the terms and provisions in the Plan (without reference to the Plan Supplement) and the Plan Supplement or any of the Definitive Documents, the Plan Supplement or such Definitive Document shall govern and control.  In the event of a conflict between the Confirmation Order, on the one hand, and any of the Disclosure Statement, the Plan, the Plan Supplement, or the Definitive Documents, on the other hand, the Confirmation Order shall govern and control in all respects.

H.      *Consent Rights.*

Notwithstanding anything herein to the contrary, any and all consultation, information, notice, and consent rights set forth in the Restructuring Support Agreement (including the exhibits thereto) with respect to the form and substance of this Plan, all exhibits to the Plan, the Plan Supplement, and all other Definitive Documents, including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I.A hereof) and fully enforceable as if stated in full herein.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, PRIORITY TAX CLAIMS, AND RESTRUCTURING EXPENSES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

A.      *Administrative Claims.*

Except with respect to Professional Fee Claims and Restructuring Expenses, and except to the extent that an Administrative Claim has already been paid during the Chapter 11 Cases or a holder of an Allowed Administrative Claim and the Debtors, or the Reorganized Debtors, as applicable, agree to less favorable treatment, each holder of an Allowed Administrative Claim will receive in full and final satisfaction of its Administrative Claim an amount of Cash

equal to the amount of such Allowed Administrative Claim in accordance with the following:  (1) if an Administrative Claim is Allowed as of the Effective Date, on or as soon as reasonably practicable after the Effective Date (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than sixty (60) days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim and otherwise in accordance with the Cash Collateral Orders without any further action by the holders of such Administrative Claim; or (4) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

B.      *Professional Fee Claims.*

    1.     Final Fee Applications and Payment of Professional Fee Claims.

All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed and served on the Entities designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Bankruptcy Court no later than forty-five (45) days after the Effective Date.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court.  The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount Allowed by the Bankruptcy Court, including from the Professional Fee Escrow Account, which the Reorganized Debtors will establish in trust for the Professionals and fund with Cash equal to the Professional Fee Amount on the Effective Date.

    2.     Professional Fee Escrow Account.

On the Effective Date, the Reorganized Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Amount, which shall be funded by the Reorganized Debtors.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals.  Such funds shall not be considered property of the Estates of the Debtors or the Reorganized Debtors.  The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Reorganized Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed; *provided* that such obligations with respect to Allowed Professional Fee Claims shall not be limited nor be deemed limited to funds held in the Professional Fee Escrow Account.  When all such Allowed amounts owing to Professionals have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be paid to the Reorganized Debtors without any further action or order of the Bankruptcy Court.

    3.     Professional Fee Amount.

Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date, and shall deliver such estimate to the Debtors no later than five (5) days before the Effective Date; *provided* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of each Professional's final request for payment in the Chapter 11 Cases.  If a Professional does not provide an estimate, the Debtors or Reorganized Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.

    4.     Post-Confirmation Fees and Expenses.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors or Reorganized Debtors, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the

Debtors or the Reorganized Debtors, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

C.      *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

D.      *Payment of Restructuring Expenses.*

To the extent not otherwise paid, the Debtors or the Reorganized Debtors, as applicable, shall promptly pay in Cash in full outstanding and invoiced Restructuring Expenses as follows: (i) on the Effective Date, Restructuring Expenses incurred, or estimated to be incurred, during the period prior to the Effective Date to the extent invoiced to the Debtors at least two (2) Business Days in advance and (ii) after the Effective Date, any unpaid Restructuring Expenses within five (5) Business Days of receiving an invoice; *provided* that such Restructuring Expenses shall be paid in accordance with the terms of any applicable engagement letters or other contractual arrangements without the requirement for the filing of retention applications, fee applications, or any other applications in the Chapter 11 Cases, and without any requirement for further notice or Bankruptcy Court review or approval; *provided further* that, to the extent timely invoiced, Restructuring Expenses that are not paid by the Debtors or the Reorganized Debtors, as applicable, within the timeframes set forth in this Article II.D of the Plan, such Restructuring Expenses shall not be deemed waived and shall be included in a subsequent invoice.

E.      *Cash Collateral Claims.*

On the Effective Date, the Debtors shall pay in full in Cash any Claims outstanding under the Cash Collateral Orders.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      *Classification of Claims and Interests.*

This Plan constitutes a separate Plan proposed by each Debtor.  Except for the Claims addressed in Article II hereof, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or an Interest, or any portion thereof, is classified in a particular Class only to the extent that any portion of such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes.  A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims against and Interests in the Debtors pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|-------|----------------------|--------|---------------|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | First Lien Claims | Impaired | Entitled to Vote |
| Class 4 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

| Class | Claims and Interests | Status | Voting Rights |
|-------|----------------------|--------|---------------|
| Class 5 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept / Reject) |
| Class 6 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept / Reject) |
| Class 7 | Existing Nautical Interests | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

B.      *Treatment of Claims and Interests.*

Each holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Reorganized Debtors and the holder of such Allowed Claim or Allowed Interest, as applicable.  Unless otherwise indicated, the holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

1.      Class 1 - Other Secured Claims

(a)      *Classification*:  Class 1 consists of all Other Secured Claims.

(b)      *Treatment*:  Each holder of an Allowed Other Secured Claim shall receive, at the Debtors' option with the consent of the Required Consenting Creditors, either:

(i)      payment in full in Cash;

(ii)      the collateral securing its Allowed Other Secured Claim;

(iii)      Reinstatement of its Allowed Other Secured Claim; or

(iv)      such other treatment rendering its Allowed Other Secured Claim Unimpaired.

(c)      *Voting*:  Class 1 is Unimpaired under the Plan.  Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such holders are not entitled to vote to accept or reject the Plan.

2.      Class 2 - Other Priority Claims

(a)      *Classification*:  Class 2 consists of all Other Priority Claims.

(b)      *Treatment*:  Each holder of an Allowed Other Priority Claim shall receive treatment in a manner consistent with section 1129(a)(9) of the Bankruptcy Code.

(c)      *Voting*:  Class 2 is Unimpaired under the Plan.  Holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such holders are not entitled to vote to accept or reject the Plan.

3.  Class 3 - First Lien Claims

    (a)    *Classification*:  Class 3 consists of any First Lien Claims.

    (b)    *Allowance*:

        (i)    First Lien Claims against the Debtors (1) shall be Allowed in the aggregate principal amount of no less than $650,878,820, *plus* all interest, fees, expenses, costs, charges, premiums and other amounts arising and payable under and in accordance with the Credit Agreement and the Notes Purchase Agreements and related documents, in each case, as of the Effective Date, *plus* the Noteholder Non-Acceleration Settlement Amount, for a total Allowed Claim amount of no less than $740,951,479; and (2) shall not be subject to any avoidance, reduction, setoff, recoupment, recharacterization, subordinations (equitable, contractual or otherwise), counterclaim, defense, disallowance, impairment, surcharges under section 506(c) of the Bankruptcy Code, objection, challenges under applicable law or regulation, or any other claim or defense.

        (ii)    Each holder of a Claim in Class 3 shall have an Allowed First Lien Claim in an amount equal to such holder's (1) outstanding principal amount of First Lien Claims, *plus* (2) accrued and unpaid interest, fees, expenses, costs, charges, premiums and other amounts payable to such holder as part of its First Lien Claim, *plus* (3) in the case of holders of Notes Claims, such holder's "pro rata" share of the Noteholder Non-Acceleration Settlement Amount, where "pro rata" means the amount of such holder's Allowed Notes Claims (without inclusion of the Noteholder Non-Acceleration Settlement Amount) divided by the aggregate amount of Allowed Notes Claims (without inclusion of the Noteholder Non-Acceleration Settlement Amount).

    (c)    *Treatment*:  Each holder of an Allowed First Lien Claim shall receive its Pro Rata share of:

        (i)    the New Senior Secured Notes;

        (ii)    any excess Cash distribution owed and payable in accordance with section 4.9(a) of the New Senior Secured Notes Exchange Agreement; and

        (iii)    additional Cash in an amount calculated at a rate of 8.50% per annum on $587,500,000 for the period from September 1, 2022 through the Effective Date, in accordance with section 8.1(b) of the New Senior Secured Notes Exchange Agreement.

    (d)    *Voting:*  Class 3 is Impaired under the Plan and holders of Allowed Claims in Class 3 are entitled to vote to accept or reject the Plan.

4.  Class 4 - General Unsecured Claims

    (a)    *Classification*:  Class 4 consists of all General Unsecured Claims.

    (b)    *Treatment*:   Each holder of an Allowed General Unsecured Claim shall receive, at the Debtors' option with the consent of the Required Consenting Creditors, either:

(i)       payment in full in Cash;

(ii)      Reinstatement of its Allowed General Unsecured Claim; or

(iii)     such other treatment rendering such Allowed General Unsecured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(c)   *Voting*:  Class 4 is Unimpaired under the Plan.  Holders of Allowed General Unsecured Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such holders are not entitled to vote to accept or reject the Plan.

5.   <u>Class 5 - Intercompany Claims</u>

(a)   *Classification:*  Class 5 consists of all Intercompany Claims.

(b)   *Treatment:*  Each holder of an Allowed Intercompany Claim shall have its Claim Reinstated, set off, settled, distributed, contributed, cancelled, released, or extinguished (in each case, without any distribution) at the Debtors' election and in their reasonable discretion such that such Allowed Intercompany Claims are treated in a tax-efficient manner to the extent reasonably practicable.

(c)   *Voting:*  Class 5 is Unimpaired if the Intercompany Claims are Reinstated or converted to equity or Impaired if the Intercompany Claims are set off, settled, distributed, contributed, cancelled, or released.  Holders of Intercompany Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) or rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

6.   <u>Class 6 - Intercompany Interests</u>

(a)   *Classification:*  Class 6 consists of all Intercompany Interests.

(b)   *Treatment:*  Intercompany Interests shall be Reinstated, set off, settled, distributed, contributed, cancelled, and released without any distribution on account of such Intercompany Interests, or such other treatment as reasonably determined by the Debtors, at the Debtors' election and in their reasonable discretion such that Intercompany Interests are treated in a tax-efficient manner to the extent reasonably practicable.

(c)   *Voting*:  Class 6 is Unimpaired if the Intercompany Interests are Reinstated or Impaired if the Intercompany Interests are set off, settled, distributed, contributed, cancelled, or released without any distribution.  Holders of Intercompany Interests are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

7.   <u>Class 7 - Existing Nautical Interests</u>

(a)   *Classification:*  Class 7 consists of all Existing Nautical Interests.

(b)   *Treatment:* Existing Nautical Interests shall be Reinstated.

(c)   *Voting*:  Class 7 is Unimpaired under the Plan.  Holders of Existing Nautical Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the

Bankruptcy Code.  Therefore, such holders are not entitled to vote to accept or reject the Plan.

C.       *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Reorganized Debtors' rights regarding any Unimpaired Claims, including, all rights regarding legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

D.       *Elimination of Vacant Classes.*

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.       *Intercompany Interests.*

To the extent Reinstated under the Plan, for the avoidance of doubt, distributions on account of Intercompany Interests are not being received by holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience and due to the importance of maintaining the prepetition corporate structure for the ultimate benefit of the holders of New Nautical Equity, and in exchange for the Debtors' and Reorganized Debtors' agreement under the Plan to make certain distributions to the holders of Allowed Claims.

F.       *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.B hereof.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article X hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

G.       *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date or such other date as fixed by the Bankruptcy Court.

H.       *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors and Reorganized Debtors, as applicable, reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

# ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.       *General Settlement of Claims and Interests.*

As discussed in detail in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan, including (1) any challenge to the amount, validity, enforceability, priority or extent of the First Lien Claims, and (2) any claim to avoid, subordinate, or disallow any First Lien Claims, whether under any provision of chapter 5 of the Bankruptcy Code, on any equitable theory (including equitable subordination, equitable disallowance, or unjust enrichment) or otherwise. The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable and in the best interests of the Debtors and their Estates. Subject to Article VI hereof, all distributions made to holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

B.       *Restructuring Transactions.*

On or before the Effective Date, the applicable Debtors or the Reorganized Debtors shall enter into and shall take any actions as may be necessary, appropriate, or desirable to effectuate the Restructuring Transactions, including as set forth in the Restructuring Steps Memorandum. The actions to implement the Restructuring Transactions may include but shall not be limited to: (1) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and the Restructuring Support Agreement, and that satisfy the applicable requirements of applicable Law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and the Restructuring Support Agreement, and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial Law; and (4) all other actions that the applicable Entities determine to be necessary, including making filings or recordings that may be required by applicable Law in connection with the Plan and the Restructuring Support Agreement. The Confirmation Order shall and shall be deemed pursuant to sections 363 and 1123 of the Bankruptcy Code to authorize, among other things, all actions as may be necessary, appropriate, or desirable to effectuate any transaction described in, contemplated by, or necessary to effectuate the Plan.

C.       *The Reorganized Debtors.*

On the Effective Date, if applicable, the Reorganized Debtors shall adopt the New Organizational Documents, which shall include appropriate provisions assuring compliance with the Jones Act. The Reorganized Debtors shall be authorized to adopt any other agreements, documents, and instruments and to take any other actions contemplated under the Plan as necessary to consummate the Plan, in all respects consistent with and subject to the Restructuring Support Agreement. Cash payments to be made pursuant to the Plan will be made by the Debtors or Reorganized Debtors.

D.       *Asset Sale.*

On the Effective Date, the Asset Sale Documents shall be deemed assumed. Entry of the Confirmation Order by the Bankruptcy Court shall constitute a court order approving the assumption of the Asset Sale Documents. The proceeds of the Asset Sale shall be allocated and distributed in accordance with the New Senior Secured Notes Exchange Agreement.

E.    *Sources of Consideration for Restructuring Transactions.*

The Debtors and the Reorganized Debtors, as applicable, shall fund distributions and the Restructuring Transactions contemplated under the Plan with:  (1) the issuance of the New Senior Secured Notes; (2)  New Nautical Equity; and (3) Cash on hand, including Cash from operations and the Asset Sale.

1.    Issuance of the New Senior Secured Notes.

On the Effective Date, Reorganized Nautical will issue the New Senior Secured Notes, on the terms set forth in the New Senior Secured Notes Documents.  On the Effective Date, all Liens and security interests granted or confirmed (as applicable) pursuant to, or in connection with, the New Senior Secured Notes Documents shall be deemed granted, assigned, or confirmed (as applicable) by the Reorganized Debtors pursuant to the New Senior Secured Notes Documents, and all Liens and security interests granted, assigned, or confirmed (as applicable) pursuant to, or in connection with, the New Senior Secured Notes Documents (including any Liens and security interests granted, assigned, or confirmed (as applicable) on the Reorganized Debtors' assets) shall (i) be valid, binding, and enforceable Liens and security interests on the property described in the New Senior Secured Notes Documents; (ii) shall be deemed automatically attached and perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the New Senior Secured Notes Documents; (iii) not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination under any applicable Law, the Plan, or the Confirmation Order; and (iv) shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or applicable non-bankruptcy Law.  On the Effective Date, each holder of allowed First Lien Claims entitled to a distribution hereunder, shall be deemed to be party to, and bound by, the New Senior Secured Notes Exchange Agreement as a "Noteholder" (as defined therein) regardless of whether such holder has executed a signature page thereto or voted in favor of the Plan. Upon request by the New Senior Secured Notes Agent or Reorganized Nautical, each holder of First Liens Claims entitled to a distribution hereunder shall promptly furnish all information reasonably required by the New Senior Secured Notes Agent to administer the New Senior Secured Notes, including, but not limited to, tax information, tax forms, administrative questionnaires and any information necessary to conduct customary "know your customer" and anti-money laundering processes.

2.    New Nautical Equity.

On the Effective Date, as set forth in the Restructuring Steps Memorandum, the holders of Interests in Debtor Nautical shall contribute their equity interests to New Nautical HoldCo.  In exchange, the holders of Interests in Nautical shall receive Interests in New Nautical HoldCo.

3.    Cash on Hand.

The Debtors or Reorganized Debtors, as applicable, shall use Cash on hand to fund distributions, consistent with the terms of the Plan.

F.    *Corporate Existence.*

Except as otherwise provided in the Plan or Plan Supplement, each Debtor shall continue to exist after the Effective Date as a separate corporate Entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable Law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the certificate of incorporation and by-laws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and by-laws (or other formation documents) are amended under the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal Law).

G.      *Corporate Action.*

Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including:  (1) adoption or assumption, as applicable, of the agreements with existing management (including as provided by the ECO Affiliates); (2) selection of the member-managers and officers for the Reorganized Debtors; (3) implementation of the Restructuring Transactions; (4) the issuance and distribution of the New Nautical Equity; (5) issuance and exchange of the New Senior Secured Notes and entry into the New Senior Secured Notes Documents; (6) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date); (7) adoption of the New Organizational Documents; (8) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; and (9) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Restructuring Transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date).  All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate, partnership, limited liability company, or other governance action required by the Debtors or the Reorganized Debtors, as applicable, in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Security holders, member-managers, or officers of the Debtors or the Reorganized Debtors, as applicable.  On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, Securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors, including the New Nautical Equity, the New Organizational Documents, the New Senior Secured Notes, and any and all other agreements, documents, Securities, and instruments relating to the foregoing.  The authorizations and approvals contemplated by this Article IV.G shall be effective notwithstanding any requirements under non-bankruptcy Law.

H.      *Vesting of Assets in the Reorganized Debtors.*

Except as otherwise provided in the Confirmation Order, the Plan (including, for the avoidance of doubt, the Restructuring Steps Memorandum), or any agreement, instrument, or other document incorporated in, or entered into in connection with or pursuant to, the Plan or Plan Supplement, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

I.      *Cancellation of Notes, Instruments, Certificates, and Other Documents.*

On the Effective Date, except to the extent otherwise provided in the Confirmation Order, the Plan, or in the Restructuring Term Sheet, as applicable, all notes, instruments, certificates, and other documents evidencing Claims or Interests, in each case, including credit agreements and indentures, shall be canceled, and the Debtors and the Reorganized Debtors' obligations thereunder or in any way related thereto shall be deemed satisfied in full and discharged except, with respect to the Notes Purchase Agreements and the Credit Agreement, as necessary to allow the receipt of and to make distributions under the Plan in accordance with the terms of the Notes Purchase Agreements or the Credit Agreement, as applicable; *provided* that the Fleet Mortgage and any indemnity, reimbursement, or similar provision in favor of the Agent or Trustee in any credit agreement, note purchase agreement, security document, ancillary document, or intercreditor agreement related to the Term Loans or the Notes that by the terms of such agreement survives the termination of such agreement, shall remain in full force and effect notwithstanding the consummation of the Restructuring Transactions.  On the Effective Date, the Fleet Mortgage shall be assigned by the Agent to the New Senior Secured Notes Agent in accordance with the terms of the New Senior Secured Notes Documents.

Notwithstanding the foregoing, any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, the Debtors as a result of the cancellations, terminations, satisfaction, releases, or discharges provided for in the Plan shall be deemed null and void and shall be of no force and effect.

J.      *New Organizational Documents.*

On or immediately prior to the Effective Date, the New Organizational Documents, if applicable, shall be automatically adopted by the applicable Reorganized Debtors.  To the extent required under the Plan or applicable non-bankruptcy Law, each of the Reorganized Debtors will file its New Organizational Documents with the applicable Secretaries of State and/or other applicable authorities in its respective state or country of organization if and to the extent required in accordance with the applicable Laws of the respective state or country of organization.  The New Organizational Documents will prohibit the issuance of non-voting equity Securities, to the extent required under section 1123(a)(6) of the Bankruptcy Code.  After the Effective Date, the Reorganized Debtors may amend and restate their respective New Organizational Documents in accordance with the terms thereof, and the Reorganized Debtors may file such amended certificates or articles of incorporation, bylaws, or such other applicable formation documents, and other constituent documents as permitted by the Laws of the respective states, provinces, or countries of incorporation and the New Organizational Documents.

K.      *Member-Managers and Officers of the Reorganized Debtors.*

On the Effective Date, the current member-managers of Nautical shall be the member-managers of New Nautical HoldCo.  The member-managers of New Nautical HoldCo shall be identified in the Plan Supplement.  The officers and overall management structure of New Nautical HoldCo, and all officers and management decisions with respect to the Reorganized Debtors and New Nautical HoldCo (and/or any of its direct or indirect subsidiaries), compensation arrangements, and affiliate transactions shall be subject to the required approvals and consents set forth in the New Organizational Documents (which shall include appropriate provisions assuring compliance with the Jones Act) and shall be subject to and comply with the terms of the New Senior Secured Notes Documents.

From and after the Effective Date, each officer or member-manager of Reorganized Nautical or New Nautical HoldCo (as applicable) shall serve pursuant to the terms of their respective charters and bylaws or other formation and constituent documents, the New Organizational Documents, and applicable Laws of the respective Reorganized Debtor's or New Nautical HoldCo's (as applicable) jurisdiction of formation.  To the extent that any such member-manager or officer of the Reorganized Debtors is an "insider" pursuant to section 101(31) of the Bankruptcy Code, the Debtors will disclose the nature of any compensation to be paid to such member-manager or officer.

L.      *Effectuating Documents; Further Transactions.*

On and after the Confirmation Date, the Debtors and the Reorganized Debtors, and their respective officers or member-managers (as applicable), are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the Restructuring Steps Memorandum, the New Senior Secured Notes Documents, and the Securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

M.      *Certain Securities Law Matters*

All New Nautical Securities issued under this Plan will be exempt from, among other things, the registration and prospectus delivery requirements under the Securities Act or any similar federal, state, or local Laws in reliance upon section 1145 of the Bankruptcy Code.  The availability of the exemption under section 1145 of the Bankruptcy Code or any other applicable securities Laws shall not be a condition to the occurrence of the Effective Date.

Should the Debtors or the Reorganized Debtors, as applicable, elect on or after the Effective Date to reflect any ownership of the New Nautical Securities to be issued under the Plan through the facilities of DTC, the Debtors or the Reorganized Debtors, as applicable, need not provide any further evidence other than the Plan or the Confirmation Order with respect to the treatment of such applicable portion of the New Nautical Securities to be issued under the Plan under applicable securities Laws, and such Plan or Confirmation Order shall be deemed to be legal and binding obligations of the Reorganized Debtors in all respects.

DTC and other Persons and Entities shall be required to accept and conclusively rely upon the Plan and Confirmation Order in lieu of a legal opinion regarding whether the New Nautical Securities to be issued under the Plan are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services. Notwithstanding anything to the contrary in the Plan, no Person or Entity (including, for the avoidance of doubt, DTC) may require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the New Nautical Securities to be issued under the Plan are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

N.      Section 1146 Exemption.

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan or pursuant to: (1) the issuance, Reinstatement, distribution, transfer, or exchange of any debt, Security, or other interest in the Debtors or the Reorganized Debtors; (2) the Restructuring Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; (5) the grant of collateral as security for any or all of the New Senior Secured Notes; or (6) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

O.      Employee Matters.

The Debtors may, in the ordinary course of business and consistent with past practice, continue their wages, compensation, and benefits programs. On the Effective Date, the Debtors shall (a) assume all existing employment agreements, indemnification agreements, or other employment-related agreements entered into with current and former employees or (b) with the consent of the Required Consenting Creditors (not to be unreasonably withheld or delayed), enter into new agreements with such employees on terms and conditions acceptable to the Debtor and such employee.

P.      Preservation of Causes of Action.

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII hereof, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article VIII hereof.

The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against it. The Debtors or the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Article VIII hereof.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated,

released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Reorganized Debtors reserve and shall retain such Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors, except as otherwise expressly provided in the Plan, including Article VIII hereof, or pursuant to Bankruptcy Court order.  The Reorganized Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

Q.      *Master Services Agreements.*

On or prior to the Effective Date, Nautical or Reorganized Nautical, as applicable, the applicable ECO Affiliates, and the Consenting Creditors shall enter into and adopt the Master Services Agreements, as provided in the Restructuring Term Sheet.

The Master Services Agreements shall document any material shared services or other intercompany arrangements (including any intellectual property or information technology licenses contemplated by the New Senior Secured Notes Term Sheet) provided to Nautical or Reorganized Nautical, as applicable, by the ECO Affiliates and all such agreements shall consider the holders of New Senior Secured Notes to be third-party beneficiaries and shall grant such holders an assignable pledge thereunder where services are rendered to Nautical or Reorganized Nautical, as applicable, with such services to be provided at market rates (where market rates are publicly available to third parties) or otherwise to be negotiated and reflected in the Master Services Agreements.  In connection with an exercise of remedies, the Master Services Agreements shall provide that such shared services will continue to be made available to Nautical or Reorganized Nautical, as applicable, for the benefit of the holders of the New Senior Secured Notes, their affiliates, designees and/or any unaffiliated third-party purchasers for one (1) year from the date of change of control of Nautical or Reorganized Nautical, as applicable.

Except as specifically provided above, the arrangements above will be provided to Nautical or Reorganized Nautical, as applicable, until the obligations with respect to New Senior Secured Notes are paid in full and, additionally, the Enhanced Collateral Package (as defined in the New Senior Secured Notes Term Sheet) will benefit the holders of the New Senior Secured Notes (or any agent or designee on their behalf in connection with an exercise of remedies) and any third party purchaser to which any collateral is sold until the date that is one (1) year following the occurrence of a change of control of Nautical or Reorganized Nautical, as applicable, it being understood and agreed that any intellectual property and information technology licenses will continue to benefit such third party purchaser on a perpetual basis.

R.      *Support Agreement.*

In addition to managers' undertakings similar to the Debtors' existing forms, the applicable ECO Affiliates, as contemplated in the Restructuring Term Sheet and the New Senior Secured Notes Term Sheet, will provide to Nautical or Reorganized Nautical, as applicable, for the benefit of the holders of the New Senior Secured Notes, their affiliates, designees and/or any unaffiliated third-party purchasers (in connection with a change of control in connection with an exercise of remedies), at their elections the following, which shall be reflected in the Support Agreement: (a) vessel operations and management support for one (1) year from the date of change of control of Nautical or Reorganized Nautical, as applicable, with the cost included in the Galliano Marine Services overhead charge (as set forth in the New Senior Secured Notes Exchange Agreement); (b) appropriate services to support delivery of vessels to a U.S. port of such party's choosing with the cost of such support charged at market rates; (c) other services such as shipyard repairs and maintenance on an ongoing basis at market rates (where market rates are publicly available to third parties); *provided* that such services will be provided on a commercial best-efforts basis

subject to crew availability (where crew is not already placed and therefore, available), shipyard availability, and other such factors; and (d) any necessary training or other support services to allow holders of the New Senior Secured Notes, their affiliates, designees, and/or any unaffiliated third-party purchasers (in connection with a change of control in connection with an exercise of remedies) to properly operate the licensed IP and technology.  Creditor-owned or transferred vessels shall not be prioritized nor disadvantaged versus other ECO Affiliate-owned vessels that require like services, employees, or parts at the same time.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided herein, any Executory Contract or Unexpired Lease of the Debtors is deemed to be an Assumed Executory Contract or Unexpired Lease, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those Executory Contracts or Unexpired Leases that:  (1) previously were assumed, assumed and assigned, or rejected by the Debtors; (2) are identified on the Rejected Executory Contract and Unexpired Lease List; (3) are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date; or (4) are subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute a court order approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases as set forth in the Plan, the Rejected Executory Contract and Unexpired Lease List, or the Assumed Executory Contract and Unexpired Lease List pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.  Each Executory Contract and Unexpired Lease assumed pursuant to this Article V.A or pursuant to any order of the Bankruptcy Court, which has not been assigned to a third party before the Confirmation Date, shall revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as such terms are modified by the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption or rejection under applicable federal Law.  Notwithstanding anything to the contrary in the Plan, the Debtors or the Reorganized Debtors, as applicable, with the consent of the Required Consenting Creditors (not to be unreasonably withheld or delayed), reserve the right to alter, amend, modify, or supplement the Rejected Executory Contract and Unexpired Lease List and the Assumed Executory Contract and Unexpired Lease List at any time through and including thirty (30) days after the Effective Date.

To the maximum extent permitted by applicable Law, to the extent that any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" or similar provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Claims and Noticing Agent and served on the Reorganized Debtors no later than thirty (30) days after the effective date of such rejection.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Claims and Noticing Agent within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Reorganized Debtors, the Estates, or their property, without the need for any objection by the Debtors or Reorganized Debtors, or further notice to, action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the**

**Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, and be subject to the permanent injunction set forth in Article VIII.H of the Plan, notwithstanding anything in a Proof of Claim to the contrary.**

All Claims arising from the rejection by any Debtor of any Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code shall be treated as a General Unsecured Claim pursuant to Article III.B of the Plan and may be objected to in accordance with the provisions of Article VII of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

C.      *Cure of Defaults and Objections to Cure and Assumption.*

The Debtors or the Reorganized Debtors, as applicable, shall pay Cures, if any, on the Effective Date or as soon as reasonably practicable thereafter, with the amount and timing of payment of any such Cure dictated by the underlying agreements and/or the ordinary course of business among the parties thereto, as applicable.  Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure that differ from the ordinary course amounts paid or proposed to be paid by the Debtors or the Reorganized Debtors to a counterparty must be Filed with the Claims and Noticing Agent on or before thirty (30) days after the Effective Date.  Any such request that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.  Any Cure shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Reorganized Debtors of the Cure in the Debtors' ordinary course of business; *provided* that nothing herein shall prevent the Reorganized Debtors from paying any Cure despite the failure of the relevant counterparty to File such request for payment of such Cure.  The Reorganized Debtors also may settle any Cure without any further notice to or action, order, or approval of the Bankruptcy Court.  In addition, any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan must be Filed with the Bankruptcy Court on or before thirty (30) days after the Effective Date.  Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.

If there is any dispute regarding any Cure, the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of Cure shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors or the Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable Cure pursuant to this Article V, in the amount and at the time dictated by the Debtors' ordinary course of business, shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.  **Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, and for which any Cure has been fully paid pursuant to this Article V, in the amount and at the time dictated by the Debtors' ordinary course of business, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court**.

D.      *Indemnification Policies.*

Consistent with applicable Law, all Indemnification Provisions in place as of the Effective Date shall be reinstated and remain intact, irrevocable, and shall survive the effectiveness of the Plan on terms no less favorable to such current and former officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Company Parties than the Indemnification Provisions in place prior to the Effective Date.

E.      *Reservation of Rights.*

Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any of the Reorganized Debtors have any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease under the Plan.

F.      *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

G.      *Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the applicable Debtor or the Reorganized Debtors in the ordinary course of their business.  Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

**ARTICLE VI.**
**PROVISIONS GOVERNING DISTRIBUTIONS**

A.      *Distributions on Account of Claims Allowed as of the Effective Date.*

Except as otherwise provided herein, a Final Order, or as otherwise agreed to by the Debtors or the Reorganized Debtors, as applicable, and the holder of the applicable Claim, on the first Distribution Date, the Disbursing Agent shall make initial distributions under the Plan on account of Claims Allowed on or before the Effective Date or as soon as reasonably practical thereafter; *provided* that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, and (2) Allowed Priority Tax Claims shall be paid in accordance with Article II.C hereof.  To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and the holder of such Claim or as may be due and payable under applicable non-bankruptcy Law or in the ordinary course of business.  A Distribution Date shall occur no more frequently than once in every ninety (90) day period after the Effective Date, as necessary, in the Reorganized Debtors' sole discretion.  For the avoidance of doubt, the Distribution Record Date shall not apply to distributions to holders of public Securities.

B.      *Disbursing Agent.*

All distributions under the Plan shall be made by the Disbursing Agent on the Effective Date.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors.

C.      *Rights and Powers of Disbursing Agent.*

1.      Powers of the Disbursing Agent.

The Disbursing Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may

be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2. Expenses Incurred On or After the Effective Date.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses), made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors.

D.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

1. Record Date for Distribution.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record holders listed on the Claims Register as of the close of business on the Distribution Record Date. If a Claim, other than one based on a publicly traded Security, is transferred twenty (20) or fewer days before the Distribution Record Date, the Disbursing Agent shall make distributions to the transferee only to the extent practicable and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2. Delivery of Distributions in General.

Except as otherwise provided herein, the Disbursing Agent shall make distributions to holders of Allowed Claims and Allowed Interests (as applicable) as of the Distribution Record Date at the address for each such holder as indicated on the Debtors' records as of the date of any such distribution; *provided* that the manner of such distributions shall be determined at the discretion of the Reorganized Debtors, except with respect to distributions to holders Allowed First Lien Claims, which shall require the consent of the Required Consenting Creditors (not to be unreasonably withheld); *provided further* that the address for each holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim filed by that holder, if applicable.

3. Minimum Distributions.

No fractional shares of New Nautical Equity shall be distributed and no Cash shall be distributed in lieu of such fractional amounts. When any distribution pursuant to the Plan on account of an Allowed Claim or Allowed Interest (as applicable) would otherwise result in the issuance of a number of shares of New Nautical Equity that is not a whole number, the actual distribution of shares of New Nautical Equity shall be rounded as follows: (a) fractions of one-half (½) or greater shall be rounded to the next higher whole number and (b) fractions of less than one-half (½) shall be rounded to the next lower whole number with no further payment therefor. The total number of authorized shares of New Nautical Equity to be distributed to holders of Allowed Claims hereunder shall be adjusted as necessary to account for the foregoing rounding.

4. Undeliverable Distributions and Unclaimed Property.

In the event that any distribution to any holder of Allowed Claims or Allowed Interests (as applicable) is returned as undeliverable, no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one (1) year from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property Laws to the contrary), and the Claim of any holder of Claims and Interests to such property or Interest in property shall be discharged and forever barred.

5.  Surrender of Canceled Instruments or Securities.

On the Effective Date or as soon as reasonably practicable thereafter, each holder of a certificate or instrument evidencing a Claim or an Interest shall be deemed to have surrendered such certificate or instrument to the Disbursing Agent.  Such surrendered certificate or instrument shall be cancelled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the holder of a Claim or Interest, which shall continue in effect for purposes of allowing holders to receive distributions under the Plan, charging liens, priority of payment, and indemnification rights.  Notwithstanding anything to the contrary herein, this paragraph shall not apply to certificates or instruments evidencing Claims or Interests that are Unimpaired under the Plan.

E.   Manner of Payment.

At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

F.   Section 1145 Exemption.

Pursuant to section 1145 of the Bankruptcy Code, the issuance, exchange and distribution of the New Nautical Securities, as contemplated by Article III.B hereof, shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable Law requiring registration prior to the offering, issuance, exchange, distribution, or sale of Securities, to the maximum extent possible.  The offering of such New Nautical Securities prior to the Petition Date shall be exempt from such registration requirements pursuant to Section 4(a)(2) of the Securities Act and/or Regulation D promulgated thereunder.  In addition, under section 1145 of the Bankruptcy Code, such New Nautical Securities will be freely tradable in the U.S. by the recipients thereof, subject to the provisions of (i) section 1145 (b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act; (ii) compliance with applicable securities Laws and any rules and regulations of the SEC, if any, applicable at the time of any future transfer of such Securities or instruments; and (iii) any restrictions in the Reorganized Debtors' New Organizational Documents

G.   Compliance with Tax and Other Requirements.

In connection with the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Disbursing Agent shall be authorized to take all actions necessary to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

As of the Effective Date, (i) New Nautical HoldCo shall be properly classified as a partnership and treated as a continuation of Nautical for U.S. federal and applicable state and local income tax purposes, and (ii) Nautical will become a wholly owned subsidiary of New Nautical HoldCo classified as an entity disregarded as separate from Holdings for U.S. federal income tax purposes.  New Nautical HoldCo will be subject to a customary passive holding company covenant and its 100% ownership of Nautical will be addressed by the change of control provisions applicable to the New Senior Secured Notes.

H.   Allocations.

Other than with respect to the First Lien Claims, distributions with respect to Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the

extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

I.      *Foreign Currency Exchange Rate.*

        Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal (National Edition)*, on the Effective Date.

J.      *Setoffs and Recoupment.*

        Except as expressly provided in this Plan, each Reorganized Debtor may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that such Reorganized Debtor may hold against the holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the relevant Reorganized Debtor(s) and holder of Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided* that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Reorganized Debtor or its successor of any and all claims, rights, and Causes of Action that such Reorganized Debtor or its successor may possess against the applicable holder. In no event shall any holder of Claims against, or Interests in, the Debtors be entitled to recoup any such Claim or Interest against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Article XII.G hereof on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

K.      *Claims Paid or Payable by Third Parties.*

        1.      Claims Paid by Third Parties.

        The Debtors or the Reorganized Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or a Reorganized Debtor.  Subject to the last sentence of this paragraph, to the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such holder to timely repay or return such distribution shall result in the holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

        2.      Claims Payable by Third Parties.

        No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

        3.      Applicability of Insurance Policies.

        Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a

waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS**

A.      *Disputed Claims Process.*

Notwithstanding section 502(a) of the Bankruptcy Code, and in light of the Unimpaired status of all Allowed General Unsecured Claims under the Plan, except as required by the Plan, holders of Claims need not file Proofs of Claim, and the Reorganized Debtors and the holders of Claims shall determine, adjudicate, and resolve any disputes over the validity and amounts of such Claims in the ordinary course of business as if the Chapter 11 Cases had not been commenced except that (unless expressly waived pursuant to the Plan) the Allowed amount of such Claims shall be subject to the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 and 503 of the Bankruptcy Code, to the extent applicable.  All Proofs of Claim filed in these Chapter 11 Cases shall be considered objected to and Disputed without further action by the Debtors.  Upon the Effective Date, all Proofs of Claim filed against the Debtors, regardless of the time of filing, and including Proofs of Claim filed after the Effective Date, shall be deemed withdrawn and expunged, other than as provided below.  Notwithstanding anything in this Plan to the contrary, disputes regarding the amount of any Cure pursuant to section 365 of the Bankruptcy Code and Claims that the Debtors seek to have determined by the Bankruptcy Court, shall in all cases be determined by the Bankruptcy Court.

For the avoidance of doubt, there is no requirement to File a Proof of Claim or Proof of Interest (or move the Bankruptcy Court for allowance) to be an Allowed Claim or Allowed Interest, as applicable, under the Plan. Notwithstanding the foregoing, Entities must file Cure objections as set forth in Article VII hereof to the extent such Entity disputes the amount of the Cure paid or proposed to be paid by the Debtors or the Reorganized Debtors to a counterparty.  **Except as otherwise provided herein, all Proofs of Claim filed after the Effective Date shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any further notice to or action, order, or approval of the Bankruptcy Court.**

B.      *Allowance of Claims.*

Subject to the Restructuring Support Agreement, after the Effective Date and subject to the terms of this Plan, each of the Reorganized Debtors shall have and retain any and all rights and defenses such Debtor had with respect to any Claim or Interest immediately prior to the Effective Date.  The Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy Law.

C.      *Claims Administration Responsibilities.*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors shall have the sole authority: (1) to File, withdraw, or litigate to judgment, objections to Claims or Interests; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.  For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest.

The Debtors and Reorganized Debtors shall be entitled to dispute and/or otherwise object to any General Unsecured Claim in accordance with applicable nonbankruptcy Law.  If the Debtors, or Reorganized Debtors dispute any General Unsecured Claim, such dispute shall be determined, resolved, or adjudicated, as the case may be, in the manner as if the Chapter 11 Cases had not been commenced.  In any action or proceeding to determine the existence, validity, or amount of any General Unsecured Claim, any and all claims or defenses that could have been asserted by

the applicable Debtor(s) or the Entity holding such General Unsecured Claim are preserved as if the Chapter 11 Cases had not been commenced.

D.      *Estimation of Claims and Interests.*

Before or after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party in interest previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

E.      *Adjustment to Claims or Interests without Objection.*

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Debtors or Reorganized Debtors without the Debtors or Reorganized Debtors having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

F.      *Disallowance of Claims or Interests.*

All Claims and Interests of any Entity from which property is sought by the Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Reorganized Debtors allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if: (a) the Entity, on the one hand, and the Debtors or the Reorganized Debtors, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

G.      *No Distributions Pending Allowance.*

Notwithstanding any other provision of the Plan, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest; *provided* that if only the Allowed amount of an otherwise valid Claim or Interest is Disputed, such Claim or Interest shall be deemed Allowed in the amount not Disputed and payment or distribution shall be made on account of such undisputed amount.

H.      *Distributions After Allowance.*

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Interest, distributions (if any) shall be made to the holder of such Allowed Claim or Interest in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Interest becomes a Final Order, the Disbursing Agent shall provide to the holder of such Claim or Interest the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim or Interest.

I.      *No Interest.*

Unless otherwise specifically provided for herein or by order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      *Discharge of Claims and Termination of Interests.*

Pursuant to section 1141(d) of the Bankruptcy Code and except as otherwise specifically provided herein, or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided herein shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims that the Debtors resolve or compromise after the Effective Date), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services that employees of the Debtors have performed prior to the Effective Date, and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (a) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the holder of such a Claim or Interest has accepted the Plan.  Any default or "event of default" by the Debtors with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date.  Without prejudice to the distributions, rights, and treatment that are provided by the Plan, the Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date, and, upon the Effective Date, all holders of such Claims and Interests shall be forever precluded and enjoined, pursuant to Section 524 of the Bankruptcy Code, from prosecuting or asserting any such Claim or Interest against the Debtors, Reorganized Debtors, or any of their assets or property.

B.      **Release of Liens.**

**Except as otherwise provided in or pursuant to the New Senior Secured Notes Documents, the Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Allowed Other Secured Claims that the Debtors elect to Reinstate in accordance with Article III.B.1 hereof, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, other than, for the avoidance of doubt, the Liens and security interests granted or reconfirmed pursuant to, or in connection with, the New Senior Secured Notes Documents.  Any holder of such Allowed Secured Claim (and the applicable agents for such holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such holder (and the applicable agents for such holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

## C.     *Releases by the Debtors.*

Except as expressly set forth herein or in the Confirmation Order, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party that is not an ECO Affiliate is hereby deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged by each and all of the Debtors, and each of their respective current and former Affiliates, the Reorganized Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, including any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in Law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, or their Estates that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or any other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the Notes Purchase Agreements, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- and out-of-court restructuring efforts, intercompany transactions, the New Senior Secured Notes Documents, the pre-and postpetition marketing and sale process including any Asset Sale Documents, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, the Cash Collateral Orders, the Plan (including the Plan Supplement), the Disclosure Statement, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing, or consummation of the Definitive Documents or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Definitive Documents, the New Senior Secured Notes Documents, any Asset Sale Documents, or the Plan, the pursuit of confirmation, consummation, administration, and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan and the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the Debtors' releases shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, or (b) releasing any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

## D.     *Releases by Holders of Claims and Interests.*

Effective on the Effective Date, except (i) as expressly set forth herein or in the Confirmation Order, (ii) for the right to enforce the Plan, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable Law, as such Law may be extended or integrated after the date upon which the Bankruptcy Court enters the Confirmation Order, on and after the Effective Date, each Released Party, is hereby deemed expressly, conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each and all of the Releasing Parties (other than the Debtors and the Reorganized Debtors), in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, remedies, and liabilities, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in Law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, or their Estates, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or

Interest in, a Debtor, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the Notes Purchase Agreements, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- and out-of-court restructuring efforts, intercompany transactions, the New Senior Secured Notes Documents, the pre- and post-petition marketing and sale process including any Asset Sale Documents, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, the Cash Collateral Orders, the Plan (including the Plan Supplement), the Disclosure Statement, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing or consummation of the Definitive Documents or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Definitive Documents, the New Senior Secured Notes Documents, any Asset Sale Documents, or the Plan, the pursuit of confirmation, consummation, administration, and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; *provided* that nothing herein shall be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence (b) releasing any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or (c) releasing any Claims or Causes of Action by any Releasing Party against any Released Party arising from any financing or other transaction unrelated to the Debtors or the Chapter 11 Cases.

E.      *Exculpation.*

        Except as expressly provided herein or in the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party shall be released and exculpated from any and all Claims, Interests, obligations, rights, suits, damages, Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of the Chapter 11 Cases prior to the Effective Date (including the, the Restructuring Transactions, the Restructuring Support Agreement, the Cash Collateral Orders, the Plan (including the Plan Supplement), the Disclosure Statement, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing or consummation of the Definitive Documents or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Definitive Documents, the New Senior Secured Notes Documents, any Asset Sale Documents, or the Plan, the pursuit of confirmation, consummation, administration, and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable Laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable Law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan, or such distributions made pursuant to the Plan.

        This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable Laws, rules, or regulations protecting such Exculpated Parties from liability. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth in the Plan shall not be construed as exculpating any party or Entity from its post-Effective Date obligations under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**F.**     *Injunction.*

Except as otherwise expressly provided herein or in the Confirmation Order, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been extinguished, released, discharged, or are subject to exculpation, whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, affiliates, and Related Parties are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, and the Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has timely filed a motion with the Bankruptcy Court expressly requesting the right to perform such setoff, subrogation or recoupment on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth above.

The injunctions set forth above shall extend to any successors of the Debtors, the Reorganized Debtors, the Released Parties, and the Exculpated Parties and their respective property and interests in property.

No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII.C, Article VIII.D, and Article VIII.E hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party.

The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

*G.*     *Protections Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

*H.      Document Retention.*

On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors.

*I.      Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date:  (1) such Claim has been adjudicated as non-contingent or (2) the relevant holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

**ARTICLE IX.**
**CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN**

*A.      Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B hereof:

1.  the Debtors shall have obtained all governmental and third-party authorizations, consents, regulatory approvals, rulings, or documents, including Bankruptcy Court approval, that are necessary to implement and effectuate the Restructuring Transactions, and such authorizations, consents, regulatory approvals, rulings, or documents shall be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions;

2.  the final versions of the Definitive Documents and all of the schedules, documents, and exhibits related thereto shall be consistent with the Restructuring Support Agreement, the Restructuring Term Sheet, and this Plan, and otherwise approved by the parties thereto consistent with their respective consent and approval rights set forth in the Restructuring Support Agreement;

3.  the Restructuring Support Agreement shall be in full force and effect;

4.  the New Senior Secured Notes Exchange Agreement and all other New Senior Secured Notes Documents shall have been duly executed and delivered by all of the Entities that are parties thereto, all conditions precedent (other than any conditions related to the occurrence of the Effective Date) to the effectiveness of the New Senior Secured Notes Exchange Agreement and all other New Senior Secured Notes Documents shall have been satisfied or duly waived in writing in accordance with the terms of the applicable document, and the New Senior Secured Notes Exchange Agreement and all other New Senior Secured Notes Documents shall be in full force and effect;

5.  subject to the requirement in Section 3.01(a) of the Restructuring Support Agreement, the Asset Sale Documents shall be in full force and effect and not amended or modified in a manner adverse to the Consenting Creditors or the Debtors;

6.  there shall not be in effect any order by a governmental authority of competent jurisdiction restraining, enjoining, or otherwise prohibiting the consummation of the Restructuring Transactions;

7.  all Restructuring Expenses and, if applicable, any other fees, expenses, and other amounts payable to the Consenting Creditors pursuant to an order of the Bankruptcy Court, in each case, to the extent invoiced at least two (2) Business Days prior to the Effective Date, shall have been paid in full;

8. the Debtors shall have implemented the Restructuring Transactions and all transactions contemplated in the Restructuring Term Sheet in a manner consistent with the Restructuring Support Agreement, the Restructuring Term Sheet, and the Plan;

9. the Bankruptcy Court shall have entered an order approving the Disclosure Statement, which order shall be in full force and effect and no stay thereof shall be in effect;

10. the Bankruptcy Court shall have entered the Confirmation Order, which order shall be in full force and effect and no stay thereof shall be in effect, which shall:

   (a) authorize the Debtors to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan;

   (b) decree that the provisions in the Confirmation Order and the Plan are nonseverable and mutually dependent;

   (c) authorize the Debtors, as applicable/necessary, to:  (i) implement the Restructuring Transactions; (ii) make all distributions and issuances as required under the Plan; and (iii) enter into any agreements, transactions, and sales of property as set forth in the Plan (including the Plan Supplement);

   (d) authorize the implementation of the Plan in accordance with its terms;

   (e) provide that, pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax;

11. all Professional Fee Amounts shall have been paid in full or amounts sufficient to pay such Professional Fee Amounts after the Effective Date shall have been placed in the Professional Fee Escrow Account pending the approval of such fees and expenses by the Bankruptcy Court in accordance with Article II.B of the Plan; and

12. the Plan shall not have been materially amended, altered, or modified from the Plan as confirmed by the Confirmation Order, unless such material amendment, alteration, or modification has been made in accordance with the terms of the Plan as confirmed by the Confirmation Order and the Restructuring Support Agreement;

*provided* that, notwithstanding when a condition precedent to the Effective Date occurs, for purposes of the Plan, such condition precedent shall be deemed to have occurred simultaneously with the other conditions precedent to the Effective Date; *provided further* that, to the extent a condition precedent (a "**Prerequisite Condition**") may be required to occur prior to another condition precedent (a "**Subsequent Condition**"), then, for purposes of the Plan, the Prerequisite Condition shall be deemed to have occurred immediately prior to the Subsequent Condition regardless of when such Prerequisite Condition or Subsequent Condition shall have occurred.

B. *Waiver of Conditions.*

The conditions to Confirmation and Consummation set forth in this Article IX may be waived, in whole or in part, with the written consent of the Debtors and the Required Consenting Creditors without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

*C.      Substantial Consummation*

"Substantial consummation" of the Plan, as defined by section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

*D.      Effect of Failure of Conditions.*

If Consummation does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any Claims by the Debtors, any holders of Claims or Interests, or any other Entity; (2) prejudice in any manner the rights of the Debtors, any holders of Claims or Interests, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any holders of Claims or Interests, or any other Entity.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

*A.      Modification and Amendments.*

Except as otherwise specifically provided in this Plan and subject to the consent rights set forth in the Restructuring Support Agreement and subject to consultation with the Required Consenting Creditors, the Debtors reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and Bankruptcy Rules and, as appropriate, not resolicit votes on such modified Plan.  Subject to those restrictions on modifications set forth in the Plan and the Restructuring Support Agreement and the requirements of section 1127 of the Bankruptcy Code, Rule 3019 of the Federal Rules of Bankruptcy Procedure, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, each of the Debtors expressly reserves its respective rights to revoke or withdraw, or to alter, amend, or modify the Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

*B.      Effect of Confirmation on Modifications.*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

*C.      Revocation or Withdrawal of Plan.*

To the extent permitted by the Restructuring Support Agreement, the Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall:  (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating

to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V hereof, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that distributions to holders of Allowed Claims and Allowed Interests (as applicable) are accomplished pursuant to the provisions of the Plan and adjudicate controversies, if any, with respect to distributions to Holders of Allowed Claims and Allowed Interests (as applicable);

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.      enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

8.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan or otherwise in connection with the Chapter 11 Cases;

10.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, releases, injunctions, discharge, exculpations, and other provisions contained in Article VIII hereof and enter such orders as may be necessary or appropriate to implement and enforce such releases, injunctions, exculpations, and other provisions;

12.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.K hereof;

13.     enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan, the Plan Supplement, or the Disclosure Statement;

15.     enter an order concluding or closing the Chapter 11 Cases;

16.     adjudicate any and all disputes arising from or relating to distributions under the Plan;

17.     consider any modifications of the Plan, including to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.     determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

21.     hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions and releases granted in the Plan, including under Article VIII hereof, regardless of whether such termination occurred prior to or after the Effective Date;

22.     enforce all orders previously entered by the Bankruptcy Court; and

23.     hear any other matter not inconsistent with the Bankruptcy Code.

As of the Effective Date, notwithstanding anything in this Article XI to the contrary, the New Senior Secured Notes Documents shall be governed by the jurisdictional provisions therein and the Bankruptcy Court shall not retain any jurisdiction with respect thereto.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

*A.     Immediate Binding Effect.*

Subject to Article IX.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (including, for the avoidance of doubt, the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

*B.     Additional Documents.*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of the Plan and the Restructuring Support Agreement.  The Debtors or the Reorganized Debtors, as applicable, and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.      *Payment of Statutory Fees.*

All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid by each of the Reorganized Debtors (or the Disbursing Agent on behalf of each of the Reorganized Debtors) for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

D.      *Statutory Committee and Cessation of Fee and Expense Payment.*

On the Effective Date, any statutory committee appointed in the Chapter 11 Cases shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases.  The Reorganized Debtors shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committees after the Effective Date.

E.      *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the holders of Claims or Interests prior to the Effective Date.

F.      *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, Related Party, officer, manager, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.      *Notices.*

All notices, requests, and demands to or upon the Debtors, the Consenting Lenders or the Agent, the Consenting Noteholders, or the Consenting Members, to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

1.      Debtor:

Nautical Solutions, L.L.C.
16201 East Main Street,
Cut Off, LA 70354
Attention:  Adrian Danos; Luke Newman
Email address:  adrian.danos@chouest.com; luke.newman@chouest.com

with copies to:

Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654
Attention:  Patrick Nash, John Luze, and Jeffrey T. Michalik
E-mail addresses:  patrick.nash@kirkland.com, john.luze@kirkland.com, and jeff.michalik@kirkland.com

and

Jackson Walker LLP
1401 McKinney, Suite 1900
Houston, Texas 77010
Attention:  Jennifer F. Wertz, Victoria Argeroplos, and Javier Gonzalez
E-mail addresses:  jwertz@jw.com; vargeroplos@jw.com; and jgonzalez@jw.com

　　　　and

Tusk Capital Advisors, LLC
1510 State Street7
New Orleans, LA 70118
Attention:  Joe Maxwell
E-mail address: joe@tuskcapitaladvisors.com

2.  Consenting Lender and the Agent:

Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
Attention:  Nicholas Baker; Elisha D. Graff; and Zachary Weiner
E-mail addresses:  nbaker@stblaw.com; egraff@stblaw.com; zachary.weiner@stblaw.com

3.  Consenting Noteholder:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Attention:  Ray C. Schrock, P.C.; Andriana Georgallas; and Sean Feener
E-mail addresses:  ray.schrock@weil.com; andriana.georgallas@weil.com; sean.feener@weil.com

4.  Consenting Member:

Nautical Solutions, L.L.C.
16201 East Main Street
Cut Off, LA 70354
Attention:  Dino Chouest; Dionne Chouest Austin
E-mail addresses:  dino.chouest@chouest.com; dionne@chouest.com

After the Effective Date, the Debtors have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

H.      Term of Injunctions or Stays.

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

I.      *Entire Agreement.*

Except as otherwise indicated, and without limiting the effectiveness of the Restructuring Support Agreement, the Plan (including, for the avoidance of doubt, the Plan Supplement and the Confirmation Order) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan (including, for the avoidance of doubt, the Plan Supplement) and the Confirmation Order.

J.      *Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at http:// www.kccllc.net/nautical or the Bankruptcy Court's website at www.txs.uscourts.gov/bankruptcy.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

K.      *Nonseverability of Plan Provisions.*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted; *provided* that such alteration or interpretation shall be reasonably acceptable to the Debtors and the Required Consenting Creditors.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without consent from the Debtors and the Required Consenting Creditors; and (3) nonseverable and mutually dependent.

L.      *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtors will have any liability for the violation of any applicable Law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

M.      *Closing of Chapter 11 Cases.*

Upon the occurrence of the Effective Date, the Reorganized Debtors shall be permitted to close all of the Chapter 11 Cases except for one of the Chapter 11 Cases as determined by the Reorganized Debtors, and all contested matters (if any) relating to each of the Debtors, including objections to Claims, shall be administered and heard in such Chapter 11 Case.  The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

N.      *Waiver or Estoppel.*

Each holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

Dated: January 9, 2023

NAUTICAL SOLUTIONS, L.L.C.
on behalf of itself and its Debtor affiliate

/s/

Charles F. Comeaux
Chief Financial Officer
Nautical Solutions, L.L.C.

## Exhibit A

**Restructuring Support Agreement**

*Execution Version*

THIS RESTRUCTURING SUPPORT AGREEMENT IS NOT AN OFFER OR ACCEPTANCE WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE.  ANY SUCH OFFER OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE.  NOTHING CONTAINED IN THIS RESTRUCTURING SUPPORT AGREEMENT SHALL BE AN ADMISSION OF FACT OR LIABILITY OR, UNTIL THE OCCURRENCE OF THE AGREEMENT EFFECTIVE DATE ON THE TERMS DESCRIBED HEREIN, DEEMED BINDING ON ANY OF THE PARTIES HERETO.

## *RESTRUCTURING SUPPORT AGREEMENT*

This RESTRUCTURING SUPPORT AGREEMENT (including all exhibits, annexes, and schedules hereto in accordance with Section 16.02, this "**Agreement**") is made and entered into as of September 6, 2022 (the "**Execution Date**"), by and among the following parties (each of the following described in sub-clauses (i) through (iv) of this preamble, collectively, the "**Parties**"):[1]

i. Nautical Solutions, L.L.C., a limited liability company incorporated under the Laws of Louisiana (the "**Company**") and Nautical Solutions (Texas), LLC, a limited liability company incorporated under the Laws of Texas (the Entities in this clause (i), collectively, the "**Company Parties**");

ii. the undersigned holders of, or investment advisors, sub-advisors, or managers of discretionary accounts that hold, Notes Claims that have executed and delivered counterpart signature pages to this Agreement, a Joinder, or a Transfer Agreement to counsel to the Company Parties and Designated Counsel (the Entities in this clause (ii), collectively, the "**Consenting Noteholders**");

iii. the undersigned holders of Term Loan Claims that have executed and delivered counterpart signature pages to this Agreement, a Joinder, or a Transfer Agreement to counsel to the Company Parties and Designated Counsel (the Entities in this clause (iii), collectively, the "**Consenting Lenders**" and, together with the Consenting Noteholders, the "**Consenting Creditors**"); and

iv. the undersigned holders of Equity Interests of the Company that have executed and delivered counterpart signature pages to this Agreement or a Joinder to counsel to the Company Parties and Designated Counsel (the Entities in this clause (iv), collectively, the "**Consenting Members**" and, together with the Consenting Creditors, the "**Consenting Stakeholders**").

## *RECITALS*

**WHEREAS**, the Company Parties and the Consenting Stakeholders have in good faith and at arms' length negotiated or been apprised of certain restructuring and recapitalization

---

[1] Capitalized terms used but not defined in the preamble and recitals to this Agreement have the meanings set forth in Section 1.

transactions with respect to the Company Parties' capital structure on the terms set forth in this Agreement and as specified in the term sheet attached as **Exhibit A** hereto (the "**Restructuring Term Sheet**" and, such transactions as described in this Agreement and the Restructuring Term Sheet, the "**Restructuring Transactions**");

**WHEREAS**, the Company Parties intend to simultaneously commence (i) a private exchange of New Senior Secured Notes to be made by the Company to holders of Notes Claims and Term Loan Claims (the "**Exchange Offer**"), to be effectuated, to the extent set forth herein, through an out-of-court restructuring (such transactions, the "**Out-of-Court Restructuring**"), and (ii) a solicitation of votes for a chapter 11 plan (as may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto, the "**Plan**"), to be implemented, to the extent set forth herein, through the commencement by the Company Parties of pre-packaged bankruptcy cases under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**," such cases, the "**Chapter 11 Cases**," and such transactions, the "**In-Court Restructuring**"), in each case, consistent with the terms of this Agreement and the Restructuring Term Sheet;

**WHEREAS**, the Company intends to implement the Restructuring Transactions through the Out-of-Court Restructuring; *provided* that, if all conditions to consummation of the Exchange Offer and the Out-of-Court Restructuring, including the Out-of-Court Restructuring Consent Threshold, are not satisfied or waived in accordance with their terms, the Company Parties intend to implement the terms of the Restructuring Transactions pursuant to the In-Court Restructuring; and

**WHEREAS**, the Parties have agreed to take certain actions in support of the Restructuring Transactions on the terms and conditions set forth in this Agreement and the Restructuring Term Sheet.

**NOW, THEREFORE**, in consideration of the covenants and agreements contained herein, and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each Party, intending to be legally bound hereby, agrees as follows:

*AGREEMENT*

**Section 1.** *Definitions and Interpretation*.

1.01. <u>Definitions</u>. The following terms shall have the following definitions:

"**Additional Consenting Creditor**" has the meaning set forth in Section 9.03.

"**Affiliate**" has the meaning set forth in section 101(2) of the Bankruptcy Code as if such entity was a debtor in a case under the Bankruptcy Code.

"**Agent**" means JPMorgan Chase Bank, N.A. in its capacity as administrative agent and collateral agent for the holders of the Term Loans and in its capacity as collateral agent for the holders of the Notes, or any other administrative agent, collateral agent, or similar Entity under the

Credit Agreement or Notes Purchase Agreements, as applicable, that may exist from time to time, including, in each case, any successors thereto.

"**Agents/Trustees**" means, collectively, each of the Agents and Trustees.

"**Agreement**" has the meaning set forth in the preamble to this Agreement and, for the avoidance of doubt, includes all the exhibits, annexes, and schedules hereto in accordance with Section 16.02 (including the Restructuring Term Sheet), as may be amended, supplemented, or modified from time to time in accordance with this Agreement.

"**Agreement Effective Date**" means the date on which all of the conditions set forth in Section 2 have been satisfied or waived by the appropriate Party or Parties in accordance with this Agreement.

"**Agreement Effective Period**" means, with respect to a Party, the period from the Agreement Effective Date to the Termination Date applicable to that Party.

"**Alternative Restructuring Proposal**" means any inquiry, proposal, offer, bid, term sheet, discussion, or agreement with respect to a sale, disposition, new-money investment, restructuring, reorganization, merger, amalgamation, acquisition, consolidation, dissolution, debt investment, equity investment, liquidation, tender offer, recapitalization, plan of reorganization, share exchange, business combination, or similar transaction involving the Company Parties or the debt, equity, or other interests in the Company Parties other than the Restructuring Transactions.

"**Asset Sale Agreement**" means an agreement providing for the sale by the Company of six (6) 280' platform supply vessels in accordance with the terms of the Restructuring Term Sheet.

"**Asset Sale Documents**" means any Asset Sale Agreement and all documentation related thereto.

"**Bankruptcy Code**" has the meaning set forth in the recitals to this Agreement.

"**Bankruptcy Court**" has the meaning set forth in the recitals to this Agreement.

"**Business Day**" means any day other than a Saturday, Sunday, or other day on which commercial banks are authorized to close under the Laws of, or are in fact closed in, the state of New York.

"**Cash Collateral Orders**" means the Interim Cash Collateral Order and the Final Cash Collateral Order.

"**Causes of Action**" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, controversies, proceedings, agreements, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Restructuring Effective Date, in

contract, tort, law, equity, or otherwise.  Causes of Action also include:  (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any avoidance actions arising under chapter 5 of the Bankruptcy Code or under similar local, state, federal, or foreign statutes and common law, including fraudulent transfer Laws.

"**Chapter 11 Cases**" has the meaning set forth in the recitals to this Agreement.

"**Claim**" has the meaning ascribed to it in section 101(5) of the Bankruptcy Code.

"**Communications Materials**" means any press releases, communication with any news media, other external communications materials or disclosure documents, or comparable public filing relating to the Restructuring Transactions, including any regulatory filings.

"**Company**" has the meaning set forth in the preamble to this Agreement.

"**Company Claims/Interests**" means any Claim against, or Equity Interest in, the Company Parties, including the Term Loan Claims and the Notes Claims.

"**Company Parties**" has the meaning set forth in the preamble to this Agreement.

"**Confidentiality Agreement**" means an executed confidentiality agreement, including with respect to the issuance of a "cleansing letter" or other public disclosure of material non-public information agreement, in connection with any proposed Restructuring Transactions.

"**Confirmation Order**" means the confirmation order with respect to the Plan entered by the Bankruptcy Court in connection with an In-Court Restructuring, including all exhibits and schedules thereto.

"**Consenting Creditors**" has the meaning set forth in the preamble of this Agreement.

"**Consenting Creditors' and Agent's Advisors**" means, collectively, (a)(i) Weil; (ii) Baker, Donelson, Bearman, Caldwell & Berkowitz P.C., as maritime counsel to the Consenting Noteholders; (iii) TRP Advisors, LLC, as financial advisor to the Consenting Noteholders; (iv) local counsel to the Consenting Noteholders in material jurisdictions; and (v) Lazard Frères & Co. LLC, as investment banker to the Consenting Noteholders; (b)(i) Simpson, as counsel to the Agent; (ii) Jones Walker LLP, as maritime counsel to the Agent; (iii) CR3 Partners LLC, as financial advisor to the Agent; and (iv) local counsel to the Agent in material jurisdictions; and (c) any other advisors to other Consenting Creditors.

"**Consenting Creditor Fees and Expenses**" means all reasonable and documented fees and expenses of the Consenting Creditors' and Agent's Advisors.

"**Consenting Lenders**" has the meaning set forth in the preamble to this Agreement.

"**Consenting Members**" has the meaning set forth in the preamble to this Agreement.

"**Consenting Noteholders**" has the meaning set forth in the preamble of this Agreement.

"**Consenting Stakeholders**" has the meaning set forth in the preamble of this Agreement.

"**Credit Agreement**" means that certain First Amended and Restated Credit Agreement, dated as of December 7, 2018, among the Company, the lenders party thereto, JPMorgan Chase Bank, N.A., as administrative agent and collateral agent, Bank Of America, N.A., Wells Fargo Bank, N.A. and Suntrust Bank, as co-syndication agents, and Capital One, National Association, and Compass Bank, as co-documentation agents, as amended and restated from time to time, including pursuant to that certain Third Amendment, dated as of May 28, 2020.

"**Debtors**" means the Company Parties that commence Chapter 11 Cases, as applicable.

"**Definitive Documents**" has the meaning set forth in Section 4.01.

"**Designated Counsel**" means Weil and Simpson.

"**Disclosure Statement**" means the disclosure statement with respect to the Plan, that is prepared and distributed to holders of Notes Claims and Term Loan Claims in accordance with, among other things, sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Rule 3018 of the Federal Rules of Bankruptcy Procedure, and other applicable Law, and all exhibits, schedules, supplements, modifications, and amendments thereto.

"**Disclosure Statement Order**" means the order of the Bankruptcy Court approving the Disclosure Statement as a disclosure statement meeting the applicable requirements of the Bankruptcy Code and, to the extent necessary, approving the related Solicitation Materials, which order may be the Confirmation Order.

"**Entity**" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

"**Equity Interests**" or "**Interests**" means, collectively, the shares (or any class thereof), common stock, preferred stock, limited liability company interests, and any other equity, equity security (as defined in section 101(16) of the Bankruptcy Code), ownership, or profits interests of any Company Parties, and options, warrants, rights, or other securities or agreements to acquire or subscribe for, or which are convertible into the shares (or any class thereof) of, common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of any Company Parties (in each case whether or not arising under or in connection with any employment agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security).

"**Exchange Agreement**" means an agreement effectuating the Exchange Offer.

"**Exchange Offer**" has the meaning set forth in the recitals to this Agreement.

"**Execution Date**" has the meaning set forth in the preamble to this Agreement.

"**Forbearance Agreements**" means, collectively, (i) that certain *Forbearance Agreement*, dated as of August 20, 2021, by and among the Company and the Noteholders party thereto, with

respect to the Series A Notes; (ii) that certain *Forbearance Agreement*, dated as of August 20, 2021, by and among the Company and the Noteholders party thereto, with respect to the Series B Notes; and (iii) that certain *Amendment & Forbearance Agreement*, dated as of August 20, 2021, by and among the Company, JPMorgan Chase Bank, N.A. (in its capacity as administrative agent and collateral agent for the Term Loan Lenders), and the Term Loan Lenders party thereto, in each case, as amended.

"**Final Cash Collateral Order**" means an order of the Bankruptcy Court approving, on a final basis, the consensual use of cash collateral on terms consistent with the Restructuring Term Sheet.

"**First Day Pleadings**" means the first-day pleadings that the Company Parties determine are necessary or desirable to file with the Bankruptcy Court in the event of the In-Court Restructuring.

"**First Lien Claims**" means, collectively, the Notes Claims and the Term Loan Claims.

"**In-Court Restructuring**" has the meaning set forth in the recitals to this Agreement.

"**Initial Consenting Creditor**" means each Consenting Creditor listed on the signature pages hereto that (i) executes this Agreement on the Execution Date, and (ii) at all times on and after the Execution Date, continues to hold no less than the aggregate principal amount of First Lien Claims as such Consenting Creditor held on the Execution Date; *provided* that, if a Consenting Creditor that executes this Agreement on the Execution Date transfers its First Lien Claims to an Internal Transferee in accordance with Section 9 hereof, such Internal Transferee shall be deemed an "Initial Consenting Creditor" if, at all times on and after the date of such Internal Transfer, such Internal Transferee continues to hold no less than the aggregate principal amount of First Lien Claims as the Consenting Creditor transferor held on the Execution Date.  For the avoidance of doubt, a Consenting Creditor (or its Internal Transferee) shall cease to be an Initial Consenting Creditor if at any time on or after the Execution Date such Consenting Creditor (or its Internal Transferee) no longer holds at least the aggregate principal amount of First Lien Claims as such Consenting Creditor (or, in the case of an Internal Transfer, such Consenting Creditor transferor) held on the Execution Date.

"**Interim Cash Collateral Order**" means an order of the Bankruptcy Court approving, on an interim basis, the consensual use of cash collateral on terms consistent with the Restructuring Term Sheet.

"**Internal Transfer**" means, with respect to any Initial Consenting Creditor, a Transfer that (i) is to a fund or discretionary account that is co-managed or advised by the same Entity as, or a wholly-owned subsidiary of, such Initial Consenting Creditor, and (ii) otherwise complies with Section 9.01 hereof.

"**Internal Transferee**" means a Consenting Creditor who holds First Lien Claims as a result of an Internal Transfer.

"**Joinder**" means a joinder agreement pursuant to which a newly joining party becomes bound by the terms of this Agreement, the form of which is attached hereto as **Exhibit B**.

"**Law**" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

"**Milestones**" has the meaning set forth in Section 3.01.

"**New Senior Secured Notes**" means new senior secured notes to be issued by the Company on the Restructuring Effective Date, on the terms set forth in the New Secured Notes Term Sheet and on terms otherwise satisfactory to the Required Consenting Creditors.

"**New Senior Secured Notes Documents**" means the new Senior Secured Notes Purchase Agreement and all security and other documents related thereto.

"**New Senior Secured Notes Purchase Agreement**" means the purchase agreement with respect to the New Senior Secured Notes, which shall be on the terms and conditions set forth in the New Senior Secured Notes Term Sheet.

"**New Senior Secured Notes Term Sheet**" means the term sheet attached as Exhibit 1 to the Restructuring Term Sheet.

"**Non-Consenting Creditor**" has the meaning set forth in Section 14.03.

"**Noteholders**" means holders of, or investment advisors, sub-advisors, or managers of discretionary accounts that hold, Notes Claims.

"**Notes**" means (i) the Series A Notes and (ii) the Series B Notes.

"**Notes Claim**" means any Claim on account of, related to, or in connection with the Notes, Notes Purchase Agreements or any other document related thereto.

"**Notes Purchase Agreements**" means, collectively, the Series A Notes Purchase Agreement and the Series B Notes Purchase Agreement.

"**Out-of-Court Restructuring**" has the meaning set forth in the recitals to this Agreement.

"**Out-of-Court Restructuring Consent Threshold**" means, collectively, (i) holders of the Term Loans holding 100% of the aggregate outstanding principal amount of the Term Loans, and (ii) holders of the Notes representing 100% of the outstanding principal amount of the Notes.

"**Parties**" has the meaning set forth in the preamble to this Agreement.

"**Permitted Transferee**" means each transferee of any Company Claims/Interests who meets the requirements of Section 9.01.

"**Petition Date**" has the meaning set forth in Section 3.01.

"**Plan**" has the meaning set forth in the recitals to this Agreement.

"**Plan Supplement**" means, in the event of an In-Court Restructuring, the compilation of documents and/or forms of documents, agreements, schedules, and exhibits to the Plan that will be filed by the Debtors with the Bankruptcy Court, and all schedules, exhibits, ballots, solicitation procedures, and other documents and instruments related thereto, as may be amended, supplemented, or modified from time to time.

"**Qualified Marketmaker**" means an entity that (a) holds itself out to the public or the applicable private markets as standing ready in the ordinary course of business to purchase from customers and sell to customers Company Claims/Interests (or enter with customers into long and short positions in Company Claims/Interests), in its capacity as a dealer or market maker in Company Claims/Interests and (b) is, in fact, regularly in the business of making a market in claims of or against issuers or borrowers (including debt securities or other debt).

"**Release Agreement**" means a release agreement, substantially in the form attached hereto as **Exhibit D**, which the Company Parties, the Consenting Stakeholders, and the other holders of First Lien Claims party to the Exchange Agreement shall execute on the Restructuring Effective Date if the Parties effect the Out-of-Court Restructuring.

"**Reorganized Debtors**" means a Debtor, or any successor or assign thereto, by merger, consolidation, reorganization, or otherwise, in the form of a corporation, limited liability company, partnership, or other form, as the case may be, on and after the Restructuring Effective Date.

"**Required Consenting Creditors**" means, as of the relevant date, collectively, the Initial Consenting Creditors.

"**Restructuring Effective Date**" means the date on which the Out-of-Court Restructuring or the In-Court Restructuring, as applicable, is consummated (which, in the event of the In-Court Restructuring, shall be the effective date of the Plan).

"**Restructuring Term Sheet**" has the meaning set forth in the recitals to this Agreement.

"**Restructuring Transactions**" has the meaning set forth in the recitals to this Agreement.

"**Restructuring Transaction Steps**" means the memorandum setting forth steps necessary to implement the Restructuring Transactions.

"**Rules**" means Rule 501(a)(1), (2), (3), and (7) of the Securities Act.

"**Securities Act**" means the Securities Act of 1933, as amended.

"**Series A Notes**" means those certain Series A 7.50% amended and restated senior secured notes, due November 14, 2023, issued by the Company pursuant to the Series A Notes Purchase Agreement.

"**Series B Notes**" means those certain Series B 7.50% amended and restated senior secured notes, due November 14, 2023, issued by the Company pursuant to the Series B Notes Purchase Agreement.

"**Series A Notes Purchase Agreement**" means that certain Amended and Restated Note Purchase Agreement, dated December 7, 2018, by and among the Company, the noteholders party thereto, and JPMorgan Chase Bank, N.A., as collateral agent, as amended and restated from time to time, pursuant to which the Company issued the Series A Notes.

"**Series B Notes Purchase Agreement**" means that certain Amended and Restated Note Purchase Agreement, dated December 7, 2018, by and among the Company, the noteholders party thereto, and JPMorgan Chase Bank, N.A., as collateral agent, as amended and restated from time to time, pursuant to which the Company issued the Series B Notes.

"**Simpson**" means Simpson Thacher & Bartlett, LLP, as counsel to JPMorgan Chase Bank, N.A., in its capacity as Agent.

"**Solicitation**" means the solicitation of acceptances of the Exchange Offer and the solicitation of votes on the Plan pursuant to sections 1125 and 1126 of the Bankruptcy Code.

"**Solicitation Commencement Date**" has the meaning set forth in Section 3.01.

"**Solicitation End Date**" has the meaning set forth in Section 3.01.

"**Solicitation Materials**" means all documents, forms, and other materials provided in connection with the Solicitation (other than the Disclosure Statement).

"**Term Loans**" means loans outstanding under the Credit Agreement.

"**Term Loan Claims**" means any Claim on account of, related to, or in connection with the Term Loans, the Credit Agreement, or any other document related thereto.

"**Term Loan Lenders**" means the holders of Term Loan Claims.

"**Termination Date**" means the date on which termination of this Agreement as to a Party is effective in accordance with Sections 13.01, 13.02, 13.03, 1.01(a), or 13.05.

"**Transfer**" means to sell, resell, reallocate, use, pledge, assign, transfer, hypothecate, participate, donate or otherwise encumber or dispose of (including through derivatives, options, swaps, pledges, forward sales or other transactions).

"**Transfer Agreement**" means an executed form of a transfer agreement, substantially in the form attached hereto as **Exhibit C**, providing, among other things, that a transferee is bound by the terms of this Agreement.

"**Trustee**" means any indenture trustee, collateral trustee, or other trustee or similar entity under the Notes Purchase Agreements and related documents.

"**Weil**" means Weil, Gotshal & Manges LLP, as counsel to the Consenting Noteholders.

1.02.    Interpretation.  For purposes of this Agreement:

(a)      in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender;

(b)      capitalized terms defined only in the plural or singular form shall nonetheless have their defined meanings when used in the opposite form;

(c)      unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

(d)      unless otherwise specified, any reference herein to an existing document, schedule, or exhibit shall mean such document, schedule, or exhibit, as it may have been or may be amended, restated, supplemented, or otherwise modified from time to time; *provided* that any capitalized terms herein which are defined with reference to another agreement, are defined with reference to such other agreement as of the date of this Agreement, without giving effect to any termination of such other agreement or amendments to such capitalized terms in any such other agreement following the date hereof;

(e)      unless otherwise specified, all references herein to "Sections" are references to Sections of this Agreement;

(f)      the words "herein," "hereof," and "hereto" refer to this Agreement in its entirety rather than to any particular portion of this Agreement;

(g)      captions and headings to Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Agreement;

(h)      references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable limited liability company Laws; and

(i)      the use of "include" or "including" is without limitation, whether stated or not.

**Section 2.      *Effectiveness of this Agreement*.**  This Agreement shall become effective and binding upon each of the Parties at 12:00 a.m., prevailing Eastern Time, on the Agreement Effective Date, which is the date on which all of the following conditions have been satisfied or waived in accordance with this Agreement:

(a)      the Company Parties and the Consenting Members holding 100% of the Equity Interests in the Company shall have executed and delivered counterpart signature pages of this Agreement to counsel to each of the Parties;

(b)      each of the Company Parties shall have provided Designated Counsel with a copy of the resolutions, minutes, or written consents of its members, board of managers, or such similar governing body: (i) approving the terms of this Agreement and (ii) authorizing a specified person or persons to execute this Agreement on its behalf;

(c)     all Consenting Creditor Fees and Expenses shall have been paid current as of the Agreement Effective Date;

(d)     holders of at least 66.67% of the aggregate outstanding principal amount of First Lien Claims have executed and delivered counterpart signature pages of this Agreement; and

(e)     counsel to the Company Parties shall have given notice to Designated Counsel in the manner set forth in Section 16.10 hereof (by email or otherwise) that the other conditions to the Agreement Effective Date set forth in this Section 2 have occurred.

**Section 3.      *Milestones.***

3.01.    The Consenting Creditors' support for the Restructuring Transactions shall be subject to the timely satisfaction of the following milestones (the "**Milestones**"), which, except as otherwise provided herein, may be extended with the prior written consent (email shall suffice, including from respective counsel) of the Company Parties and the Required Consenting Creditors:

(a)     As soon as reasonably practicable following the Agreement Effective Date, but in no event later than five (5) Business Days prior to the commencement of the Solicitation (the date on which the Solicitation is commenced, the "**Solicitation Commencement Date**"), (x) the Definitive Documents necessary for the Solicitation, including those documents listed in Sections 4.01(a), (b), (d), (g), (h), (i), and (j)(ii), and any other documents, instruments, schedules or exhibits described in, related to, contemplated in, or necessary to implement each of the foregoing, shall be in agreed form in accordance with the consent rights set forth in Section 4.02 hereof, and (y) the Asset Sale Documents shall be fully executed and in full force and effect.

(b)     Not later than 11:59pm (ET) on November 1, 2022, the Solicitation Commencement Date shall have occurred; *provided* that the Required Consenting Creditors may, by written notice to the Company Parties, in their sole and absolute discretion, extend the Milestone in this subpart (b) to December 1, 2022.

(c)     Not later than 11:59pm (ET) on the date that is twenty (20) calendar days following the Solicitation Commencement Date (the "**Solicitation End Date**"), the Company Parties shall conclude the Solicitation.

(d)     If the Out-of-Court Restructuring Consent Threshold is satisfied at or before the Solicitation End Date, the Parties shall close the Out-of-Court Restructuring as soon as practicable, but in no event later than fifteen (15) Business Days after the Solicitation End Date.

(e)     If the Out-of-Court Restructuring Consent Threshold is not satisfied at or before the Solicitation End Date, as soon as practicable, but in no event later than the date that is five (5) Business Days following the Solicitation End Date, the Company shall have commenced the Chapter 11 Cases (the date on which the Chapter 11 Cases are commenced, the "**Petition Date**").

(f)     Not later than three (3) Business Days after the Petition Date, the Interim Cash Collateral Order shall have been entered by the Bankruptcy Court.

(g)      Not later than thirty-five (35) calendar days after the Petition Date, the Final Cash Collateral Order shall have been entered by the Bankruptcy Court.

(h)      Not later than sixty (60) calendar days following the Petition Date, the effective date of the Plan shall have occurred.

**Section 4.** *Definitive Documents.*

4.01.   "**Definitive Documents**" shall mean this Agreement and all other agreements, instruments, pleadings, filings, notices, letters, affidavits, applications, orders (whether proposed or entered), forms, questionnaires and other documents (including all exhibits, schedules, supplements, appendices, annexes, instructions and attachments thereto) that are utilized to implement or effectuate, or that otherwise relate to, the Restructuring Transactions (including all amendments, modifications, and supplements made thereto from time to time), including each of the following:

(a)      the Disclosure Statement and any related Solicitation Materials;

(b)      the New Senior Secured Notes Documents (including the New Senior Secured Notes Purchase Agreement and the New Senior Secured Notes) and related security documents (including each document and instrument referenced or necessary to effectuate the transactions described in the section entitled "*Enhanced Collateral Package*" in the New Senior Secured Notes Term Sheet) and shared services agreements;

(c)      any Communications Materials;

(d)      the Exchange Agreement;

(e)      any key employee incentive plan, key employee retention plan, management incentive plan, or similar plan;

(f)      new organizational documents for any Company Party;

(g)      the Asset Sale Documents;

(h)      the Release Agreement;

(i)      the Restructuring Transaction Steps; and

(j)      without limiting the foregoing, in connection with a potential implementation of the Restructuring Transactions through the In-Court Restructuring:

(i)      the First Day Pleadings;

(ii)      the Plan;

(iii)      the Plan Supplement;

(iv)     the Cash Collateral Orders, and any amended or additional orders governing the use of cash collateral;

(v)      any debtor in possession financing documents, including any related credit agreement;

(vi)     any motion, brief, or pleading filed by the Company Parties in the Chapter 11 Cases seeking approval or confirmation of any of the foregoing Definitive Documents, and any proposed order to approve any of the foregoing, including, without limitation, the Confirmation Order and the Disclosure Statement Order; and

(vii)    any other documents, instruments, schedules or exhibits described in, related to, contemplated in, or necessary to implement each of the foregoing.

4.02.   The Definitive Documents not executed or in a form attached to this Agreement as of the Execution Date remain subject to negotiation and completion.  Upon completion, the Definitive Documents and every other document, deed, agreement, filing, notification, letter or instrument related to the Restructuring Transactions shall contain terms, conditions, representations, warranties, and covenants consistent with the terms of this Agreement and the Restructuring Term Sheet, as they may be modified, amended, or supplemented in accordance with Section 14.  All Definitive Documents, including those not executed or in a form attached to this Agreement as of the Execution Date, must be in form and substance reasonably acceptable to (a) the Company Parties, and (b) the Required Consenting Creditors.

**Section 5.**    *Commitments of the Consenting Stakeholders*.

5.01.   <u>General Commitments, Forbearances, and Waivers</u>.

(a)      During the Agreement Effective Period, each Consenting Stakeholder agrees, in respect of all of its Company Claims/Interests, to:

(i)      take commercially reasonable steps to support the Restructuring Transactions as contemplated by this Agreement and, after they are agreed in accordance with Section 4.02, the Definitive Documents, and subject to Section 5.02, vote and exercise any powers or rights available to it (including in any board, shareholders', or creditors' meeting or in any process requiring voting or approval to which they are legally entitled to participate or instructing its proxy or other relevant person to vote, to the extent it is legally entitled to instruct such person) in each case in favor of any matter requiring approval to the extent necessary to implement the Restructuring Transactions, including the Exchange Offer;

(ii)     give any notice, order, instruction, or direction to the applicable Agents/Trustees necessary to give effect to the Restructuring Transactions; and

(iii)    negotiate in good faith and use commercially reasonable efforts to execute and implement the Definitive Documents that are consistent with this Agreement.

(b)      During the Agreement Effective Period, each Consenting Stakeholder agrees, in respect of all of its Company Claims/Interests, that it shall not (and shall not cause any other person

to), other than to enforce this Agreement or any Definitive Documents or as otherwise permitted under this Agreement, directly or indirectly:

(i)      object to, delay, impede, or take any other action to interfere with acceptance, implementation, or consummation of the Restructuring Transactions;

(ii)     propose, file, support, or vote for any Alternative Restructuring Proposal;

(iii)    file any motion, pleading, or other document with the Bankruptcy Court (if the Restructuring Transactions are to be implemented through the In-Court Restructuring) or any other court (including any modifications or amendments thereof) that is not materially consistent with this Agreement or the Plan;

(iv)    initiate, or have initiated on its behalf, any litigation or proceeding of any kind with respect to the Chapter 11 Cases, this Agreement, or the other Restructuring Transactions contemplated herein against the Company Parties or the other Parties;

(v)     exercise, or direct any other person to exercise, any right or remedy for the enforcement, collection, or recovery of any Company Claims/Interests; or

(vi)    object to, delay, impede, or take any other action to interfere with the any of the Company Parties' ownership and possession of their assets, wherever located, or if the Restructuring Transactions are to be implemented through the In-Court Restructuring, interfere with the automatic stay arising under section 362 of the Bankruptcy Code.

5.02.  Commitments with Respect to Chapter 11 Cases in an In-Court Restructuring.

(a)     During the Agreement Effective Period, in connection with a potential implementation of the Restructuring Transactions through the In-Court Restructuring, each Consenting Stakeholder that is entitled to vote to accept or reject the Plan pursuant to its terms severally, and not jointly, agrees that it shall, subject to receipt by such Consenting Stakeholder, whether before or after the commencement of the Chapter 11 Cases, of the Disclosure Statement and any other Solicitation Materials:

(i)      vote each of its Company Claims/Interests to accept the Plan by delivering its duly executed and completed ballot accepting the Plan on a timely basis following the commencement of the solicitation of the Plan and its actual receipt of the Disclosure Statement and any other Solicitation Materials and the ballot;

(ii)     to the extent it is permitted to elect whether to opt out of the releases set forth in the Plan, elect not to opt out of the releases set forth in the Plan by timely delivering its duly executed and completed ballot(s) indicating such election; and

(iii)    not change, withdraw, amend, or revoke (or cause to be changed, withdrawn, amended, or revoked) any vote or election referred to in clauses (i) and (ii) above.

(b)     During the Agreement Effective Period, each Consenting Stakeholder, in respect of each of its Company Claims/Interests, will support, and will not directly or indirectly object to,

delay, impede, or take any other action to interfere with any motion or other pleading or document filed by a Company Party in the Bankruptcy Court that is consistent with this Agreement.

(c)      Notwithstanding any other provisions of this Agreement, including this Section 5, nothing in this Agreement shall require any Consenting Creditor to incur any material expenses, liabilities, or other obligations, or agree to any commitments, undertakings, concessions, indemnities, grants of any liens or security interests, or other arrangements that could result in expenses, liabilities, or other obligations to any Consenting Creditor or its Affiliates; *provided* that nothing in this clause shall serve to limit, alter, or modify any Consenting Creditor's obligations under the terms of this Agreement or the Definitive Documents.

**Section 6.      *Additional Provisions Regarding the Consenting Stakeholders' Commitments*.** Notwithstanding anything contained in this Agreement, and notwithstanding any delivery of a vote to accept a Plan or an election not to opt out of the releases in the Plan by any Consenting Creditor, or any acceptance of a Plan by any class of creditors, nothing in this Agreement shall: (a) affect the ability of any Consenting Stakeholder to consult with any other Consenting Stakeholder, the Company Parties, or any other party in interest in the Chapter 11 Cases (including any official committee and the United States Trustee); (b) impair or waive the rights of any Consenting Stakeholder to assert or raise any objection permitted under this Agreement in connection with the Restructuring Transactions; (c) prevent or otherwise limit any Consenting Stakeholder from enforcing this Agreement or any other Definitive Documents, or contesting whether any matter, fact, or thing is a breach of, or is inconsistent with, this Agreement or any other Definitive Document or exercising any right or remedy provided under this Agreement or any other Definitive Document (including enforcing or directing the enforcement of any rights or remedies available to such Consenting Stakeholder under the Cash Collateral Orders or any documents related thereto); (d) require any Consenting Creditor to incur any financial or other liability other than as expressly described in this Agreement; (e) require any Consenting Creditor to consent to, acquiesce in, vote for, support, or not object to any Alternative Restructuring Proposal or any portion thereof; (f) obligate a Consenting Creditor to deliver a vote to support the Plan or elect not to opt out of the releases in the Plan, or prohibit a Consenting Creditor from withdrawing, amending, or revoking such vote or its release election, in each case from and after the Termination Date applicable to such Consenting Creditor (other than a Termination Date as a result of the occurrence of the Restructuring Effective Date); *provided* that upon the withdrawal or amendment of any such vote or release election after the applicable Termination Date (other than a Termination Date as a result of the occurrence of the Restructuring Effective Date), such vote and release election shall be deemed void *ab initio* and such Consenting Creditor shall have the opportunity to change its vote and election at any time before entry of the Confirmation Order; or (g) subject to the terms of this Agreement, prohibit any Consenting Creditor from taking any action that is not inconsistent with this Agreement.

**Section 7.      *Commitments of the Company Parties.*** <u>Affirmative Commitments</u>. Except as set forth in Section 8, during the Agreement Effective Period, the Company Parties agree to:

(a)      support and in good faith promptly take all steps reasonably necessary and desirable to support, facilitate, implement, and consummate or otherwise give effect to all or part of the Restructuring Transactions in accordance with this Agreement and the Restructuring Term Sheet;

(b)      to the extent any legal or structural impediment arises that would prevent, hinder, or delay the consummation of the Restructuring Transactions contemplated herein, (i) promptly take all steps reasonably necessary and desirable to address any such impediment and (ii) negotiate in good faith with the Consenting Stakeholders regarding appropriate additional or alternative provisions to address such impediment;

(c)      negotiate in good faith and promptly take all steps necessary to prepare, execute and deliver the Definitive Documents and any other required documents or agreements to effectuate and consummate the Restructuring Transactions as contemplated by this Agreement;

(d)      (i) commercially reasonable efforts to seek additional support for the Restructuring Transactions from their other material stakeholders to the extent reasonably prudent and (ii)  to the extent the Company Parties receive any Transfer Agreement or Joinder, promptly notify Designated Counsel of such Transfer Agreement or Joinder; and

(e)      from the Agreement Effective Date through and including the Restructuring Effective Date, pay in full and in cash all Consenting Creditor Fees and Expenses when properly incurred and invoiced in accordance with the relevant engagement letters and/or fee arrangements, and continue to pay such amounts as they come due and, in the case of the In-Court Restructuring, seek to pay such Consenting Creditor Fees and Expenses pursuant to the Cash Collateral Orders (or such other appropriate order of the Bankruptcy Court), and otherwise in accordance with the applicable engagement letters and/or fee arrangements of the Consenting Creditor Advisors (and not terminate such engagement letters and/or fee arrangements or seek to reject them in any Chapter 11 Case);

(f)      operate their business and enter into transactions solely in the ordinary course in a manner consistent with past practice in all material respects, and shall not operate their business or enter into any transactions in contravention of the foregoing except as expressly provided in the Restructuring Term Sheet;

(g)      provide to Designated Counsel draft copies of any Communications Materials, to the extent permitted by applicable Law, as soon as reasonably practicable, but not later than one (1) Business Day prior to the issuance of such Communications Materials;

(h)      upon reasonable request of any of the Consenting Creditors or their advisors, inform the legal and financial advisors to the Consenting Creditors as to: (A) the material business and financial (including liquidity) performance of the Company Parties; (B) the status and progress of the negotiations of the Definitive Documents; and (C) the status of obtaining any necessary or desirable authorizations (including consents) from any competent judicial body, governmental authority, banking, taxation, supervisory, or regulatory body;

(i)      if the Restructuring Transactions are to be implemented through the In-Court Restructuring, provide Designated Counsel (i) draft copies of all First Day Pleadings not less than five (5) Business Days in advance of the Petition Date, and (ii) any other motions, documents or other pleadings that the Company Parties intend to file with the Bankruptcy Court (x) to the extent reasonably practicable, not less than three (3) Business Days in advance of the filing thereof, and (y) if not reasonably practicable within the time period specified in subpart (x) hereof, as soon as

16

reasonably practicable, but in any event in advance of filing thereof in such circumstances, and the Company Parties shall notify Designated Counsel telephonically or by electronic mail to advise them of the documents to be filed and the facts that make the provision of advance copies within the time period specified in subpart (x) hereof not reasonably practicable, and (ii) without limiting any approval rights set forth in this Agreement, consult in good faith with Designated Counsel any comments to draft copies provided pursuant to sub-clause (i);

(j)      provide to Designated Counsel, upon reasonable advance notice to the applicable Company Parties, timely and reasonable responses to all reasonable diligence requests by Designated Counsel or the Consenting Creditors, and act reasonably in co-operating with and assisting the Consenting Creditors in relation any due diligence requests they may have;

(k)      without waiving any rights or remedies thereunder, comply with the covenants in the Credit Agreement and the Notes Purchase Agreements, other than with respect to the Specified Defaults (as defined in the Forbearance Agreements) referenced in the Forbearance Agreements;

(l)      (i) prior to the Agreement Effective Date, provide to the Consenting Creditors' and Agent's Advisors (x) an updated thirteen-week cash flow forecast in form and substance reasonably acceptable to the Required Consenting Creditors, setting forth a forecast of cash inflows and outflows of the Company Parties (on a consolidated basis) over such period and (y) a summary of the projected sources and uses of cash needed to make any payments required in connection with the Restructuring Effective Date (clause (x) and (y) together, the "Cash Flow Forecast"); (ii) on Wednesday of each week during the Agreement Effective Period, starting with the first Wednesday after the Agreement Effective Date, provide to the Consenting Creditors' and Agent's Advisors a budget of the projected cash inflows and cash outflows of the Company Parties for the coming calendar week; and (iii) on the third Wednesday after the Agreement Effective Date and continuing for the duration of the Agreement Effective Period, provide to the Consenting Creditors' and Agent's Advisors a variance report showing the differences between the actual cash inflows and outflows and the projected cash inflows and outflows for the prior two-week period with an explanation as to what caused such variance, in each case in form and substance acceptable to the Required Consenting Creditors;

(m)      maintain the Company's classification as a partnership for U.S. federal and applicable state and local income tax purposes; and

(n)      inform Designated Counsel in writing as soon as reasonably practicable, and in any event within one (1) Business Day upon becoming aware of, any matter that is reasonably likely to impede, delay or otherwise frustrate the implementation or consummation of the Restructuring Transactions.

7.02.   Negative Commitments.  Except as set forth in Section 8, during the Agreement Effective Period, the Company Parties shall not directly or indirectly and shall not direct or encourage any other Entity to:

(a)      object to, delay, impede, or take any other action to interfere with acceptance, implementation, or consummation of the Restructuring Transactions;

(b)      take any action that is inconsistent with, or is intended to or could be reasonably expected to frustrate or impede approval, implementation, or consummation of the Restructuring Transactions described in this Agreement or the Plan;

(c)      publicly announce its intention not to pursue the Restructuring Transactions;

(d)      modify the Plan, in whole or in part, in a manner that is not consistent with this Agreement;

(e)      file any motion, pleading, or Definitive Documents with the Bankruptcy Court or any other court (including any modifications or amendments thereof) that, in whole or in part, is not consistent with this Agreement or the Plan;

(f)      withdraw or revoke the Plan;

(g)      file any motion, pleading or Definitive Documents with the Bankruptcy Court or any other court or otherwise support or seek any challenge to the validity, enforceability, perfection or priority of, or any action seeking avoidance, clawback, recharacterization or subordination of, any portion of the Note Claims and/or Term Loan Claims or any liens or collateral securing such Note Claims and/or Term Loan Claims;

(h)      commence, support or join any litigation or adversary proceeding against any Consenting Creditor other than in connection with the enforcement of their rights under this Agreement or any order of the Bankruptcy Court;

(i)      make any payments to or on account of, or provide (or agree to provide) any other economic rights or benefits to, a holder of Term Loan Claims or Notes Claims that is not a Consenting Creditor that is more favorable to the payments and economic rights and benefits being provided to the Consenting Creditors pursuant to the Restructuring Transactions; or

(j)      amend or propose to amend its respective certificate or articles of incorporation, bylaws, or comparable organizational documents in a manner inconsistent with this Agreement or the Restructuring Term Sheet, as applicable.

**Section 8.      *Additional Provisions Regarding Company Parties' Commitments.*** Notwithstanding anything to the contrary in this Agreement, nothing in this Agreement shall require a Company Party or the board of directors, board of managers, or similar governing body of a Company Party, after consulting with external counsel, to take any action or to refrain from taking any action with respect to the Restructuring Transactions to the extent taking or failing to take such action would be inconsistent with applicable Law or its fiduciary obligations under applicable Law, and any such action or inaction pursuant to this Section 8.01 shall not be deemed to constitute a breach of this Agreement except for failure to comply with this Section 8.01.

8.02.      Until the earlier of the Restructuring Effective Date and such time as this Agreement is terminated in accordance with Section 13, no Company Party shall, and each Company Party shall cause its respective representatives and Affiliates not to, directly or indirectly, (a) solicit, initiate or knowingly encourage any Alternative Restructuring Proposal, (b) enter into, participate in or encourage any discussions or negotiations relating to, or disclose,

furnish or afford access to any information concerning any Company Party (including any Company Party's personnel, businesses, properties, books or records) in connection with, or assist, or cooperate with any Entity in making or proposing, or take any other action to facilitate, any Alternative Restructuring Proposal, or (c) authorize or enter into any agreement or understanding (whether binding or nonbinding, written or oral) relating to, or engage in or consummate, any Alternative Restructuring Proposal; *provided* that the foregoing shall not restrict, prohibit, or otherwise limit any Company Party or any of their respective representatives or Affiliates from responding to (including by furnishing information to (in which case such Company Party shall furnish to the Consenting Creditors and Designated Counsel any such information not previously furnished to such parties)) and entering into discussions or negotiations with any third parties who, absent any such prior encouragement, solicitation or initiation of any inquiries regarding an Alternative Restructuring Proposal by any Company Party in violation of this Section 8.02, contact any Company Party with respect to an Alternative Restructuring Proposal; *provided further* that the Company Parties shall (x) promptly and in any event within two (2) Business Days provide notice of actual receipt of any Alternative Restructuring Proposal to Designated Counsel, with a copy of each proposal and a summary of the material terms of each, (y) promptly and in any event within two (2) Business Days provide such information to the Designated Counsel as reasonably requested by the Consenting Creditors, and (z) provide regular updates (on no less than a weekly basis) to the Consenting Creditors and Designated Counsel about any discussions or negotiations regarding an Alternative Restructuring Proposal that may affect the Restructuring Transactions contemplated by this Agreement.

8.03.    Nothing in this Agreement shall: (a) impair or waive the rights of a Company Party to assert or raise any objection permitted under this Agreement in connection with the Restructuring Transactions; or (b) prevent a Company Party from enforcing this Agreement or contesting whether any matter, fact, or thing is a breach of, or is inconsistent with, this Agreement.

**Section 9.    *Transfer of Interests and Claims; Joinders.*** During the Agreement Effective Period, subject to Section 9.04, no Consenting Stakeholder shall Transfer (a) any ownership (including any beneficial ownership as defined in the Rule 13d-3 under the Securities Exchange Act of 1934, as amended) in any Company Claims/Interests or (b) other rights that such Consenting Stakeholder has by virtue of being a holder of a Company Claim/Interest (including any voting or consent rights), to any affiliated or unaffiliated party, including any party in which it may hold a direct or indirect beneficial interest, unless, with respect to Transfers by Consenting Creditors:

(a)    the transferee is either (1) a qualified institutional buyer as defined in Rule 144A of the Securities Act, (2) a non-U.S. person in an offshore transaction as defined under Regulation S under the Securities Act, (3) an institutional accredited investor (as defined in the Rules), or (4) a Consenting Creditor; and

(b)    either (i) the transferee executes and delivers to counsel to the Company Parties and Designated Counsel, at or before the time of the proposed Transfer, a Transfer Agreement or (ii) the transferee is a Consenting Creditor and the transferee provides notice of such Transfer (including the amount and type of Company Claim/Interest Transferred) to counsel to the Company Parties and Designated Counsel at or before the time of the proposed Transfer.

9.02.    Upon compliance with the requirements of Section 9.01, the transferor shall be deemed to relinquish its rights (and be released from its obligations) under this Agreement to the extent of the rights and obligations in respect of such transferred Company Claims/Interests without prejudice to the accrued rights of the Consenting Creditor against any Party or the accrued rights of any other Party against the Consenting Creditor with respect to any prior breach of any of the terms of this Agreement.  Any Transfer in violation of Section 9.01 shall be void *ab initio* and the Company Parties and each other Consenting Stakeholder shall have the right to enforce the voiding of such Transfer.

9.03.    Any Noteholder or Term Loan Lender may, at any time after the Agreement Effective Date, become a Party to this Agreement as a Consenting Creditor (an "**Additional Consenting Creditor**") by executing and delivering to the Company Parties and Designated Counsel a Joinder pursuant to which such Additional Consenting Creditor shall be bound by the terms of this Agreement as a Consenting Creditor, as applicable, and shall be deemed a Consenting Creditor for all purposes hereunder.

9.04.    This Agreement shall in no way be construed to preclude any Consenting Creditor from acquiring additional Company Claims/Interests; *provided* that (a) such additional Company Claims/Interests shall automatically and immediately upon acquisition by a Consenting Creditor be deemed subject to the terms of this Agreement (regardless of when or whether notice of such acquisition is given to counsel to the Company Parties or counsel to the Consenting Stakeholders) and (b) such Consenting Creditor must provide notice of such acquisition (including the amount and type of Company Claim/Interest acquired) to counsel to the Company Parties and Designated Counsel within five (5) Business Days of such acquisition.

9.05.    This Section 9 shall not impose any obligation on any Company Party to issue any "cleansing letter" or otherwise publicly disclose information for the purpose of enabling a Consenting Creditor to Transfer any of its Company Claims/Interests.  Notwithstanding anything to the contrary herein, to the extent a Company Party and another Party have entered into a Confidentiality Agreement, the terms of such Confidentiality Agreement shall continue to apply and remain in full force and effect according to its terms, and this Agreement does not supersede any rights or obligations otherwise arising under such Confidentiality Agreements.

9.06.    Notwithstanding Section 9.01, a Qualified Marketmaker that acquires any Company Claims/Interests with the purpose and intent of acting as a Qualified Marketmaker for such Company Claims/Interests shall not be required to execute and deliver a Transfer Agreement in respect of such Company Claims/Interests if (i) such Qualified Marketmaker subsequently transfers such Company Claims/Interests (by purchase, sale assignment, participation, or otherwise) within ten (10) Business Days of its acquisition; (ii) the transferee otherwise is a Permitted Transferee under Section 9.01; and (iii) the Transfer otherwise is a Permitted Transfer under Section 9.01.  To the extent that a Consenting Stakeholder is acting in its capacity as a Qualified Marketmaker, it may Transfer (by purchase, sale, assignment, participation, or otherwise) any right, title or interests in Company Claims/Interests that the Qualified Marketmaker acquires from a holder of the Company Claims/Interests who is not a Consenting Stakeholder without the requirement that the transferee be a Permitted Transferee.

9.07.    Notwithstanding anything to the contrary in this Section 9, the restrictions on Transfer set forth in this Section 9 shall not apply to the grant of any liens or encumbrances on any claims and interests in favor of a bank or broker-dealer holding custody of such claims and interests in the ordinary course of business and which lien or encumbrance is released upon the Transfer of such claims and interests.

**Section 10.    *Representations and Warranties of Consenting Stakeholders*.**  Each Consenting Stakeholder severally, and not jointly, represents and warrants that, as of the date such Consenting Stakeholder executes and delivers this Agreement, a Joinder, or a Transfer Agreement, as applicable, and as of the Restructuring Effective Date:

(a)    it is the beneficial or record owner of the face amount of the Company Claims/Interests or is the nominee, investment manager, or advisor for beneficial holders of the Company Claims/Interests reflected in, and, having made reasonable inquiry, is not the beneficial or record owner of any Company Claims/Interests other than those reflected in, such Consenting Stakeholder's signature page to this Agreement, a Joinder, or a Transfer Agreement, as applicable (as may be updated pursuant to Section 9);

(b)    it has the full power and authority to act on behalf of, vote and consent to matters concerning, such Company Claims/Interests;

(c)    such Company Claims/Interests are, to the best of their knowledge, free and clear of any pledge, lien, security interest, charge, claim, equity, option, proxy, voting restriction, right of first refusal, or other limitation on disposition, transfer, or encumbrances of any kind, that would adversely affect in any way such Consenting Stakeholder's ability to perform any of its obligations under this Agreement at the time such obligations are required to be performed; and

(d)    (i) it is either (A) a qualified institutional buyer as defined in Rule 144A of the Securities Act, (B) not a U.S. person (as defined in Regulation S of the Securities Act), or (C) an institutional accredited investor (as defined in the Rules), and (ii) any securities acquired by the Consenting Stakeholder in connection with the Restructuring Transactions will have been acquired for investment and not with a view to distribution or resale in violation of the Securities Act.

**Section 11.    *Company Party Representations and Warranties*.**  Each Company Party severally, and not jointly, represents and warrants that, as of the Agreement Effective Date, and as of the Restructuring Effective Date:

(a)    it has the power to own its material assets and carry on its business in all material respects as it is being, and is proposed to be, conducted;

(b)    the obligations expressed to be assumed by it in this Agreement are legal, valid, binding and enforceable;

(c)    all authorizations required for the performance by it of this Agreement have been obtained or effected and are in full force and effect;

(d)    other than as set out in the Restructuring Term Sheet, it has not entered into any side agreements, side letters, undertakings or similar arrangements in favor of other holders of

Company Claims/Interests to induce such person to become party to this Agreement as a Consenting Stakeholder or entered into any amendment, extension, waiver or consent in connection with or relating to this Agreement or the matters contemplated herein and ignoring for this purpose any Consenting Creditor Fees and Expenses; and

(e)     no order or due authorization has been made, petition presented, or resolution passed for the winding up of or appointment of a liquidator, receiver, administrative receiver, administrator, compulsory manager or other similar officer of the Company Parties.

**Section 12.     *Mutual Representations, Warranties, and Covenants.*** Each of the Parties, severally, and not jointly, represents, warrants, and covenants to each other Party, as of the date such Party executed and delivers this Agreement, a Joinder, or a Transfer Agreement, as applicable, and as of the Restructuring Effective Date:

(a)     it is validly existing and in good standing under the Laws of the state of its organization, and this Agreement is a legal, valid, and binding obligation of such Party, enforceable against it in accordance with its terms, except as enforcement may be limited by applicable Laws relating to or limiting creditors' rights generally or by equitable principles relating to enforceability;

(b)     except as expressly provided in this Agreement, the Plan, and the Bankruptcy Code, if applicable, no consent or approval is required by any other person or entity in order for it to effectuate the Restructuring Transactions contemplated by, and perform its respective obligations under, this Agreement;

(c)     the entry into and performance by it of, and the transactions contemplated by, this Agreement do not, and will not, conflict in any material respect with any Law or regulation applicable to it or with any of its articles of association, memorandum of association or other constitutional documents;

(d)     it has (or will have, at the relevant time) all requisite corporate or other power and authority to enter into, execute, and deliver this Agreement and to effectuate the Restructuring Transactions contemplated by, and perform its respective obligations under, this Agreement; and

(e)     it is not party to any restructuring or similar agreements or arrangements with the other Parties to this Agreement that have not been disclosed to all Parties to this Agreement.

**Section 13.     *Termination Events*.**

13.01.  Consenting Creditor Termination Events.   This Agreement may be terminated with respect to the Consenting Creditors by the Required Consenting Creditors by the delivery to the Company Parties of a written notice in accordance with Section 16.10 hereof upon the occurrence of the following events:

(a)     the breach in any material respect by a Company Party or a Consenting Member of any of the representations, warranties, or covenants of the Company Parties or Consenting Members set forth in this Agreement that remains uncured for ten (10) Business Days after such

terminating Consenting Creditors transmit a written notice in accordance with Section 16.10 hereof detailing any such breach;

(b)     the breach in any material respect by Consenting Creditors holding an amount of First Lien Claims that (i) either would (A) result in non-breaching Consenting Creditors failing to hold at least two thirds (2/3) of the aggregate outstanding principal amount of First Lien Claims held by all Consenting Creditors or (B) reasonably be expected to prevent the consummation of the Restructuring Transactions, and (ii) remains uncured, to the extent curable, for three (3) Business Days after the applicable Consenting Creditors seeking termination pursuant to this Section (b) transmit a written notice in accordance with Section 16.10 hereof detailing any such breach; *provided* that any breaching Consenting Creditor cannot use this Section (b) to terminate this Agreement;

(c)     the failure to meet any Milestone, which has not been waived or extended in a manner consistent with this Agreement, unless such failure is the result of any act, omission, or delay on the part of the terminating Consenting Creditor in violation of its obligations under this Agreement;

(d)     the issuance by any governmental authority, including any regulatory authority or court of competent jurisdiction, of any final, non-appealable ruling or order that enjoins the consummation of the Restructuring Transactions (in whole or in part) and either (i) such ruling or order has been issued with the acquiescence of any Company Party or Consenting Member or (ii) such ruling or order remains in effect for ten (10) Business Days after such terminating Consenting Creditors transmit a written notice in accordance with Section 16.10 hereof detailing any such issuance; *provided* that this termination right may not be exercised by any Party that sought or requested such ruling or order in contravention of any obligation set out in this Agreement;

(e)     the commencement of an involuntary bankruptcy case against any Company Party under the Bankruptcy Code, if such involuntary case is not dismissed within forty-five (45) calendar days after the filing thereof, or if a court order grants the relief sought in such involuntary case;

(f)     if any creditor or multiple creditors of the Company Parties are granted the right by a court of competent jurisdiction to exercise rights or remedies (including foreclosure) or otherwise exercises rights or remedies against assets of the Company Parties having an aggregate value in excess of $250,000, if such grant or exercise is not enjoined, stayed, dismissed, withdrawn or otherwise resolved within two (2) Business Days;

(g)     any Company Party seeks to incur postpetition financing without the prior written consent of the Required Consenting Creditors;

(h)     any Company Party or Consenting Member (i) files, waives, amends, or modifies any Definitive Document (including any waiver of any term or condition therein) or any pleading seeking approval of a Definitive Document in a manner that is inconsistent with, or constitutes a material breach of, this Agreement (including with respect to the consent rights afforded to, as applicable, the Required Consenting Creditors, under this Agreement), without the prior written consent of the Required Consenting Creditors, (ii) withdraws the Plan without the prior written

consent of the Required Consenting Creditors, (iii) publicly announces its intention not to support the Restructuring Transactions or to take any such acts listed in the foregoing clause, which remains uncured for two (2) Business Days after such terminating Consenting Creditors transmit a written notice in accordance with Section 16.10 hereof detailing any of the foregoing, or (iv) proposes, supports, or publicly announces that it intends to pursue or support an Alternative Restructuring Proposal or executes a definitive written agreement with respect to an Alternative Restructuring Proposal, in the cases of each of the foregoing clauses;

(i)     the Company Parties' exclusive right to file a plan or plans of reorganization or to solicit acceptances thereof pursuant to section 1121 of the Bankruptcy Code expires or is terminated by order of the Bankruptcy Court or otherwise;

(j)     the entry of an order by the Bankruptcy Court or any other court of competent jurisdiction, or the filing by any Company Party or Consenting Member (or such Parties' support of another party filing) a motion or application seeking an order (without the prior written consent of the Required Consenting Creditors not to be unreasonably withheld), (i) converting one or more of the Chapter 11 Cases of a Company Party to a case under chapter 7 of the Bankruptcy Code; (ii) dismissing one or more of the Chapter 11 Cases; (iii) appointing an examiner with expanded powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code or a trustee in one or more of the Chapter 11 Cases of a Company Party; (iv) denying confirmation of the Plan or any material portion thereof and such order remains in effect for five (5) Business Days after entry of such order; (v) rejecting this Agreement or otherwise rendering this Agreement unenforceable; (vi) for the Bankruptcy Court's abstention from hearing the Chapter 11 Cases; (vii) invaliding, disallowing, subordinating, or limiting the enforceability, priority, or validity of any of the First Lien Claims; (viii) that is not in form and substance reasonably acceptable to the Required Consenting Creditors; or (ix) any other relief that is inconsistent with this Agreement, the Restructuring Term Sheet, or the Plan (in each case, as applicable, and with such amendments and modifications as have been effected in accordance with the terms hereof);

(k)     any order confirming the Plan is reversed, stayed, dismissed, vacated, or reconsidered without the prior written consent of the Required Consenting Creditors (such consent not to be unreasonably withheld) or is modified or amended (i) in a manner that is inconsistent with this Agreement and (ii) the Bankruptcy Court does not within five (5) Business Days enter a revised order confirming the Plan acceptable to the Required Consenting Creditors;

(l)     the termination of the Debtors' use of cash collateral that has not been cured (if susceptible to cure) or waived by the applicable percentage of creditors, as applicable, in accordance with the terms of the Cash Collateral Orders, as applicable; or

(m)     if any Company Party gives notice of termination of this Agreement pursuant to Section 13.02;

*provided* that, to the extent a Consenting Creditor's termination under this Section 13.01 is based on a filing (or support for another party's filing), action, or omission by a Consenting Member, the Required Consenting Creditors may, in their sole and absolute discretion, terminate this Agreement as to (i) that Consenting Member or (ii) as to all Parties.

(n)     This Agreement may be terminated with respect to any individual Consenting Creditor by the delivery to the Parties of a written notice in accordance with Section 16.10 hereof if (i) the Restructuring Effective Date has not occurred on or prior to 11:59 p.m. (ET) on February 15, 2023; (ii) the Company Parties fail to comply with Section 7.01(l) hereof, including the failure to timely deliver the Cash Flow Forecast; or (iii) the sources and uses of cash in connection with the Restructuring Effective Date is materially modified from the Cash Flow Forecast in a manner adverse to such Consenting Creditor.

13.02.  <u>Company Party Termination Events</u>.  Any Company Party may terminate this Agreement as to all Parties upon prior written notice to all Parties in accordance with Section 16.10 hereof upon the occurrence of any of the following events:

(a)     the breach in any material respect by Consenting Creditors holding an amount of First Lien Claims that (i) either would (A) result in non-breaching Consenting Creditors failing to hold at least two thirds (2/3) of the aggregate outstanding principal amount of First Lien Claims held by all Consenting Creditors or (B) reasonably be expected to prevent the consummation of the Restructuring Transactions, and (ii) remains uncured, to the extent curable, for three (3) Business Days after the Company Party seeking termination pursuant to this Section 1.01(a) transmit a written notice in accordance with Section 16.10 hereof detailing any such breach;

(b)     the board of directors, board of managers, or such similar governing body of any Company Party determines, after consulting with external counsel, (i) that proceeding with any of the Restructuring Transactions would be inconsistent with the exercise of its fiduciary duties or applicable Law or (ii) in the exercise of its fiduciary duties, to pursue an Alternative Restructuring Proposal; *provided* that such Company Party provides notice of such determination to the Consenting Creditors within one (1) Business Day after the date thereof);

(c)     the issuance by any governmental authority, including any regulatory authority or court of competent jurisdiction, of any final, non-appealable ruling or order that (i) enjoins the consummation of a material portion of the Restructuring Transactions and (ii) remains in effect for thirty (30) Business Days after such terminating Company Party transmits a written notice in accordance with Section 16.10 hereof detailing any such issuance; *provided* that this termination right shall not apply to or be exercised by any Company Party that sought or requested such ruling or order in contravention of any obligation or restriction set out in this Agreement; or

(d)     the Bankruptcy Court enters an order denying confirmation of the Plan and such order remains in effect for five (5) Business Days after entry of such order; *provided* that no Company Party may exercise this termination event unless the Company has in good faith pursued or supported modification of such Plan (consistent with the terms of this Agreement and subject to the consent rights set forth herein) and sought entry of a final order of such modified Plan.

13.03.  <u>Consenting Member Termination Event</u>. This Agreement may be terminated by the Consenting Members by the delivery to the all Parties of a written notice in accordance with Section 16.10 hereof upon the occurrence of the following event; *provided* that termination by a Consenting Member in accordance with this Section 13.03 shall only be effective as to such Consenting Member and this Agreement shall continue in full force and effect in respect to all other Parties:

(a)     this Agreement or any Definitive Document is amended, modified, supplemented or the terms thereof waived, the effect of which, materially and adversely changes the economic terms of the Restructuring Transactions as to such Consenting Member.

13.04.   <u>Mutual Termination</u>.  This Agreement, and the obligations of all Parties hereunder, may be terminated by mutual written agreement among the Required Consenting Creditors and each Company Party.

13.05.   <u>Automatic Termination</u>.  This Agreement shall terminate automatically without any further required action or notice immediately after the Restructuring Effective Date.

13.06.   <u>Effect of Termination</u>.  Upon the occurrence of a Termination Date as to a Party, this Agreement shall be of no further force and effect as to such Party and each Party subject to such termination shall be released from its commitments, undertakings, and agreements under or related to this Agreement and shall have the rights and remedies that it would have had, had it not entered into this Agreement, and shall be entitled to take all actions, whether with respect to the Restructuring Transactions or otherwise, that it would have been entitled to take had it not entered into this Agreement, including with respect to any and all Claims or Causes of Action.  Upon the occurrence of a Termination Date and, if applicable,  prior to the Confirmation Order being entered by a Bankruptcy Court, any and all consents or ballots tendered by the Parties subject to such termination before a Termination Date shall be deemed, for all purposes, to be null and void from the first instance and shall not be considered or otherwise used in any manner by the Parties in connection with the Restructuring Transactions and this Agreement or otherwise; *provided* that any Consenting Stakeholder withdrawing or changing its vote or its consent pursuant to this Section 13.06 shall promptly provide written notice of such withdrawal or change to each other Party to this Agreement and, if applicable, if such withdrawal or change occurs on or after the Petition Date, file notice of such withdrawal or change with the Bankruptcy Court.  Nothing in this Agreement shall be construed as prohibiting a Company Party or any of the Consenting Stakeholders from contesting whether any such termination is in accordance with its terms or to seek enforcement of any rights under this Agreement that arose or existed before a Termination Date.  Except as expressly provided in this Agreement, nothing herein is intended to, or does, in any manner waive, limit, impair, or restrict (a) any right of any Company Party or the ability of any Company Party to protect and reserve its rights (including rights under this Agreement), remedies, and interests, including its claims against any Consenting Stakeholder, and (b) any right of any Consenting Stakeholder, or the ability of any Consenting Stakeholder, to protect and preserve its rights (including rights under this Agreement), remedies, and interests, including its claims against any Company Party or Consenting Stakeholder.  Except in connection with a dispute concerning a breach of this Agreement or the interpretation of the terms hereof upon termination, (a) neither this Agreement nor any terms or provisions set forth herein shall be admissible in any dispute, litigation, proceeding or controversy among the Parties and nothing contained herein shall constitute or be deemed to be an admission by any Party as to any matter, it being understood that the statements and resolutions reached herein were the result of negotiations and compromises of the respective positions of the Parties and (b) no Party shall seek to take discovery concerning this Agreement or admit this Agreement or any part of it into evidence against any other Party.  No purported termination of this Agreement shall be effective under this Section 13.06 or otherwise if the Party seeking to terminate this Agreement is in material breach of this Agreement and the basis of the applicable termination event was the result of a breach or non-compliance by the Party

seeking termination, except a termination pursuant to Section 13.02(b) or Section 13.02(d). Nothing in this Section 13.06 shall restrict any Company Party's right to terminate this Agreement in accordance with Section 13.02(b).

13.07.    No Termination For Own Action or Omission. Notwithstanding any other provision in this Agreement, nothing permits any Party to terminate this Agreement as a result of its own breach of this Agreement or its own act, omission, or delay in violation of such Party's obligations under this Agreement.

**Section 14.    *Amendments and Waivers*.**

14.01.    This Agreement may not be modified, amended, or supplemented, and no condition or requirement of this Agreement may be waived, in any manner except in accordance with this Section 14.

14.02.    This Agreement, including any exhibits or schedules hereto, may be modified, amended, or supplemented, or a condition or requirement of this Agreement may be waived, in a writing signed by: (a) each Company Party, (b) the Required Consenting Creditors, and (c) the Consenting Members; *provided* that, if the proposed modification, amendment, waiver, or supplement has a material, disproportionate, and adverse effect (economic or non-economic) on any of the Company Claims/Interests held by a Consenting Stakeholder (as compared to similarly situated Consenting Stakeholders), then the consent of each such affected Consenting Stakeholder shall also be required to effectuate such modification, amendment, waiver or supplement. Any modification, amendment, or change to the definition of "Consenting Creditors", "Required Consenting Creditors", or their respective consent rights set forth in this Agreement shall require the written consent (email being sufficient) of all of the Consenting Creditors.

14.03.    In the event that a materially adversely and disproportionately affected Consenting Creditor (a "**Non-Consenting Creditor**") does not consent to a waiver, change, modification, or amendment to this Agreement requiring the consent of each Consenting Creditor, but such waiver, change, modification, or amendment receives the consent of the Consenting Creditors (i) holding at least 66.67% of the outstanding relevant First Lien Claims and (ii) representing at least a majority in number of holders of First Lien Claims, this Agreement shall be deemed to have been terminated only as to such Non-Consenting Creditor and this Agreement shall continue in full force and effect in respect to all other Consenting Creditors from time to time.

14.04.    Any proposed modification, amendment, waiver or supplement that does not comply with this Section 14 shall be ineffective and void *ab initio*.

14.05.    The waiver by any Party of a breach of any provision of this Agreement shall not operate or be construed as a further or continuing waiver of such breach or as a waiver of any other or subsequent breach. No failure on the part of any Party to exercise, and no delay in exercising, any right, power or remedy under this Agreement shall operate as a waiver of any such right, power or remedy or any provision of this Agreement, nor shall any single or partial exercise of such right, power or remedy by such Party preclude any other or further exercise of such right, power or remedy or the exercise of any other right, power or remedy. All remedies under this Agreement are cumulative and are not exclusive of any other remedies provided by Law.

**Section 15.**    *Disclosure; Publicity.*

15.01.    The Company Parties shall submit drafts to Designated Counsel of any Communications Materials prepared by the Company Parties at least three (3) Business Days in advance of their release.  In accordance with Section 4.02 hereof, any such Communications Materials shall be in form and substance reasonably acceptable to the Required Consenting Creditors prior to publication.  No Company Party shall make any public statements regarding the Restructuring Transactions without the consent of the Requisite Consenting Creditors (such consent not to be unreasonably withheld); *provided* that, in the event any Communications Materials or public statements regarding the Restructuring Transactions refer by name to one or more Consenting Creditors, the consent of such Consenting Creditors must be obtained before the relevant Communications Materials are released or public statements made.

15.02.    Except as required by applicable Law or otherwise permitted under the terms of any other agreement between the Company Parties and any Consenting Creditor, no Party or its advisors shall disclose to any person (including, for the avoidance of doubt, any other Party), other than advisors to the Company Parties, the principal amount or percentage of any Company Claims/Interests against the Company Parties held by any Consenting Creditor, in each case, without such Consenting Creditor's consent; *provided* that (a) if such disclosure is required by law, subpoena, or other legal process or regulation, the disclosing Party shall, to the extent permitted by law, afford the relevant Consenting Creditor a reasonable opportunity to review and comment in advance of such disclosure and shall take commercially reasonable measures to limit such disclosure (the expense of which, if any, shall be borne by the relevant Consenting Creditor); and (b) the foregoing shall not prohibit the disclosure of the aggregate percentage or aggregate principal amount of Company Claims/Interests held by the Consenting Creditors, collectively, on a facility by facility basis.  Any public filing of this Agreement, with the Bankruptcy Court or otherwise, that includes executed signature pages to this Agreement shall include such signature pages only in redacted form with respect to the principal amount or percentage of Company Claims/Interests held by each Consenting Creditor (provided that the holdings disclosed in such signature pages may be filed in unredacted form with the Bankruptcy Court under seal).  Notwithstanding the provisions in this Section 15, any Party may disclose, to the extent consented to in writing by a Consenting Creditor, such Consenting Creditor's individual holdings.

**Section 16.**    *Miscellaneous*

16.01.    <u>Acknowledgement</u>.    Notwithstanding any other provision herein, this Agreement is not and shall not be deemed to be an offer with respect to any securities or solicitation of votes for the acceptance of a plan of reorganization for purposes of sections 1125 and 1126 of the Bankruptcy Code or otherwise.  Any such offer or solicitation will be made only in compliance with all applicable securities Laws, provisions of the Bankruptcy Code, and/or other applicable Law.

16.02.    <u>Exhibits Incorporated by Reference; Conflicts</u>.    Each of the exhibits, annexes, signatures pages, and schedules attached hereto is expressly incorporated herein and made a part of this Agreement, and all references to this Agreement shall include such exhibits, annexes, and schedules. Except as otherwise set forth herein, in the event of any inconsistency between this Restructuring Support Agreement (without reference to the exhibits, annexes, and schedules

hereto) and the exhibits, annexes, and schedules hereto, the Restructuring Term Sheet (without reference to the exhibits, annexes, and schedules thereto) shall govern with respect to such provision.

16.03.    <u>Further Assurances</u>.  Subject to the other terms of this Agreement, the Parties hereby covenant and agree to use commercially reasonable efforts to execute and deliver such other instruments and perform such acts, in addition to the matters herein specified, as may be reasonably appropriate or necessary, or as may be required by order of the Bankruptcy Court, from time to time, to carry out the purposes and intent of this Agreement, including to effectuate the Restructuring Transactions, as applicable.

16.04.    <u>Complete Agreement</u>.  Except as otherwise explicitly provided herein, this Agreement constitutes the entire agreement among the Parties with respect to the subject matter hereof and supersedes all prior agreements, oral or written, among the Parties with respect thereto, other than any Confidentiality Agreement.

16.05.    <u>GOVERNING LAW; SUBMISSION TO JURISDICTION; SELECTION OF FORUM</u>.  THIS AGREEMENT IS TO BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED IN SUCH STATE, WITHOUT GIVING EFFECT TO THE CONFLICT OF LAWS PRINCIPLES THEREOF.  If the Chapter 11 Cases are commenced, each Party agrees that it shall bring any action or proceeding in respect of any claim or dispute arising out of or related to this Agreement, to the extent possible, in the Bankruptcy Court, and solely in connection with claims arising under this Agreement:  (a) irrevocably submits to the exclusive jurisdiction of the Bankruptcy Court; (b) waives any objection to laying venue in any such action or proceeding in the Bankruptcy Court; and (c) waives any objection that the Bankruptcy Court is an inconvenient forum or does not have jurisdiction over any Party.

16.06.    <u>TRIAL BY JURY WAIVER</u>.  EACH PARTY HERETO IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

16.07.    <u>Execution of Agreement</u>.  This Agreement may be executed and delivered in any number of counterparts and by way of electronic signature and delivery, each such counterpart, when executed and delivered, shall be deemed an original, and all of which together shall constitute the same agreement.  Each individual executing this Agreement on behalf of a Party represents and warrants that such individual has been duly authorized and empowered to execute and deliver this Agreement on behalf of such Party.

16.08.    <u>Rules of Construction</u>.  This Agreement is the product of negotiations among the Company Parties and the Consenting Stakeholders, and in the enforcement or interpretation hereof, is to be interpreted in a neutral manner, and any presumption with regard to interpretation for or against any Party by reason of that Party having drafted or caused to be drafted this Agreement, or any portion hereof, shall not be effective in regard to the interpretation hereof.  The Company Parties and the Consenting Stakeholders were each represented by counsel during the negotiations and drafting of this Agreement and continue to be represented by counsel.

16.09.    <u>Successors and Assigns; Third Parties</u>.  This Agreement is intended to bind and inure to the benefit of the Parties and their respective successors and permitted assigns, as applicable.  There are no third party beneficiaries under this Agreement, and the rights or obligations of any Party under this Agreement may not be assigned, delegated, or transferred to any other person or entity.

16.10.    <u>Notices</u>.  All notices hereunder shall be deemed given if in writing and delivered, by electronic mail, courier, or registered or certified mail (return receipt requested), to the following addresses (or at such other addresses as shall be specified by like notice):

(a)    if to a Company Party, to:

Nautical Solutions, L.L.C.
16201 East Main Street
Cut Off, LA 70354
Attention:  Adrian Danos; Luke Newman
E-mail address:  adrian.danos@chouest.com; luke.newman@chouest.com

with copies to:

Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Attention:  Patrick J. Nash, Jr., P.C.; John Luze; Jeff Michalik
E-mail addresses: patrick.nash@kirkland.com;
john.luze@kirkland.com; jeff.michalik@kirkland.com

and

Tusk Capital Advisors, LLC
1510 State Street
New Orleans, LA 70118
Attention:  Joe Maxwell
E-mail address: joe@tuskcapitaladvisors.com

(b)    if to a Consenting Member, to:

Nautical Solutions, L.L.C.
16201 East Main Street
Cut Off, LA 70354
Attention: Dino Chouest; Dionne Chouest Austin
E-mail address: dino.chouest@chouest.com; dionne@chouest.com

   (c)  if to a Consenting Lender, to:

   Simpson Thacher & Bartlett LLP, as counsel to the Agent
   425 Lexington Avenue
   New York, NY 10017
   Attention:  Nicholas Baker; Elisha D. Graff; and Zachary Weiner
   Email addresses:  nbaker@stblaw.com; egraff@stblaw.com;
   zachary.weiner@stblaw.com

   (d)  if to a Consenting Noteholder, to:

   Weil, Gotshal & Manges LLP
   767 Fifth Avenue
   New York, NY 10153
   Attention: Ray C. Schrock, P.C.; Andriana Georgallas
   Email address: ray.schrock@weil.com; andriana.georgallas@weil.com

Any notice given by delivery, mail, or courier shall be effective when received.

  16.11. <u>Independent Due Diligence and Decision Making</u>.  Each Consenting Stakeholder hereby confirms that its decision to execute this Agreement has been based upon its independent investigation of the operations, businesses, financial and other conditions, and prospects of the Company Parties.

  16.12. <u>Enforceability of Agreement</u>.  Each of the Parties hereby acknowledges and agrees: (i) that the provisions of any notice or exercise of any rights or remedies under this Agreement are not prohibited by the automatic stay provisions of the Bankruptcy Code, (ii) each party, to the extent enforceable, waives any right to assert that the exercise of termination rights under this Agreement is subject to the automatic stay provisions of the Bankruptcy Code, and expressly stipulates and consents hereunder to the prospective modification of the automatic stay provisions of the Bankruptcy Code for purposes of exercising termination rights under this Agreement, to the extent the Bankruptcy Court determines that such relief is required, (iii) that they shall not take a position to the contrary of this Section 16 in the Bankruptcy Court or any other court of competent jurisdiction, and (iv) they will not initiate, or assert in, any litigation or other legal proceeding that this Section 16 is illegal, invalid, or unenforceable, in whole or in part.

  16.13. <u>Waiver</u>.  If the Restructuring Transactions are not consummated, or if this Agreement is terminated for any reason, the Parties fully reserve any and all of their rights. Pursuant to Federal Rule of Evidence 408 and any other applicable rules of evidence, this Agreement and all negotiations relating hereto shall not be admissible into evidence in any proceeding other than a proceeding to enforce its terms or the payment of damages to which a Party may be entitled under this Agreement.

  16.14. <u>Specific Performance</u>.  It is understood and agreed by the Parties that money damages would be an insufficient remedy for any breach of this Agreement by any Party, and each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief (without the posting of any bond and without proof of actual damages) as a remedy of any

such breach, including an order of the Bankruptcy Court or other court of competent jurisdiction requiring any Party to comply promptly with any of its obligations hereunder.  Notwithstanding anything to the contrary in this Agreement, none of the Parties will be liable for, and none of the Parties shall claim or seek to recover, any punitive, special, indirect or consequential damages for lost profits.  The Parties agree that in no event will any Party be liable for any consequential, special, indirect or punitive damages or damages for lost profits. Notwithstanding anything to the contrary in this Section 13.14 or otherwise in this Agreement, the sole remedy of a Consenting Member for a breach of this Agreement shall be its right to terminate this Agreement as to itself.

16.15.    Several, Not Joint, Claims.  Except where otherwise specified, the agreements, representations, warranties, and obligations of the Parties under this Agreement are, in all respects, several and not joint.

16.16.    Severability and Construction.  If any provision of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid, or unenforceable, the remaining provisions shall remain in full force and effect if essential terms and conditions of this Agreement for each Party remain valid, binding, and enforceable.

16.17.    Remedies Cumulative.  All rights, powers, and remedies provided under this Agreement or otherwise available in respect hereof at Law or in equity shall be cumulative and not alternative, and the exercise of any right, power, or remedy thereof by any Party shall not preclude the simultaneous or later exercise of any other such right, power, or remedy by such Party.

16.18.    Capacities of Consenting Stakeholders.  Each Consenting Stakeholder has entered into this agreement on account of all Company Claims/Interests that it holds (directly or through discretionary accounts that it manages or advises) and, except where otherwise specified in this Agreement (including pursuant to this Section and Section 9 hereof), shall take or refrain from taking all actions that it is obligated to take or refrain from taking under this Agreement with respect to all such Company Claims/Interests. Notwithstanding the foregoing, the Parties understand that the Consenting Creditors are engaged in a wide range of financial services and businesses, and therefore, in furtherance of the foregoing, the Parties acknowledge and agree that, to the extent a Consenting Creditor expressly indicates on its signature page hereto that it is executing this Agreement on behalf of specific trading desk(s) and/or business group(s) of the Consenting Creditor, the obligations set forth in this Agreement shall only apply to such trading desk(s) and/or business group(s) and shall not apply to any other trading desk or business group of the Consenting Creditor until such trading desk or business group is or becomes a party to this Agreement.   Notwithstanding anything contained in this Agreement, to the extent that a Consenting Creditor also acts as an Agent or a Trustee, such Consenting Creditor shall only be bound by this Agreement in its capacity as a Term Loan Lender or Noteholder, as applicable, and not in its capacity as Agent or Trustee.  If such a Consenting Creditor that is also acting as an Agent or Trustee is instructed to act or refrain from acting, in its capacity as Agent or Trustee, by the requisite holders of Term Loans or Notes, any such action or inaction shall not constitute a breach of this Agreement by such Consenting Creditor.

16.19.    Survival.  Notwithstanding (i) any Transfer of any Company Claims/Interests in accordance with this Agreement or (ii) the termination of this Agreement in accordance with its terms, the agreements and obligations of the Parties in Sections 6 and 16 and the Confidentiality

Agreements shall survive such Transfer and/or termination and shall continue in full force and effect for the benefit of the Parties in accordance with the terms hereof and thereof.

16.20.    <u>Email Consents</u>.  Where a written consent, acceptance, approval, or waiver is required pursuant to or contemplated by this Agreement, pursuant to Section 4.02, Section 14, or otherwise, including a written approval by the Company Parties, the Consenting Members, or any Consenting Creditor, such written consent, acceptance, approval, or waiver shall be deemed to have occurred if, by agreement between counsel to the Parties submitting and receiving such consent, acceptance, approval, or waiver, it is conveyed in writing (including electronic mail) between each such counsel without representations or warranties of any kind on behalf of such counsel.

IN WITNESS WHEREOF, the Parties have executed this Agreement on the day and year first above written.

**Company Parties' Signature Page to
the Restructuring Support Agreement**

NAUTICAL SOLUTIONS, L.L.C.

By: _____
Name: Charlie Comeaux
Title:   Chief Financial Officer


NAUTICAL SOLUTIONS (TEXAS), LLC

By: _____
Name: Charlie Comeaux
Title:   Authorized Signatory

Signature Page to Restructuring Support Agreement

**Consenting Members' Signature Page to
the Restructuring Support Agreement**

**[On file with Debtors' advisors]**

**Consenting Creditor Signature Page to
the Restructuring Support Agreement**

**[On file with Debtors' advisors]**

# EXHIBIT A

**Restructuring Term Sheet**

*Execution Version*

**THIS RESTRUCTURING TERM SHEET IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE.  ANY SUCH OFFER OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE.   NOTHING CONTAINED IN THIS RESTRUCTURING TERM SHEET SHALL BE AN ADMISSION OF FACT OR LIABILITY OR, UNTIL THE OCCURRENCE OF THE AGREEMENT EFFECTIVE DATE OF THE RESTRUCTURING SUPPORT AGREEMENT ON THE TERMS DESCRIBED HEREIN AND IN THE RESTRUCTURING SUPPORT AGREEMENT, DEEMED BINDING ON ANY OF THE PARTIES HERETO.**

## *RESTRUCTURING TERM SHEET*

### INTRODUCTION

This Restructuring Term Sheet describes the principal terms of the Restructuring Transactions of Nautical Solutions, L.L.C. ("**Nautical**") and Nautical Solutions (Texas), LLC that will be effectuated through a consensual out-of-court restructuring or pursuant to an in-court restructuring and a chapter 11 plan of reorganization on the terms set forth in the Restructuring Support Agreement to which this Restructuring Term Sheet is attached as **Exhibit A** in a manner consistent with the Restructuring Transaction Steps.[1]  The regulatory, corporate, tax, accounting, and other legal and financial matters related to the Restructuring Transactions have not been fully evaluated, and any such evaluation may affect the terms and structure of any Restructuring Transactions.  This Restructuring Term Sheet is proffered in the nature of a settlement proposal in furtherance of settlement discussions.  Accordingly, this Restructuring Term Sheet and the information contained herein are entitled to protection from any use or disclosure to any party or person pursuant to Rule 408 of the Federal Rules of Evidence and any other applicable rule, statute, or doctrine of similar import protecting the use or disclosure of confidential settlement discussions.

This Restructuring Term Sheet does not include a description of all of the terms, conditions, and other provisions that will to be contained in the Definitive Documents governing the Restructuring, which remain subject to negotiation and completion in accordance with the Restructuring Support Agreement.  The Restructuring will not contain any material terms or conditions that are inconsistent with this Restructuring Term Sheet or the Restructuring Support Agreement.  This Restructuring Term Sheet incorporates the rules of construction as set forth in section 102 of the Bankruptcy Code.

---

[1]   Capitalized terms used but not defined in this Restructuring Term Sheet have the meanings given to such terms in the Restructuring Support Agreement.

| GENERAL PROVISIONS REGARDING THE RESTRUCTURING | |
|---|---|
| **Out-of-Court Restructuring / Chapter 11 Plan** | On the Restructuring Effective Date, or as soon as reasonably practicable thereafter, each holder of a Claim or Interest, as applicable, shall receive under the Plan or pursuant to the Out-of-Court Restructuring the treatment described in this Restructuring Term Sheet in full and final satisfaction, settlement, release, and discharge of and in exchange for such holder's Claim or Interest.<br><br>Concurrently with soliciting acceptances of the Plan, the Company Parties will seek the requisite consent from holders of First Lien Claims to consummate the Restructuring Transactions on an out-of-court basis. Absent obtaining the consents necessary to satisfy the Out-of-Court Restructuring Threshold in accordance with the Milestones set forth in the Restructuring Support Agreement, the Company Parties will commence the Chapter 11 Cases and seek to consummate the Restructuring Transactions pursuant to the Plan on the terms set forth herein and in the Restructuring Support Agreement.<br><br>Any action required to be taken by the Debtors on the Restructuring Effective Date pursuant to this Restructuring Term Sheet may be taken on the Restructuring Effective Date or as soon as is reasonably practicable thereafter. |
| **New Senior Secured Notes** | On the Restructuring Effective Date, the Company shall issue the New Senior Secured Notes on the terms set forth on the New Senior Secured Notes Term Sheet, attached hereto as **Exhibit 1**, and on terms otherwise satisfactory to the Required Consenting Creditors. |
| **Use of Cash Collateral** | If the Company Parties pursue the In-Court Restructuring, the Company Parties may use cash collateral and the Consenting Creditors, in their capacities as such, will not object to the Debtors' use of their cash collateral during the Chapter 11 Cases, in each case, on terms and conditions satisfactory to the Required Consenting Creditors, which shall include customary adequate protection, including payment of professional fees and expenses, adequate protection liens and superpriority claims, budget and reporting covenants, and milestones. |
| **Cash on Hand** | Cash distributions in accordance with this Restructuring Term Sheet and the Plan, if applicable, shall be made from cash on hand as of the Restructuring Effective Date. |
| **Definitive Documents** | This Restructuring Term Sheet is indicative, and any final agreement shall be subject to the Definitive Documents. The Definitive Documents shall contain terms, conditions, representations, warranties, and covenants, each customary for the transactions described herein consistent with the terms of this Restructuring Term Sheet. Any documents related to the Restructuring Transactions, including any Definitive Documents, that remain the subject of negotiation as of the Agreement Effective Date shall be subject to the consent rights and obligations set forth in Section 4 of the Restructuring Support Agreement.   Failure to reference such consent rights and |

| GENERAL PROVISIONS REGARDING THE RESTRUCTURING | |
|---|---|
| | obligations as it relates to any document referenced in this Restructuring Term Sheet shall not impair such rights and obligations. |
| **Tax Matters** | The Parties shall work together in good faith and shall use commercially reasonable efforts to structure and implement the Restructuring in a tax efficient and cost-effective manner for the Company Parties and the Consenting Stakeholders to the extent reasonably practicable. |
| | From and after the Execution Date, the Consenting Members and the Company Parties shall not engage in, or allow, any transaction outside of the ordinary course that would result in a reduction of, use of or limitation on any suspended losses or deductions or credits that are otherwise available to reduce the tax liability from the Restructuring Transactions. |

| TREATMENT OF CLAIMS AND INTERESTS OF THE DEBTORS UNDER THE PLAN | | | |
|---|---|---|---|
| **Class No.** | **Type of Claim** | **Treatment** | **Impairment / Voting** |
| **Unclassified Non-Voting Claims** | | | |
| **N/A** | **Administrative Claims** | On the Restructuring Effective Date, each holder of an Allowed Administrative Claim shall receive payment in full in cash; *provided* that if the Company Parties consummate the Out-of-Court Restructuring, such Claims will be paid in the ordinary course of business. | N/A |
| **N/A** | **Priority Tax Claims** | On the Restructuring Effective Date, each holder of an Allowed Priority Tax Claim shall receive treatment in a manner consistent with section 1129(a)(9)(C) of the Bankruptcy Code; *provided* that if the Company Parties consummate the Out-of-Court Restructuring, such Claims will be paid in the ordinary course of business. | N/A |
| **Classified Claims and Interests of the Debtors** | | | |
| **Class 1** | **Other Secured Claims** | On the Restructuring Effective Date, each holder of an Allowed Other Secured Claim shall receive, at the Debtors' option with the consent of the Required Consenting Creditors: (a) payment in full in cash; (b) the collateral securing its Allowed Other Secured Claim; (c) Reinstatement of its Allowed Other Secured Claim; or (d) such other treatment rendering its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code; *provided* that if the Company Parties consummate the Out-of-Court Restructuring, such Claims will be paid in the ordinary course of business. | Unimpaired / Deemed to Accept |

| Class No. | Type of Claim | Treatment | Impairment / Voting |
|---|---|---|---|
| | **TREATMENT OF CLAIMS AND INTERESTS OF THE DEBTORS UNDER THE PLAN** | | |
| **Class 2** | **Other Priority Claims** | On the Restructuring Effective Date, each holder of an Allowed Other Priority Claim shall receive treatment in a manner consistent with section 1129(a)(9) of the Bankruptcy Code; *provided* that if the Company Parties consummate the Out-of-Court Restructuring, such Claims will be paid in the ordinary course of business. | Unimpaired / Deemed to Accept |
| **Class 3** | **First Lien Claims** | On the Restructuring Effective Date, each holder of an Allowed First Lien Claim shall receive its pro rata share of the New Senior Secured Notes and any excess cash distribution in accordance with the New Senior Secured Notes Term Sheet.<br><br>First Lien Claims held by the Noteholders shall include an Allowed make-whole Claim in the amount of $11,696,000. | Impaired / Entitled to Vote |
| **Class 4** | **General Unsecured Claims** | On the Restructuring Effective Date, each holder of an Allowed General Unsecured Claim shall receive, at the Debtors' option and in their sole discretion: (a) payment in full in cash; (b) reinstatement of its Allowed General Unsecured Claim; or (c) such other treatment rendering such Allowed General Unsecured Claim unimpaired in accordance with section 1124 of the Bankruptcy Code; *provided* that if the Company Parties consummate the Out-of-Court Restructuring, such Claims will be paid in the ordinary course of business. | Unimpaired / Deemed to Accept |
| **Class 5** | **Intercompany Claims** | On the Restructuring Effective Date, each holder of an Allowed Intercompany Claim shall have its Claim reinstated or cancelled, released, and extinguished and without any distribution at the Debtors' election and in their reasonable discretion such that such Allowed Intercompany Claims are treated in a tax-efficient manner to the extent reasonably practicable; *provided* that if the Company Parties consummate the Out-of-Court Restructuring, such Claims will be maintained in the ordinary course of business. | Impaired / Deemed to Reject or Unimpaired / Deemed to Accept |
| **Class 6** | **Intercompany Interests** | On the Restructuring Effective Date, Intercompany Interests shall be reinstated, set off, settled, distributed, contributed, cancelled, and released without any distribution on account of such Intercompany Interests, or such other treatment as reasonably determined by the Debtors, at the Debtors' election and in their reasonable discretion | Impaired / Deemed to Reject or Unimpaired / Deemed to Accept |

| | TREATMENT OF CLAIMS AND INTERESTS OF THE DEBTORS UNDER THE PLAN | | |
|---|---|---|---|
| **Class No.** | **Type of Claim** | **Treatment** | **Impairment / Voting** |
| | | such that Intercompany Interests are treated in a tax-efficient manner to the extent reasonably practicable; *provided* that if the Company Parties consummate the Out-of-Court Restructuring, such Interests will be maintained in the ordinary course of business. | |
| **Class 7** | **Existing Common Interests in Nautical** | On the Restructuring Effective Date, the Equity Interests of each of the Consenting Members in Nautical shall be reinstated. | Unimpaired / Deemed to Accept |

| GENERAL PROVISIONS REGARDING THE RESTRUCTURING TRANSACTIONS | |
|---|---|
| **Subordination** | The classification and treatment of Claims under the Plan shall conform to the respective contractual, legal, and equitable subordination rights of such Claims, and any such rights shall be settled, compromised, and released pursuant to the Plan. |
| **Restructuring Transactions** | The Confirmation Order, if applicable, shall be deemed to authorize, among other things, all actions as may be necessary or appropriate to effectuate any transaction described in, approved by, contemplated by, or necessary to consummate the Plan, as well as the Restructuring Transactions therein.  On the Restructuring Effective Date, the Company Parties, as applicable, shall issue all securities, notes, instruments, certificates, and other documents required to be issued pursuant to the Restructuring Transactions. |
| **Cancellation of Notes, Instruments, Certificates, and Other Documents** | On the Restructuring Effective Date, except to the extent otherwise provided in this Restructuring Term Sheet and subject to customary exceptions which shall be set forth in the Plan, as applicable, all notes, instruments, certificates, and other documents evidencing First Lien Claims, if the Company Parties consummate the Out-of-Court Restructuring, and Company Claims/Interests, if the Company Parties consummate the In-Court Restructuring, in each case, including credit agreements and indentures, shall be canceled, and the Company Parties' obligations thereunder or in any way related thereto shall be deemed satisfied in full and discharged; *provided* that any indemnity, reimbursement, or similar provision in favor of the Agent/Trustee in any credit agreement, note purchase agreement, security document, ancillary document, or intercreditor agreement related to the Term Loans or the Notes that by the terms of such agreement survives the termination of such agreement, shall remain in full force and effect notwithstanding the consummation of the Restructuring Transactions. |

| **GENERAL PROVISIONS REGARDING THE RESTRUCTURING TRANSACTIONS** | |
|---|---|
| **Executory Contracts and Unexpired Leases** | If the Company Parties pursue the In-Court Restructuring, the Plan will provide that the Debtors' executory contracts and unexpired leases that are not rejected as of the Restructuring Effective Date (either pursuant to the Plan or a separate motion) shall be deemed assumed and amended (as needed to implement the terms of the Restructuring Transactions) pursuant to section 365 of the Bankruptcy Code. |
| **Retention of Jurisdiction** | If the Company Parties pursue the In-Court Restructuring, the Plan will provide that the Bankruptcy Court shall retain jurisdiction for usual and customary matters. |
| **Discharge of Claims and Termination of Interests** | If the Company Parties pursue the In-Court Restructuring, pursuant to section 1141(d) of the Bankruptcy Code and except as otherwise specifically provided in the Plan, or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Restructuring Effective Date, of Claims (including any Intercompany Claims that the Debtors resolve or compromise after the Restructuring Effective Date), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Restructuring Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services that employees of the Debtors have performed prior to the Restructuring Effective Date, and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Restructuring Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (a) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code, or (c) the holder of such a Claim or Interest has accepted the Plan. Any default or "event of default" by the Debtors with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Restructuring Effective Date. Without prejudice to the distributions, rights, and treatment that are provided by the Plan, the Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Restructuring Effective Date, and, upon the Restructuring Effective Date, all Holders of such Claims and Interests shall be forever precluded and enjoined, pursuant to Section 524 of the Bankruptcy Code, from prosecuting or asserting any such Claim or Interest against the Debtors, Reorganized Debtors, or any of their assets or property. |

| **GENERAL PROVISIONS REGARDING THE RESTRUCTURING TRANSACTIONS** | |
|---|---|
| **Releases by the Debtors** | If the Company Parties pursue the In-Court Restructuring, except as expressly set forth in the Plan or the Confirmation Order, effective on the Restructuring Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party that is not an ECO Affiliate is hereby deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged by each and all of the Debtors, and each of their respective current and former Affiliates, the Reorganized Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, including any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, or their Estates that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or any other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the Notes Purchase Agreements, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the New Senior Secured Notes Documents, the pre- and postpetition marketing and sale process including any Asset Sale Agreements, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, the Cash Collateral Orders, the Plan (including the Plan Supplement), the Disclosure Statement, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing or consummation of the Definitive Documents or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Definitive Documents, the New Senior Secured Notes Documents, any Asset Sale Agreement, or the Plan, the pursuit of confirmation, consummation, administration, and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan and the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Restructuring Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the Debtors' releases shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is |

| **GENERAL PROVISIONS REGARDING THE RESTRUCTURING TRANSACTIONS** | |
|---|---|
| | judicially determined by a final order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, or (b) releasing any post-Restructuring Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan. |
| **Releases by Holders of Claims and Interests** | If the Company Parties pursue the In-Court Restructuring, effective on the Restructuring Effective Date, except (i) as expressly set forth in the Plan or the Confirmation Order, (ii) for the right to enforce the Plan, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the date upon which the Bankruptcy Court enters the Confirmation Order, on or after the Restructuring Effective Date, each Released Party, is hereby deemed expressly, conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each and all of the Releasing Parties (other than the Debtors or the Reorganized Debtors), in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, remedies, and liabilities, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, or their Estates, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the Notes Purchase Agreements, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the New Senior Secured Notes Documents, the pre- and post-petition marketing and sale process including any Asset Sale Agreements, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, the Cash Collateral Orders, the Plan (including the Plan Supplement), the Disclosure Statement, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing or consummation of the Definitive Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Definitive Documents, the New Senior Secured Notes Documents, any Asset Sale Agreement, or the Plan, the pursuit of |

| **GENERAL PROVISIONS REGARDING THE RESTRUCTURING TRANSACTIONS** | |
|---|---|
| | confirmation, consummation, administration, and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Restructuring Effective Date related or relating to the foregoing; *provided* that nothing herein shall be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a final order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence (b) releasing any post-Restructuring Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or (c) releasing any Claims or Causes of Action by any Releasing Party against any Released Party arising from any financing or other transaction unrelated to the Debtors or the Chapter 11 Cases. |
| **Exculpation** | If the Company Parties pursue the In-Court Restructuring, the Plan shall provide that, except as expressly provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party shall be released and exculpated from any and all Claims, Interests, obligations, rights, suits, damages, Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of the Debtors (including the capital structure, management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the Notes Purchase Agreements, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Exculpated Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the New Senior Secured Notes Documents, the pre- and post-petition marketing and sale process including any Asset Sale Agreements, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, the Cash Collateral Orders, the Plan (including the Plan Supplement), the Disclosure Statement, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing or consummation of the Definitive Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Definitive Documents, the New Senior Secured Notes Documents, any Asset Sale Agreement, or the Plan, the pursuit of confirmation, consummation, administration, and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Restructuring Effective Date related or relating to the foregoing, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud or gross negligence, but in all respects such |

| **GENERAL PROVISIONS REGARDING THE RESTRUCTURING TRANSACTIONS** | |
|---|---|
| | Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.   The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan, or such distributions made pursuant to the Plan. |
| | This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable laws, rules, or regulations protecting such Exculpated Parties from liability. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth in the Plan shall not be construed as exculpating any party or Entity from its post-Restructuring Effective Date obligations under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan. |
| **Injunction** | If the Company Parties pursue the In-Court Restructuring, upon entry of the Confirmation Order, except as otherwise expressly provided in the Plan or the Confirmation Order, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been extinguished, released, discharged, or are subject to exculpation, whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan, and other parties in interests, along with their respective present or former employees, agents, officers, directors, principals, affiliates, and Related Parties are permanently enjoined, from and after the Restructuring Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such holder has timely filed a motion with the Bankruptcy Court expressly requesting the right to perform such setoff, subrogation or recoupment on or before the Restructuring Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any |

| **GENERAL PROVISIONS REGARDING THE RESTRUCTURING TRANSACTIONS** | |
|---|---|
| | manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan. |
| | By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth above. |
| | The injunctions set forth above shall extend to any successors of the Debtors, the Reorganized Debtors, the Released Parties, and the Exculpated Parties and their respective property and interests in property. |
| **Certain Definitions** | The following definitions shall be applicable to the foregoing release and exculpation provisions: |
| | "*ECO Affiliate*" means any non-Debtor partnership or corporation that is an Affiliate of the Debtors, excluding the Company Parties. For the avoidance of doubt, neither Company Party shall be deemed an "ECO Affiliate." |
| | "*Released Parties*" means collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) each Consenting Stakeholder and each other holder of First Lien Claims that votes in favor of the Plan; (d) each of the Agents/Trustees; (e) each current and former Affiliate of each Entity in clause (a) through the following clause (f); and (f) each Related Party of each Entity in clause (a) through this clause (f) (and, in addition to each of the foregoing, where any of the foregoing is an investment manager or advisor for a beneficial holder, such beneficial holder); *provided* that, in each case, an Entity shall not be a Released Party if it objects to the releases contained in the Plan and such objection is not resolved before the hearing to consider confirmation of the Plan. |
| | "*Releasing Parties*" means, collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) each Consenting Stakeholder and each other holder of First Lien Claims that votes in favor of the Plan; (d) each of the Agents/Trustees; (e) each Related Party of each Entity in clause (a) through this clause (e) for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan under applicable law. |
| | "*Exculpated Parties*" means, collectively, each of the following in their capacity as such: (i) the Debtors; (ii) the Reorganized Debtors; (iii) each Consenting Stakeholder; (iv) each of the Agents/Trustees; and (v) with respect to each of the foregoing Entities in clauses (i) through (iv), all of their respective Related Parties that is not an ECO Affiliate (and, in addition to each of the foregoing, where any of the foregoing is an investment manager or advisor for a beneficial holder, such beneficial holder); *provided* that, with respect to the Entities in clauses (iii)-(v), any exculpations afforded under the Plan or the Confirmation Order shall be granted only to the extent provided for pursuant to section 1125(e) of the Bankruptcy Code. |
| | "*Related Party*" means, with respect to (w) any Entity, (x) such Entity's predecessors, successors and assigns, parents, subsidiaries, affiliates, |

11

| **GENERAL PROVISIONS REGARDING THE RESTRUCTURING TRANSACTIONS** | |
|---|---|
| | affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, subadvisors, or managers, (y) with respect to each of the foregoing in clauses (w) and (x), such Entity's respective current and former officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly and any fund managers, fiduciaries, or other agents with any involvement related to the Debtors), members, partners, employees, agents, trustees, advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals; and (z) with respect to each of the foregoing in clauses (w)–(y), such Entity's respective heirs, executors, estates, servants, and nominees. |
| **Mutual Releases** | If the Company Parties pursue the Out-of-Court Restructuring, on the Restructuring Effective Date, the Company Parties, the Consenting Stakeholders, and the other holders of First Lien Claims party to the Exchange Agreement (which, collectively with the Consenting Stakeholders, shall constitute holders of 100% of the aggregate outstanding principal amount of First Lien Claims) shall execute the Release Agreement, substantially in the form attached to the Restructuring Support Agreement as Exhibit D. |

| **OTHER MATERIAL PROVISIONS REGARDING THE RESTRUCTURING** | |
|---|---|
| **Governance** | Corporate governance for the Reorganized Debtors and Holdings, including charters, bylaws, operating agreements, or other organization documents, as applicable, shall be consistent with the Restructuring Support Agreement and this Restructuring Term Sheet (including Exhibit 1 hereto) and shall otherwise be reasonably acceptable to the Required Consenting Creditors. |
| **Exemption from SEC Registration** | The issuance of all securities under the Plan, if applicable, will be exempt from SEC registration under applicable law. |
| **Employment Obligations** | Subject to the consent rights of the Required Consenting Creditors in the Restructuring Support Agreement, the Company Parties may, in the ordinary course of business and consistent with past practice, continue their wages, compensation, and benefits programs.  If the Debtors pursue the In-Court Restructuring, on the Restructuring Effective Date, the Debtors shall (a) assume all existing employment agreements, indemnification agreements, or other employment-related agreements entered into with current and former employees or (b) with the consent of the Required Consenting Creditors (not to be unreasonably withheld or delayed), enter into new agreements with such employees on terms and conditions acceptable to the Debtor and such employee. |

| **OTHER MATERIAL PROVISIONS REGARDING THE RESTRUCTURING** | |
|---|---|
| **Indemnification Obligations** | Consistent with applicable law, all indemnification provisions in place as of the Restructuring Effective Date (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Company Parties, as applicable, shall be reinstated and remain intact, irrevocable, and shall survive the effectiveness of the Restructuring on terms no less favorable to such current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Company Parties than the indemnification provisions in place prior to the Restructuring. |
| **Retained Causes of Action** | On the Restructuring Effective Date, the Company Parties shall retain all rights to commence and pursue any Causes of Action, other than any Causes of Action that the Company Parties have released pursuant to the Release Agreement or the release and exculpation provisions outlined in this Restructuring Term Sheet and implemented pursuant to the Plan, as applicable. |
| **Conditions Precedent to Restructuring** | The Restructuring Effective Date will be subject to the satisfaction of customary conditions, including the following, as applicable (collectively, the "**Conditions Precedent**"): |
| | (a) Concurrently with the occurrence of the Restructuring Effective Date, the Exchange Agreement and the Release Agreement shall (i) have been duly executed by holders of 100% of the aggregate outstanding principal amount of First Lien Claims and (ii) be in full force and effect; *provided* that this condition shall be deemed waived by all Parties if the Restructuring Transactions are effectuated pursuant to the Plan; |
| | (b) the Company Parties shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Restructuring Transactions and all applicable waiting periods shall have expired; |
| | (c) the final versions of the Definitive Documents and all of the schedules, documents, and exhibits related thereto shall be consistent with the Restructuring Support Agreement and the Restructuring Term Sheet, and, if applicable, the Plan, and otherwise approved by the parties thereto consistent with their respective consent and approval rights set forth in the Restructuring Support Agreement; |
| | (d) the Restructuring Support Agreement shall be in full force and effect; |
| | (e) the New Senior Secured Notes Purchase Agreement and all ancillary documentation related thereto shall have been duly executed and delivered by all of the Entities that are parties thereto, all conditions precedent (other than any conditions related to the occurrence of the Restructuring Effective Date) to the effectiveness of the New Senior Secured Notes Purchase Agreement shall have been satisfied or duly |

13

waived in writing in accordance with the terms of the New Senior Secured Notes Purchase Agreement, the closing of the issuance of the New Senior Secured Notes shall have occurred, and the New Senior Secured Notes Purchase Agreement shall be in full force and effect;

(f)    subject to the requirement in Section 3.01(a) of the Restructuring Support Agreement, the Asset Sale Agreement shall be in full force and effect and not amended or modified in a manner adverse to the Consenting Creditors or the Debtors;

(g)    there shall not be in effect any order by a governmental authority of competent jurisdiction restraining, enjoining, or otherwise prohibiting the consummation of the Restructuring Transactions;

(h)    all Consenting Creditor Fees and Expenses and, if applicable, any other fees, expenses, and other amounts payable to the Consenting Creditors pursuant to an order of the Bankruptcy Court, shall have been paid in full;

(i)    the Company Parties shall have implemented the Restructuring Transactions and all transactions contemplated in this Restructuring Term Sheet in a manner consistent with the Restructuring Support Agreement, this Restructuring Term Sheet, and the Plan;

(j)    without limiting the foregoing, if the Company Parties pursue the In-Court Restructuring:

    (i)    the Bankruptcy Court shall have entered an order approving the Disclosure Statement, which order shall be in full force and effect and no stay thereof shall be in effect.

    (ii)    the Bankruptcy Court shall have entered the Confirmation Order, which order shall be in full force and effect and no stay thereof shall be in effect, which shall:

        a.    authorize the Debtors to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan;

        b.    decree that the provisions in the Confirmation Order and the Plan are nonseverable and mutually dependent;

        c.    authorize the Debtors, as applicable/necessary, to: (a) implement the Restructuring Transactions; (b) make all distributions and issuances as required under the Plan; and (c) enter into any agreements, transactions, and sales of property as set forth in the Plan (including the Plan Supplement);

        d.    authorize the implementation of the Plan in accordance with its terms; and

        e.    provide that, pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of, or in

| **OTHER MATERIAL PROVISIONS REGARDING THE RESTRUCTURING** | |
|---|---|
| | connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax; and |
| | (iii) all professional fees and expenses of retained professionals that require the approval of the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such fees and expenses after the Restructuring Effective Date shall have been placed in a professional fee escrow account pending the approval of such fees and expenses by the Bankruptcy Court. |
| **Waiver of Conditions Precedent** | The Conditions Precedent may be waived, in whole or in part, with the written consent of the Company Parties and the Required Consenting Creditors. |
| **Amendments** | This Restructuring Term Sheet may be amended only as permitted pursuant to the Restructuring Support Agreement. |

## Exhibit 1

## New Senior Secured Notes Term Sheet

| | |
|---|---|
| **Agent/Trustee** | The trustee and/or agent under the New Senior Secured Notes shall be an entity satisfactory to the Required Consenting Creditors and the Company Parties. |
| **Transaction Structure** | Exchange among holders of Notes Claims and Term Loan Claims, herein collectively referred to as the "**Lenders**," and Nautical Solutions, LLC ("**Nautical Solutions**" or "**Borrower**"), wherein the Lenders receive their pro-rata share based on all contractual rights of a combination of (i) New Senior Secured Notes and (ii) distribution of excess cash, described further below |
| **Total Consideration** | Aggregate consideration to the Lenders in a fixed amount of $587.5 million.<br><br>a.  Consideration to be comprised of New Senior Secured Notes and excess cash as described below<br><br>b.  Fixed consideration amount of $587.5 million to begin accruing interest at the rate of 8.5% per annum commencing 9/1/22 if transaction has not been consummated by such date, with such accrued interest amount (if any) paid in cash at closing |
| **Excess Cash** | At closing, excess cash on the balance sheet (after payment of all agreed closing costs and fees, including any tax liability of the members/shareholders of Nautical Solutions for any cancellation of debt income, including gain recognized under IRC § 731(a)(1) arising from such cancellation of indebtedness or the tax payment itself, arising solely from the Restructuring Transactions  (calculated taking into account any suspended losses and other deductions or credits available to such members/shareholders from whatever source, and treating the payment as occurring in the year of the transaction)), above minimum cash to be retained on balance sheet of $25 million, to prepay the $587.5 million principal amount of the New Senior Secured Notes (without premium or penalty)<br><br>Post close, quarterly excess cash distributed to holders of New Senior Secured Notes to pay down principal, per the "Cash Flow Sweep Waterfall" described below |
| **New Senior Notes** | **Amount:**<br>a.  Up to $587.5 million New Senior Secured Notes<br>b.  New Senior Secured Notes to require prepayments described below under "Cash Flow Sweep Waterfall"<br><br>**Covenants:**<br>a.  LTM interest coverage covenant: set at 1.10x, tested quarterly<br>b.  Commencing the quarter ended June 30, 2023 and ending the quarter ended June 30, 2024, LTM Minimum EBITDA covenant set at a 35% cushion to levels in the final Company forecast, tested quarterly |

16

    c.  Commencing the quarter ending September 30, 2024, Maximum Net Leverage Ratio covenant tested quarterly: 7.0x until June 30, 2025; 6.50x from September 30, 2025 to June 30, 2026; 5.75x at September 30, 2026; 5.0x thereafter

        i.  For purposes of covenants, need appropriate adjustments to accommodate addbacks of (A) fees and expenses in connection with the restructuring and the permitted asset sales, (B) collection of insurance proceeds from warranty claims, and (C) any tax claims related to the pending tax review in Guyana

    d.  Annual retrofit capex basket of $6 million (subject to adjustment based on the consumer price index (capped at 5% per year)) without majority Lender approval

    e.  No cap on maintenance and related capex expenses, (however, in the measurement period for the Exit Fee calculation, maintenance and related expenses shall not exceed highest level experienced in last 5 years (as adjusted to deduct from such high watermark amounts for vessels no longer owned by Nautical Solutions at the time of such measurement) (subject to adjustment based on the consumer price index (capped at 5% per year) calculated annually from such highwater amounts)

    f.  Capex for newbuilds prohibited without majority Lender consent

    g.  Will include equity cure rights (i) to cure any default of financial covenants (may be exercised, at the Borrower's option, 1 time during the term of New Senior Secured Notes) and (ii) to increase the Asset Sale Proceeds for purposes of satisfying the "Asset Sale" provision and calculating the PIK Fee (see "Asset Sale" below); *provided* that the Borrower must elect, in advance, whether such equity cure shall apply to clause (i) or clause (ii) hereof.

    h.  Subject to customary exceptions, operating and affiliate transaction covenants, including prohibition on dividends

**Cash Interest rate:** 8.5% fixed rate until LTM leverage is below 4.0x; 8.0% fixed rate until LTM leverage is below 2.75x; 7.5% fixed rate thereafter

**Maturity:** Five years from transaction close

**Prepayment Fee / Penalty:** None

**Exit Fee:**

    a.  At maturity or a refinancing; for the avoidance of doubt, a refinancing will include any payment in full of the New Senior Secured Notes by a non-Nautical Solutions ECO affiliate and/or members of the Chouest family:

        i.  If the average annual EBITDA ("Actual Average EBITDA") achieved exceeds the forecasted average annual EBITDA for the same period ("Forecasted Average EBITDA") by 18%, Lenders are entitled to receive a cash payment equal to 10% of equity value

        ii.  If Actual Average EBITDA exceeds Forecasted Average EBITDA by 27%, Lenders are entitled to receive a cash payment equal to 15% of equity value

| | |
|---|---|
| | iii. Any outperformance between 18% and 27% would translate, on a linear basis, to an equity value between 10% and 15% (i.e., 22.5% outperformance equates to 12.5% of equity value)<br>iv. Actual Average EBITDA will use the last 24 months of results to calculate an annual average EBITDA; *provided* that, if the refinancing occurs earlier than one year prior to maturity, it will be calculated using the results from the previous 12 months<br>v. Forecasted Average EBITDA to be determined prior to closing<br>vi. Equity value calculated as 6.25x Actual Average EBITDA less net debt<br><br>**Enhanced collateral package:** See "Enhanced collateral package" section |
| **Asset Sale** | Prior to the Restructuring Effective Date, Nautical will enter into a binding agreement to sell (the "**Asset Sale**") six (6) 280' PSVs vessels to a non-ECO affiliated third-party; *provided* that if (i) any of such asset sale is not consummated pursuant to the agreement or otherwise with 12 months after the Restructuring Effective Date or (ii) any such sale agreement is terminated (for reasons other than non-compliance by Nautical), an ECO affiliated entity has the option to purchase all six (6) vessels for no less than $90.0 million of net proceeds in the aggregate. In the event that a third party purchases some but not all six (6) of such vessels, an ECO affiliated entity has the option to purchase any of the remaining six (6) vessels but the sum of the vessels sold to a third party and the vessels sold to an ECO affiliate must include each of the six (6) vessels.  Any formerly Nautical owned vessels so purchased by ECO affiliated entity (a) shall not work in Jones Act oil & gas related activities, (b) shall not be lengthened beyond their current specifications, (c) shall not perform work for which there is an available 280' PSV vessel owned by Nautical Solutions and (d) to the extent the vessels are sold to an ECO affiliated entity and such ECO affiliated subsequently sells such vessel, any net proceeds above its initial purchase price will be applied as mandatory principal repayments of the New Senior Secured Notes (such limitations set forth in the foregoing clauses (a) through (d), the "**ECO 280 Limitations**").<br><br>Notwithstanding anything herein to the contrary, for the avoidance of doubt, the Company shall operate their business and enter into transactions solely in the ordinary course in a manner consistent with past practice in all material respects, and shall not operate their business or enter into any transactions in contravention of the foregoing except as expressly provided in this Restructuring Term Sheet.<br><br>The sale price for each of the six (6) 280' PSVs is anticipated to be $15.0 million per vessel of net proceeds ("**Asset Sale Proceeds**")<br><br>The vessel sales will close, and final payment will be made, upon recertification and delivery of the discrete vessels; *provided* that the *Jackie Chouest* cannot be sold prior to the expiration of its current contract (November 2022).<br><br>All proceeds from the sales, net of applicable taxes and related expenses, will be used to make mandatory principal payments of the New Senior Secured Notes |

|  | **Additional PIK Interest:** |
|--|--|

a.  The New Senior Secured Notes will accrue on a quarterly basis an additional 300 basis points per annum of PIK interest until the principal repayment from Asset Sale Proceeds for all six (6) vessels and/or any other payment from affiliates of Nautical (excluding any payments from Nautical cash or assets) (such amounts, collectively, "**Specified Prepayment Amount**") aggregating not less than $84 million is received (the "**PIK Fee**")

b.  If the Specified Prepayment Amount results in a principal repayment of $84 million or more, no further PIK Fee will accrue

c.  If the Specified Prepayment Amount equals $90 million ($15 million per vessel net average) or more, and is received within 13 months of the closing date, any accrued PIK Fee since the Restructuring Effective Date will be forgiven in its entirety

d.  If the Specified Prepayment Amount is between $84 - $90 million, and/or is received after 13 months but within 15 months, the accrued PIK Fee will be reduced to the amounts set forth below (on retroactive basis):

| (BPS) | Net Vessel Sale Proceeds | | | |
|--|--|--|--|--|
|  |  | $84-$86.99mm | $87-$89.99mm | $90mm+ |
| **Months From Closing** | **14-15** | 250 | 200 | 150 |
|  | **13-14** | 200 | 150 | 100 |
|  | **<13** | 150 | 100 | 0 |

*provided* that, at the option of Nautical, any equity contribution within 15 months after the closing date shall be deemed as Asset Sale Proceeds at the time of such equity contribution for the purpose of this paragraph of this "Asset Sale" provision.

Nautical will have the right to sell the Tug for no less than $3.5 million and both FSVs for no less than $1.0 million in the aggregate, in each case, to one or more unaffiliated third party purchasers.  Unless otherwise specified herein, no other asset sales without Required Consenting Creditor consent; *provided* that, if the charter agreement of any of the three (3) vessels chartered to Petrobras is terminated (for reasons other than non-compliance by Nautical Solutions), ECO affiliated entity has the option to purchase any such vessel for no less than $15.0 million of net proceeds subject, in each case, to the ECO 280 Limitations.  All proceeds for any such sales to be applied as mandatory principal repayments of the New Senior Secured Notes

| **Cash Flow Sweep Waterfall** | Post close, mandatory fixed amortization of the principal amount of the New Senior Secured Notes of $2.0 million per quarter in aggregate<br><br>Quarterly excess cash flow sweep of 100% of excess cash above $30 million (after fixed amortization) to holders of New Senior Secured Notes (without any prepayment premium or penalty) to be paid on the 14th day of February, May, August and November in each year, commencing with first such date following the closing date |
|--|--|

| | |
|---|---|
| **G&A Allocation Adjustments / Fees for ECO-Provided Services** | ECO entities to allocate GMS expenses based on pro rata ECO vessel revenue<br><br>Monthly amount allocated shall not be greater than the below per month per active vessel:<br>  a.  312' / AHTS vessels: $72,500<br>  b.  280' vessels: $56,000<br>  c.  Forte / Fast Boats vessels: $7,300<br><br>All rates subject to annual CPI adjustments |
| **Enhanced Collateral Package** | **Enhanced Collateral Package:**<br><br>  a.  **Security:** Subject to customary exceptions, secured on a first priority basis by substantially all of the present and future assets of (i) a newly formed holdings entity ("**Holdings**") which holds 100% of the issued and outstanding capital stock of the Borrower and (ii) the Borrower, including: (a) first priority mortgage on vessels and all equipment thereon, (b) capital stock of the Borrower, (c) capital stock of any future subsidiary directly held by the Borrower, and (d) all of its other tangible and intangible assets.<br><br>  b.  **Credit Enhancements:** Enhanced collateral package to include for Holdings and the Borrower: (i) security interest in all revenue generated from vessels, (ii) assignment of earnings under the bareboat charters, (iii) assignment of insurance, (iv) control agreements on Nautical Solutions bank accounts, (v) covenant with Borrower affiliate to crew the vessels for duration of New Senior Secured Notes and in connection with any exercise of remedies as contemplated below for the remaining duration of any third-party customer contracts existing on the date of a change of control of the Borrower for so long as the ECO affiliate is being paid for such services in a manner consistent with past practice; *provided* that Borrower's obligation to crew the boats terminates on the earlier of (i) one year after the agent takes title to the boats or (ii) title to the boats passes from the agent to a third party; (vi) perpetual, irrevocable, worldwide, royalty-free right and license with Borrower affiliate for technology and IP which shall, in any case, be transferable and assignable to the agent (for the benefit of the lenders) thereof until the New Senior Secured Notes have been paid in full and further transferable and assignable to the unaffiliated third party purchasers by the agent for each such vessel sold on a one-time basis. The documentation relating to the IT and IP will be based on the equivalent documentation for the ECO/Hornbeck transaction.<br><br>  c.  **Passive Holding Company:** Holdings will be subject to a customary passive holding company covenant and its 100% ownership of the Borrower will be addressed by the change of control provisions applicable to the New Senior Secured Notes.<br><br>  d.  **Tax Status:** On the Restructuring Effective Date, (i) Holdings shall be properly classified as a partnership and treated as a continuation of Nautical Solutions for U.S. federal and applicable state and local income tax purposes, and (ii) Nautical Solutions will become a |

20

wholly owned subsidiary of Holdings classified as an entity disregarded as separate from Holdings for U.S. federal income tax purposes.

e. **Support Agreement:** In addition to Managers' Undertakings similar to existing form, ECO affiliates will provide to the Lenders, their affiliates, designees and/or any unaffiliated third-party purchasers (in connection with a change of control in connection with an exercise of remedies), at their elections, (a) vessel operations and management support for one (1) year from the date of change of control of the Borrower with the cost included in the GMS overhead charge, (b) appropriate services to support delivery of vessels to a U.S. port of such party's choosing with the cost of such support charged at market rates, (c) other services such as shipyard repairs and maintenance on an ongoing basis at market rates (where market rates are publicly available to third parties); services will be provided on a commercial best-efforts basis subject to crew availability (where crew is not already placed and therefore, available), shipyard availability, etc., and (d) any necessary training or other support services to allow the Lenders, their affiliates, designees and/or any unaffiliated third-party purchasers (in connection with a change of control in connection with an exercise of remedies) to properly operate the licensed IP and technology. Creditor owned or transferred vessels to not be prioritized, nor disadvantaged, versus other ECO vessels that require like services, employees, or parts at the same time.

f. **Shared Services:** Borrower to document any material shared services or other intercompany arrangements and all such agreements shall provide Lenders as third-party beneficiaries and grant Lenders an assignable pledge thereunder where services are rendered to Borrower or its subsidiaries – Services to be provided at market rates (where market rates are publicly available to third parties) or otherwise to be negotiated and reflected in the shared services agreement; in connection with an exercise of remedies, such shared services will be continue to be available to the Lenders, their affiliates, designees and/or any unaffiliated third-party purchasers for one year from the date of change of control of the Borrower.

g. **Duration:** Except as specifically provided above, the arrangements above will be provided to the Borrower until the obligations with respect to New Senior Secured Notes are paid in full and, additionally, the Enhanced Collateral Package will benefit the Lenders (or any agent or designee on their behalf in connection with an exercise of remedies) and any third party purchaser to which any Collateral is sold until the date that is one (1) year following the occurrence of a change of control of the Borrower; it being understood and agreed that the IP and IT licenses will continue to benefit such third party purchaser on a perpetual basis.

## EXHIBIT B

**Form of Joinder**

## Joinder Agreement to Restructuring Support Agreement

The undersigned (the "**Joinder Party**") hereby acknowledges that it has reviewed and understands the Restructuring Support Agreement dated as of _____ (the "**Agreement**"),[1] by and among Nautical Solutions, L.L.C. and its affiliates and subsidiaries bound thereto and the Consenting Stakeholders and agrees to be bound by the terms and conditions thereof to the extent the other Parties are thereby bound, and shall be deemed a "Consenting Lender," "Consenting Noteholder," or "Consenting Member," as applicable, under the terms of the Agreement.

The undersigned Joinder Party specifically agrees to be bound by the terms and conditions of the Agreement and makes all representations and warranties contained therein as of the date of this joinder and any further date specified in the Agreement.

This joinder agreement shall be governed by the governing law set forth in the Agreement.

Date Executed:

_____

Name:
Title:

Address:

E-mail address(es):

| Aggregate Amounts Beneficially Owned or Managed on Account of: | |
|---|---|
| Term Loan | |
| Notes | |
| Equity Interests | |

---

[1] Capitalized terms used but not otherwise defined herein shall having the meaning ascribed to such terms in the Agreement.

## <u>EXHIBIT C</u>

**Provision for Transfer Agreement**

**<u>Transfer Agreement</u>**

The undersigned ("**Transferee**") hereby acknowledges that it has read and understands the Restructuring Support Agreement, dated as of _____ (the "**Agreement**"),[2] by and among Nautical Solutions, L.L.C. and its affiliates and subsidiaries bound thereto and the Consenting Stakeholders, including the transferor to the Transferee of any Company Claims/Interests (each such transferor, a "**Transferor**"), and agrees to be bound by the terms and conditions thereof to the extent the Transferor was thereby bound, and shall be deemed a "Consenting Lender," "Consenting Noteholder," or "Consenting Member," as applicable, under the terms of the Agreement.

The Transferee specifically agrees to be bound by the terms and conditions of the Agreement and makes all representations and warranties contained therein as of the date of the Transfer, including the agreement to be bound by the vote of the Transferor if such vote was cast before the effectiveness of the Transfer discussed herein.

Date Executed:

_____
Name:
Title:
Address:
E-mail address(es):

| *Aggregate Amounts Beneficially Owned or Managed on Account of:* | |
|---|---|
| Notes | |
| Term Loan | |
| Equity Interests | |

---

[2]   Capitalized terms used but not otherwise defined herein shall having the meaning ascribed to such terms in the Agreement.

**<u>EXHIBIT D</u>**

**Release Agreement**

*Execution Version*

## MUTUAL RELEASE AGREEMENT

This **Mutual Release Agreement** (this "Agreement"), dated as of [●], 2022, is hereby entered into by and among (i) Nautical Solutions, L.L.C., a Louisiana limited liability company (the "Company") and Nautical Solutions (Texas), LLC (together with the Company, the "Company Parties"), (ii) the Consenting Stakeholders, (iii) the Agent, and (iv) each other holder of First Lien Claims party to the Exchange Agreement that is a signatory hereto.  All persons that are party to this Agreement are referred to herein individually as a "Party" and collectively, as the "Parties."  Capitalized terms used herein and not otherwise defined shall have the meanings set forth in that certain *Restructuring Support Agreement*, dated as of [●], 2022 (such agreement as amended, restated, supplemented, or otherwise modified from time to time (the "RSA").

## RECITALS

**WHEREAS**, the Company is party to (i) that certain First Amended and Restated Credit Agreement (the "Credit Agreement"), dated as of December 7, 2018, among the Company, the lenders party thereto, JPMorgan Chase Bank, N.A., as administrative agent and collateral agent, Bank Of America, N.A., Wells Fargo Bank, N.A. and Suntrust Bank, as co-syndication agents, and Capital One, National Association, and Compass Bank, as co-documentation agents, as amended and restated from time to time, including pursuant to that certain Third Amendment, dated as of May 28, 2020; (ii) that certain Amended and Restated Note Purchase Agreement (the "Series A Note Purchase Agreement"), dated December 7, 2018, by and among the Company, the noteholders party thereto, and JPMorgan Chase Bank, N.A., as collateral agent, as amended and restated from time to time, pursuant to which the Company issued the Series A Notes; and (iii) that certain Amended and Restated Note Purchase Agreement (the "Series B Note Purchase Agreement"), dated December 7, 2018, by and among the Company, the noteholders party thereto, and JPMorgan Chase Bank, N.A., as collateral agent, as amended and restated from time to time, pursuant to which the Company issued the Series B Notes;

**WHEREAS**, certain Events of Default (as defined in the Credit Agreement, the Series A Note Purchase Agreement, and the Series B Note Purchase Agreement, as applicable) have occurred and are continuing;

**WHEREAS**, following good faith, arm's length negotiations, on [●], the Company Parties and the Consenting Stakeholders entered into the RSA, pursuant to which the Company Parties and the Consenting Stakeholders agreed to support certain restructuring and recapitalization transactions with respect to the Company Parties' capital structure on the terms therein (such transactions, the "Restructuring Transactions");

**WHEREAS**, on [●], the Company Parties commenced the Solicitation, seeking acceptance of a private exchange of New Senior Secured Notes by the Company to each holder of Notes Claims and Term Loan Claims (the "Exchange Offer"), to be effectuated through an out-of-court restructuring (such transactions, the "Out-of-Court Restructuring") in the event that the Out-of-Court Restructuring Threshold was satisfied;

**WHEREAS**, on [●], the Out-of-Court Restructuring Threshold was satisfied, and accordingly the Parties intend to consummate the Out-of-Court Restructuring; and

**WHEREAS**, this Agreement is a condition to and material inducement to the Parties' willingness to enter into and consummate the Out-of-Court Restructuring, and the Parties will benefit from such Out-of-Court Restructuring;

**NOW**, **THEREFORE**, for and in consideration of the promises and the mutual releases, covenants, and undertakings contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties hereto hereby agree as follows:

## ARTICLE I.
## DEFINITIONS, RULES OF CONSTRUCTION

1.    <u>Definitions</u>.  For purposes of this Agreement, (i) capitalized terms not defined herein that are defined in the RSA shall have the meanings set forth in the RSA; and (ii) the following terms shall have the meanings ascribed to them in this Article I:

"**Agent**" means JPMorgan Chase Bank, N.A. in its capacity as administrative agent and collateral agent for the holders of the Term Loans and in its capacity as collateral agent for the holders of the Notes.

"**Related Party**" means, with respect to (w) any Entity, (x) such Entity's predecessors, successors and assigns, parents, subsidiaries, Affiliates, affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, subadvisors, or managers, (y) with respect to each of the foregoing in clauses (w) and (x), such Entity's respective current and former officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly and any fund managers, fiduciaries, or other agents with any involvement related to the Company Parties), members, partners, employees, agents, trustees, advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals; and (z) with respect to each of the foregoing in clauses (w)–(y), such Entity's respective heirs, executors, estates, servants, and nominees.

"**Released Claims**" means any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities, including any derivative claims asserted or assertable on behalf of any Entity that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of any other Entity, that are connected with, arise out of, relate to or are otherwise based as a whole or in part on any acts, omissions, facts, matters, transactions or occurrences taking place on or prior to the Restructuring Effective Date, directly or indirectly, relating to any or all of (i) the ownership, operation, management, financing, capital structure, assets, properties, affairs, financial condition, results of operations, earnings, restructuring efforts, or any other aspect of any of the Company Parties; (ii) any other matters related to the Term Loan, the Series A Notes, the Series B Notes, including any defaults or Events of Default under any of the foregoing, or any document or instrument related to any of the foregoing, or any of the transactions contemplated by any of the foregoing; (iii) any aspect of

any of the dealings or relationships or the consummation of the transactions between or among any or all of the Releasing Parties with respect to matters relating to the Restructuring Transactions or the Definitive Documents, on the one hand, and any or all of the Released Parties with respect to matters relating to the Restructuring Transactions or the Definitive Documents, on the other hand; (iv) the Definitive Documents, the Solicitation, the Exchange Offer, the Restructuring Transactions, and any other contract, instrument, release, or other agreement or document created or entered into in connection with the Definitive Documents or Restructuring Transactions (including any aspect of the negotiation, formulation, preparation, dissemination, discussions, or marketing process relating thereto and any aspect of the structuring or consummation of any of the transactions contemplated therein), or (v) any other act, omission, transaction, agreement, event or other occurrence taking place on or before the Restructuring Effective Date related or relating to the foregoing.

"**Released Parties**" means collectively, and in each case in its capacity as such: (a) each Company Party; (b) each Consenting Stakeholder; (c) each other holder of First Lien Claims party to the Exchange Agreement that is a signatory hereto; (d) the Agent; and (e) each Related Party of each Entity in the foregoing clause (a) through and including clause (d) (and, in addition to each of the foregoing, where any of the foregoing is an investment manager or advisor for a beneficial holder, such beneficial holder).  For the avoidance of doubt, any holder of First Lien Claims who is not a signatory hereto shall not be a Released Party.

"**Releasing Parties**" means, collectively, and in each case in its capacity as such: (a) each Company Party; (b) each Consenting Stakeholder; (c) each other holder of First Lien Claims party to the Exchange Agreement that is a signatory hereto; (d) the Agent; (e) each Related Party of each Entity in the foregoing clause (a) through and including clause (d) for which such Entity (i) is legally entitled to bind such Related Party to the releases contained in this Agreement under applicable law or (ii) has been granted the express authority to bind such Related Party to the releases contained in this Agreement. For the avoidance of doubt, any holder of First Lien Claims who is not a signatory hereto shall not be a Releasing Party.

"**Restructuring Effective Date**" means the date on which the Out-of-Court Restructuring is consummated, including the issuance of the New Senior Secured Notes.

2.     Interpretation.  For purposes of this Agreement:

(a)     in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender;

(b)     capitalized terms defined only in the plural or singular form shall nonetheless have their defined meanings when used in the opposite form;

(c)     unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

(d)      unless otherwise specified, any reference herein to an existing document, schedule, or exhibit shall mean such document, schedule, or exhibit, as it may have been or may be amended, restated, supplemented, or otherwise modified from time to time; *provided* that any capitalized terms herein which are defined with reference to another agreement, are defined with reference to such other agreement as of the date of this Agreement, without giving effect to any termination of such other agreement or amendments to such capitalized terms in any such other agreement following the date hereof;

(e)      unless otherwise specified, all references herein to "Sections" are references to Sections of this Agreement;

(f)      the words "herein," "hereof," and "hereto" refer to this Agreement in its entirety rather than to any particular portion of this Agreement;

(g)      captions and headings to Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Agreement;

(h)      references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable limited liability company Laws; and

(i)      the use of "include" or "including" is without limitation, whether stated or not.

## <u>ARTICLE II.</u>
## <u>RELEASES</u>

3.      Except as expressly set forth in Section 6 of this Agreement, effective upon the Restructuring Effective Date, and to the greatest extent permitted by applicable law, each of the Releasing Parties, hereby completely, conclusively, unconditionally, and irrevocably forever releases, waives, voids, extinguishes, and discharges each Released Party from any and all Released Claims whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise.

4.      As to each and every Released Claim, each Party hereby represents that it has received the advice of legal counsel with regard to the releases contained herein, and having been so advised, specifically waives the benefit and protections of any law that may provide that a general release does not extend to claims which such party does not know or suspect to exist in its favor at the time of executing the release, which, if known by such party, might have materially affected its settlement with the other Parties hereto. Notwithstanding the New York choice of law provisions in this Agreement, to the extent that California law is proposed to apply or is deemed to apply to the release and indemnification provisions set forth herein, each Party specifically waives the benefits and protections of Section 1542 of the Civil Code of California, which provides as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

5.      Each party hereto acknowledges that it may hereafter discover facts different from or in addition to those now known or believed to be true with respect to the Released Claims, which, if known at the time of signing this Agreement, may have materially affected this Agreement and such Party's decision to enter into this Agreement, intends hereby to assume the risk of existing but as yet unknown Claims or Causes of Action, and agrees that this Agreement shall be and remain effective in all respects notwithstanding any such differences or additional facts. Each Party hereto understands, acknowledges, and agrees that the releases set forth above may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of the provisions of such releases. Each Releasing Party agrees that no fact, event, circumstance, evidence or transaction which could now be asserted or which may hereafter be discovered shall affect in any manner the final, absolute and unconditional nature of this Agreement.

6.      Each of the Parties hereby acknowledges that it has read this Agreement and has conferred with its counsel and advisors regarding this Agreement's content, including this Article II, and is freely and voluntarily entering into this Agreement and hereby agrees to waive any argument or claim that the terms of this Agreement (including, without limitation, the releases contained herein) are invalid or otherwise unenforceable. Each Releasing Party expressly disclaims any reliance on any representations, acts or omissions by any of the Released Parties and hereby agrees and acknowledges that the validity and effectiveness of this Agreement does not depend in any way on any such representations, acts and/or omissions or the accuracy, completeness or validity thereof.

7.      **Limitation of Release**.   Notwithstanding anything herein, nothing in this Agreement shall release, waive, modify, discharge, limit, or repair (i) any Claim, Cause of Action, right, or obligation arising under the Definitive Documents solely to the extent (if any) such Claim, Cause of Action, right, or obligation survives the Restructuring Effective Date in accordance with the terms of such Definitive Documents, or becomes effective on or after the Restructuring Effective Date, (ii) any indemnity, exculpation, or fee or expense reimbursement obligations (x) in favor of the Agent arising under the Credit Agreement, the Series A Notes Purchase Agreement, the Series B Notes Purchase Agreement or any security or loan documents related to the foregoing, in each case that by their terms survive termination of such agreement, or (y) owed by the Company Parties to any Related Party of the Company Parties existing under applicable law (whether now existing or existing under prior applicable law), advisor engagement letter, or the organizational documents of any Company Party, (iii) any Claim or Cause of Action for gross negligence, willful misconduct, or actual fraud (in each case as determined by a final order of a court of competent jurisdiction), and (iv) any liabilities and obligations arising under this Agreement.

8. **Covenant Not to Sue**. Each Party covenants and agrees (on behalf of itself/himself/herself and all of its/his/her Related Parties) not to directly or indirectly commence, assert, maintain, prosecute, assist, or voluntarily aid, against any Released Party any action at law or in equity, or any other proceeding, in any administrative or judicial forum of any jurisdiction in any nation, or give notice with respect to any Released Party to, or file any complaint against any Released Party with, any governmental or non-governmental authority, based on, or which involves, any allegation, Cause of Action, damages, Claim, cross-claim, liability, debt, attorneys' fees, cost, or demand that arises from any Claim or Cause of Action released, absolved, acquitted or discharged hereunder, and that each Releasing Party will indemnify and hold each Released Party harmless from any loss, liability, damage or expense, including reasonable attorneys' fees, incurred in defending, responding to, or otherwise seeking relief from any claim, suit, or judgment incurred by reason of any Claim that a court of competent jurisdiction determines by a final order was released, absolved, acquitted, or discharged hereunder that is asserted by such Releasing Party or on its behalf at such Releasing Party's direction; *provided* that nothing contained in this Agreement shall prevent any Releasing Party from providing information that is requested or required pursuant to law, rule, regulation, court order or other similar process (including, without limitation, by oral questions interrogatories, requests for information or documents in legal or regulatory proceedings, subpoena, civil investigative demand or other similar process).

## ARTICLE III.
## MISCELLANEOUS PROVISIONS

9. **Effectiveness**. This Agreement and the Parties' respective obligations hereunder shall become effective when (a) each of the Parties (which shall include holders of 100% of the aggregate outstanding principal amount of First Lien Claims) shall have executed and delivered to the other Parties (or their respective counsels) a counterpart of this Agreement and (b) the Restructuring Effective Date shall have occurred. The releases and other covenants set forth herein shall be null and void and of no force and effect if the Restructuring Effective Date does not occur.

10. **Amendment; Waiver**. No part of this Agreement may be changed, except in writing executed by the Parties. No breach of any provision of this Agreement may be waived, unless such waiver is in writing and signed by the party waiving such breach. The failure of any Party to exercise any right, power, or remedy provided under this Agreement or otherwise available in respect hereof at law or in equity, or to insist upon compliance by any other Party with its obligations hereunder, and any custom or practice of the Parties at variance with the terms hereof, shall not constitute a waiver by such Party of its right to exercise any such or other right, power, or remedy or to demand such compliance. The waiver of a breach of any provision of this Agreement shall not be deemed to be a waiver of any other breach hereof.

11. **Successors and Assigns; Third Party Beneficiaries**. Neither this Agreement nor any of the rights or obligations hereunder may be assigned by any Party hereto, without the prior written consent of the other Parties hereto, and then only to a person who has agreed to be bound by the provisions of this Agreement. This Agreement shall be binding upon and inure to the benefit of the Parties hereto, the Released Parties, and their respective successors and permitted assigns. Any Released Party who is not named as a Party hereto shall have the rights of an

intended third-party beneficiary with respect to the provisions of this Agreement.  Except as set forth in this Section, no other Entity not a Party hereto shall be deemed a third-party beneficiary of any provision of this Agreement or shall otherwise be entitled to enforce any provision hereof.

12.     **Notices**.  All notices hereunder shall be deemed given if in writing and delivered, by electronic mail, courier, or registered or certified mail (return receipt requested), to the following addresses (or at such other addresses as shall be specified by like notice):

If to a Company Party, to:

Nautical Solutions, L.L.C.
16201 East Main Street
Cut Off, LA 70354
Attention:  Adrian Danos; Luke Newman
E-mail address:  adrian.danos@chouest.com; luke.newman@chouest.com

with copies to:

Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Attention:  Patrick J. Nash, Jr., P.C.; John Luze; and Jeff Michalik
E-mail addresses: patrick.nash@kirkland.com;
john.luze@kirkland.com; jeff.michalik@kirkland.com

and

Tusk Capital Advisors, LLC
1510 State Street
New Orleans, LA 70118
Attention:  Joe Maxwell
E-mail address: joe@tuskcapitaladvisors.com

If to a Consenting Member, to:

Nautical Solutions, L.L.C.
16201 East Main Street
Cut Off, LA 70354
Attention:  Dino Chouest; Dionne Chouest Austin
E-mail address: dino.chouest@chouest.com; dionne@chouest.com

If to a Consenting Lender or the Agent, to:

>Simpson Thacher & Bartlett LLP
>425 Lexington Avenue
>New York, NY 10017
>Attention:  Nicholas Baker; Elisha D. Graff; and Zachary Weiner
>Email addresses:  nbaker@stblaw.com; egraff@stblaw.com;
>zachary.weiner@stblaw.com

If to a Consenting Noteholder, to:

>Weil, Gotshal & Manges LLP
>767 Fifth Avenue
>New York, NY 10153
>Attention:  Ray C. Schrock, P.C.; Andriana Georgallas; and Sean Feener
>Email addresses:  ray.schrock@weil.com; andriana.georgallas@weil.com;
>sean.feener@weil.com

If to any other holder of First Lien Claims, to the address set forth in such holder's signature page hereto.

13.     **Interpretation**.  Whenever possible, each provision of this Agreement will be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid, or unenforceable, the remaining provisions shall remain in full force and effect if the essential terms and conditions of this Agreement for each party hereto remain valid, binding, and enforceable.

14.     **Entire Agreement**.  This Agreement, together with the Definitive Documents, embodies the complete agreement and understanding among the Parties hereto with respect to the subject matter addressed herein, and supersedes and preempts any prior arrangements, understandings, agreements, or representations by or among the parties hereto, written or oral, which may have related to the subject matter hereof in any way.

15.     **No Strict Construction**. The parties hereto have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties hereto, and no presumption or burden of proof shall arise favoring or disfavoring any party hereto by virtue of the authorship of any of the provisions of this Agreement.

16.     **Headings**.  Headings of sections are inserted for convenience of reference only and shall not be deemed a part of or to affect the meaning or interpretation of this Agreement.

17.     **Severability**.  If any portion of this Agreement is held by a court of competent jurisdiction to be illegal, invalid, unenforceable, void, or voidable, or violative of applicable law, in whole or in part, the remaining portions of this Agreement, so far as they may practicably be performed, shall remain in full force and effect and binding on the Parties hereto.  Upon any such determination of invalidity, the Parties shall negotiate in good faith to modify this Agreement so

as to effect the original intent of the Parties as closely as possible in a reasonably acceptable manner in order that the transactions contemplated hereby are consummated as originally contemplated to the greatest extent possible.

18. **Counterparts; Facsimile and Email**.  This Agreement may be executed in any number of counterparts, each of which shall constitute an original, but all of which taken together shall constitute one and the same agreement. Facsimile counterpart signatures or counterpart signatures delivered by email in .pdf format, in each case, to this Agreement shall be acceptable and binding.

19. **Governing Law; Jurisdiction**.  This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York, without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction. By its execution and delivery of this Agreement, the Parties irrevocably and unconditionally agrees for itself that any legal action, suit, or proceeding against it with respect to any matter under or arising out of or in connection with this Agreement or for recognition or enforcement of any judgment rendered in any such action, suit, or proceeding, shall be brought, to the extent possible, in either the United States District Court for the Southern District of New York or any New York State court sitting in New York City.  By execution and delivery of this Agreement, the Parties irrevocably accepts and submits itself to the exclusive jurisdiction of the United States District Court for the Southern District of New York or any New York State court sitting in New York City, generally and unconditionally, with respect to any such action, suit, or proceeding, and waives any objection it may have to venue or the convenience of the forum.

20. **Waiver of Jury Trial**.  EACH OF THE PARTIES HERETO HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS AGREEMENT OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH OR IN RESPECT OF ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF ANY PARTY HERETO OR ARISING OUT OF ANY EXERCISE BY ANY PARTY HERETO OF ITS RIGHTS UNDER THIS AGREEMENT OR IN ANY WAY RELATING TO THE TRANSACTIONS CONTEMPLATED HEREBY (INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO ANY ACTION TO RESCIND OR CANCEL THIS AGREEMENT AND WITH RESPECT TO ANY CLAIM OR DEFENSE ASSERTING THAT THIS AGREEMENT WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE). THIS WAIVER OF RIGHT TO TRIAL BY JURY IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. EACH OF THE PARTIES HERETO IS HEREBY AUTHORIZED TO FILE A COPY OF THIS SECTION 20 IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER. THIS WAIVER OF JURY TRIAL IS A MATERIAL INDUCEMENT FOR THE PARTIES HERETO TO ENTER INTO THIS AGREEMENT.

21.     **Specific Performance**.  The Parties hereto agree that irreparable damage would occur if any provision of this Agreement were not performed in accordance with its terms and each person or entity having any rights under any provision of this Agreement shall be entitled to enforce such rights specifically (without posting a bond or other security), to recover damages by reason of any breach of any provision of this Agreement, to seek the remedy of specific performance of one or more such breached provisions and agreements and injunctive and certain other equitable relief in addition to any other remedy or rights to which such Parties are entitled, at law or in equity.   All such rights and remedies shall be cumulative and non-exclusive, and may be exercised singularly or concurrently.

22.     **Several, Not Joint, Obligations**. The agreements and obligations of each of the Parties under this Agreement are, in all respects, several and not joint.

23.     **No Admission of Liability**. Nothing in this Agreement shall be deemed an admission of liability by any Party with respect to any of the Claims, interests, or Causes of Action released pursuant to this Agreement.

*[Remainder of page intentionally left blank]*

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed and delivered by their respective duly authorized officers, all as of the date and year first above written.

**NAUTICAL SOLUTIONS, L.L.C.**

By: _____
Name: [●]
Title:   [Authorized Signatory]

**NAUTICAL SOLUTIONS (TEXAS), LLC**

By: _____
Name: [●]
Title:   [Authorized Signatory]

**[CONSENTING MEMBER]**


By: _____
Name:  [●]
Title:   [●]

**[CONSENTING CREDITOR]**


By: _____
Name:  [●]
Title:   [●]


Address:   [●]


Email Address(es):   [●]

**[OTHER HOLDER OF FIRST LIEN CLAIMS]**


By: _____
Name:  [●]
Title:   [●]


Address:  [●]


Email Address(es):  [●]